1   DALE R. BISH, State Bar No. 235390
    SONAL MITTAL, State Bar No. 299222
2   WILSON SONSINI GOODRICH & ROSATI
    Professional Corporation
3   650 Page Mill Road
    Palo Alto, CA 94304-1050
4   Telephone:  (650) 493-9300
    Facsimile:  (650) 565-5100
5   Email:  dbish@wsgr.com; smittal@wsgr.com

6   BRIAN WILLEN (*pro hac vice pending*)
    WILSON SONSINI GOODRICH & ROSATI
7   Professional Corporation
    1301 Avenue of the Americas, 40th Floor
8   New York, NY 10019
    Telephone:  (212) 999-5800
9   Facsimile:  (212) 999-5899
    Email:  bwillen@wsgr.com

10
    *Attorneys for Defendant*
11  *Google Inc.*

12

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15                         SAN JOSE DIVISION

16

17  GURMINDER SINGH, Individually and On      )   CASE NO.:  5:16-cv-03734-BLF
    Behalf of Others Similarly Situated,       )
18                                             )   **GOOGLE INC.'S MOTION TO**
                   Plaintiff,                  )   **DISMISS PLAINTIFF'S AMENDED**
19                                             )   **COMPLAINT**
            v.                                 )
20                                             )   Date: December 22, 2016
    GOOGLE INC.,                               )   Time: 9:00 a.m.
21                                             )   Place: Courtroom 3, 5th Floor
                   Defendant.                  )   Before: Hon. Beth Labson Freeman
22                                             )
                                               )
23  _____ )

24

25

26

27

28

# TABLE OF CONTENTS

**Page(s)**

STATEMENT OF ISSUES ................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ......................................................... 3

    A.    Google and its AdWords Program .......................................................................... 3

    B.    Google's Efforts to Limit Charges for Invalid Clicks .......................................... 5

    C.    Plaintiff and His Claims Against Google ................................................................ 7

III.  ARGUMENT ...................................................................................................................... 8

    A.    Plaintiff Waived Any Claims Arising From Charges For Allegedly Invalid
           Clicks By Failing To Use The Claims Process Provided In The Agreement......... 8

    B.    Plaintiff's Claim For Breach of Contract Fails As A Matter of Law ................... 11

           1.    The AdWords Agreement makes no promises that Google will
                detect or prevent all, or some, invalid clicks from being charged ........... 11

           2.    Plaintiff cannot rely on statements outside the AdWords Agreement
                as "binding promises" incorporated into the integrated contract ............. 13

           3.    Even if the extra-contractual statements were part of the AdWords
                Agreement, they are not promises that can support a claim ..................... 14

    C.    Plaintiff Cannot State A Claim for Breach of the Implied Covenant .................. 15

           1.    Plaintiff cannot use the implied covenant to rewrite the parties'
                agreement regarding fraudulent clicks .................................................... 16

           2.    Plaintiff does not plausibly allege that Google's actions regarding
                click fraud were unreasonable or done in bad faith ................................. 17

    D.    Plaintiff Fails To State A Claim Under The UCL ................................................ 18

           1.    Plaintiff cannot state a claim under the "unlawful" prong ...................... 19

           2.    Plaintiff cannot state a claim under the "unfairness" prong .................... 19

           3.    Plaintiff cannot state a claim under the fraud prong ............................... 21

                 a.    Plaintiff cannot allege that the statements he claims to have
                     relied on were actually false or deceptive ................................... 21

                 b.    As a matter of law, Plaintiff could not have reasonably relied
                     on any of the extra-contractual statements at issue ..................... 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

E.      Plaintiff's FAL Claim Fails for The Same Reasons as his UCL Claim ................25

IV.      CONCLUSION ..........................................................................................................25

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**CASES**

4

*Agosta v. Astor*, 15 Cal. Rptr. 3d 565 (Cal. Ct. App. 2004).........................................16

5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .........................................................................8

6

*Avila v. Countrywide Home Loans*, No. 10-CV-05485-LHK, 2010 U.S. Dist.
LEXIS 133701 (N.D. Cal. Dec. 7, 2010) ...............................................16

7

*Boland v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094 (E.D. Cal. 2010) ..........19

8

*Careau & Co. v. Sec. Pac. Bus. Credit*, 272 Cal. Rptr. 387 (Cal. Ct. App. 1990)............16, 17, 18

9

*Carma Developers, Inc. v. Marathon Dev. Cal., Inc.*, 826 P.2d 710 (Cal. 1992).....................16

10

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527 (Cal.
1999)...........................................................19

11

12

*Cullen v. Netflix, Inc.*, No. 5:11-CV-01199-EJD, 2013 U.S. Dist. LEXIS 4246
(N.D. Cal. Jan. 10, 2013)........................................23

13

*Damabeh v. 7-Eleven, Inc.*, No. 5:12-CV-1739-LHK, 2013 U.S. Dist. LEXIS
66565 (N.D. Cal. May 8, 2013) ..............................................16

14

15

*Daugherty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 3d 118 (Cal. Ct. App. 2006)..................20, 21

16

*Davis v. HSBC Bank Nevada*, 691 F.3d 1152 (9th Cir. 2012) .........................................19, 20, 25

17

*Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502 (9th Cir. 2013) ........................5

18

*Fazio v. Apple, Inc.*, 637 F. App'x 415 (9th Cir. 2016) ...................................................21

19

*Feldman v. Google*, 513 F. Supp. 2d 229, 243 (E.D. Pa. 2007) ........................................10

20

*Ford v. Lehman Bros. Bank, FSB*, No. C-12-00842 CRB, 2012 U.S. Dist. LEXIS
85600 (N.D. Cal. June 20, 2012)............................................19

21

22

*Frances T. v. Village Green Owners Ass'n*, 723 P.2d 573 (Cal. Ct. App. 1986)........................13

*Free Range Content, Inc. v. Google*, No. 14-CV-02329, 2016 U.S. Dist. LEXIS
64365 (N.D. Cal. May 13, 2016).......................................*passim*

23

24

*Glen Holly Entm't v. Tektronix Inc.*, 343 F.3d 1000 (9th Cir. 2003) ................................22

25

*Google, Inc. v. Mytriggers*, No. 09-CVH-10-14836, 2013 Ohio Misc. LEXIS 11743
(Ohio C.P. July 2, 2013).......................................10

26

*Guido v. Koopman*, 2 Cal. Rptr. 2d 437 (Cal. Ct. App. 1991) ..........................................24

27

*Haskins v. Symantec Corp.*, No. 13-CV-01834-JST, 2013 U.S. Dist. LEXIS 169865
(N.D. Cal. Dec. 2, 2013) ..............................................21

28

*In re Anthem Data Breach Litig.*, 162 F. Supp. 3d 953 (N.D. Cal. 2016) ....................................11

*In re Facebook, Inc., PPC Adver. Litig.*, 282 F.R.D. 446 (N.D. Cal. 2012) ............................... 13

*In re Facebook PPC Adver. Litig.*, No. 5:09-CV-03043-JF, 2010 U.S. Dist. LEXIS
    136505 (N.D. Cal. Dec. 15, 2010) ........................................................................................ 24

*In re Google Privacy Policy Litig.*, No. C-12-01382-PSG, 2013 U.S Dist. LEXIS
    171124 (N.D. Cal. Dec. 3, 2013) ........................................................................................... 21

*Janda v. T-Mobile, USA, Inc.*, No. C-05-03729 JSW, 2009 U.S. Dist. LEXIS 24395
    (N.D. Cal. Mar. 13, 2009) .............................................................................................. 23, 24

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ............................................................ 21

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) ............................................................................ 5

*Kwikset Corp. v. Super. Ct.*, 246 P.3d 877 (Cal. 2011) ................................................................ 25

*Lovesy v. Armed Forces Benefit Ass'n*, No. C-07-2745 SBA, 2008 U.S. Dist.
    LEXIS 97790 (N.D. Cal. Nov. 5, 2008) .................................................................................. 8

*Malcolm v. JP Morgan Chase Bank, N.A.*, 2010 U.S. Dist. LEXIS 23770 (N.D. Cal.
    Mar. 15, 2010) ...................................................................................................................... 16

*Murphy v. Hartford Acc. & Indem. Co.*, 177 Cal. App. 2d 539 (Cal. At. App. 1960) ................. 11

*Nkwuo v. MetroPCS, Inc.*, No. 5:14-CV-05027-PSG, 2015 U.S. Dist. LEXIS
    111206 (N.D. Cal. Aug. 21, 2015) ........................................................................................ 13

*Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964 (N.D. Cal. 2008) ............................... 21, 22

*Rosado v. eBay, Inc.*, 53 F. Supp. 3d 1256 (N.D. Cal. 2014) ....................................................... 23

*Schmier v. U.S. Ct. of Appeals*, 279 F.3d 817 (9th Cir. 2002) ...................................................... 8

*Scott v. Pacific Gas & Electric Co.*, 904 P.2d 834 (Cal. 1995) .................................................... 17

*South Bay Chevrolet v. General Motors Acceptance Corp.*, 85 Cal. Rptr. 2d 301
    (Cal. Ct. App. 1999) ............................................................................................................. 20

*Spiegler v. Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036 (C.D. Cal. 2008) ............................ 24

*Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008) ..................................... 19

*Tollefson v. Roman Catholic Bishop*, 268 Cal. Rptr. 550 (Cal. Ct. App. 1990) .......................... 17

*Troyk v. Farmers Grp., Inc.*, 90 Cal. Rptr. 3d 589 (Cal. Ct. App. 2009) ..................................... 13

*Williamson v. Reinalt-Thomas Corp.*, No. 5:11-CV-03548-LHK, 2012 U.S. Dist.
    LEXIS 58639 (N.D. Cal. Apr. 25, 2012) ............................................................................... 25

*Woods v. Google, Inc.*, No. 05:11-CV-1263-JF, 2011 U.S. Dist. LEXIS 88795
    (N.D. Cal. Aug. 10, 2011) ............................................................................................ *passim*

## STATUTES

Cal. Bus. & Prof. Code § 17200 .................................................................................................... 18

Cal. Bus. & Prof. Code § 17204 ............................................................................. 18

Cal. Bus. & Prof. Code § 17500 ............................................................................. 25

**RULES**

Fed. R. Civ. P. 9(b) ....................................................................................... 21, 22

Fed. R. Civ. P. 12(b)(6) .................................................................................. 8, 11

**STATEMENT OF ISSUES**

A.      Whether Plaintiff's First Amended Complaint should be dismissed because Plaintiff contracted with Google to resolve all disputes relating to invalid clicks through Google's internal claims process but failed to submit any such claims to Google as required by the parties' governing agreement.

B.      Whether Plaintiff fails to state a claim for breach of contract because the parties' agreement contains no promises that Google will prevent all or some portion of instances of fraudulent third-party clicks and includes an integration clause and disclaimer of warranties provision that preclude reliance on extra-contractual statements.

C.      Whether Plaintiff fails to state a claim for breach of the implied covenant of good faith and fair dealing because the parties' written agreement does not require Google to protect advertisers from being charged for fraudulent clicks and because Plaintiff fails to plausibly allege that Google acted unreasonably or without good faith.

D.      Whether Plaintiff fails to state a claim under the Unfair Competition Law because Google's alleged conduct was not unlawful or unfair.

E.      Whether Plaintiff fails to state a fraud claim under the UCL and/or the False Advertising Law because Plaintiff fails to plausibly allege that the statements at issue were actually false or misleading and that he reasonably relied on those statements.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

AdWords is an online advertising platform that allows advertisers to show ads on various Google services and other websites. This case involves allegations of "click fraud" on pay-per-click ads displayed through AdWords. Click fraud refers to instances where third parties try to generate clicks that do not reflect genuine user interest in the ad. Google takes click fraud seriously and has implemented various measures to protect advertisers against it, including sophisticated filtering systems that aim to detect and block invalid clicks. Google also has a claims process that allows advertisers to report suspicious activity and receive advertising credits for charges determined to result from fraudulent (or otherwise invalid) clicks.

Plaintiff has been an AdWords advertiser since 2008. When he joined the AdWords program, Plaintiff accepted the Google Inc. Advertising Program Terms (the "AdWords Agreement" or "Agreement"), the contract that governs the relationship between Google and its advertisers. Nothing in the AdWords Agreement promised that Google would prevent all instances of click fraud. To the contrary, the Agreement specifically informed Plaintiff that third parties may "generate impressions or clicks on [his] Ads for prohibited or improper purposes" and that Google had a claims process that advertisers could use to resolve any charges or disputes that may result from such activity. Ex. 1 § 7. Ignoring all that, Plaintiff now brings this putative class action against Google for supposedly failing to do enough to protect him from click fraud. Without identifying a single instance in which Google actually charged him for fraudulent or invalid clicks, Plaintiff asserts that Google has breached the AdWords Agreement, engaged in unfair business practices, and made false statements. While Plaintiff is misguided in trying to impugn the good work Google does to combat click fraud, this case can be resolved solely based on the Amended Complaint, as Plaintiff's claims fail as a matter of law.

First, all of the claims are barred by the unambiguous terms of the AdWords Agreement. When he accepted the Agreement, Plaintiff expressly agreed to give up any claims regarding advertising charges (including those relating to supposedly fraudulent or invalid clicks) unless he submitted them to Google within 60 days of the relevant invoice. Ex. 1 § 7. Plaintiff does not (and cannot) allege that he *ever* used that claims process to bring any invalid clicks or charges to Google's attention. Plaintiff's inaction waived his claims.

Even without regard to the contractual waiver, Plaintiff does not have a viable cause of action against Google. His breach of contract claim must be dismissed because there is no promise in the AdWords Agreement regarding click fraud that Google failed to fulfill. The Agreement does not tell advertisers that they will be protected from any or all instances of click fraud. And the Agreement has an express integration clause that forbids the parties, as Plaintiff now seeks to do, from reaching outside the contract to impose new obligations on one another in this regard. In any event, the extra-contractual statements that Plaintiff identifies cannot be read as promises that advertisers will never be charged for clicks that are not detected by Google's

1  systems as fraudulent. To the extent it differs from the breach of contract claim, Plaintiff's claim

2  for breach of the implied duty of good faith is similarly foreclosed by the express terms of the

3  AdWords Agreement and because Plaintiff cannot plausibly allege that Google acted consciously

4  and deliberately to derogate the parties' reasonable expectations under the Agreement. The

5  claims under the UCL and FAL fail because there are no plausible allegations that Google acted

6  in violation of the law, unfairly, or fraudulently. None of the extra-contractual statements that

7  Plaintiff points to is deceptive, and in light of the specific terms of the parties' agreement,

8  Plaintiff could not, as a matter of law, have reasonably relied on those statements.

9       Because Plaintiff's claims are contractually barred and have no legal basis, the Amended

10  Complaint should be dismissed without further opportunity to amend.

11  **II.     FACTUAL AND PROCEDURAL BACKGROUND**

12       **A.     Google and its AdWords Program**

13       Google is an online service provider, whose offerings include various online advertising

14  programs. This case arises from AdWords, an online platform that Google makes available for

15  advertisers, who may be individuals or businesses, to have their ads displayed on various Google

16  properties, including Google Search and YouTube, and other websites. Amended Complaint

17  ("Am. Compl.") ¶¶ 1, 32. As relevant here, the ads displayed through AdWords are "pay-per-

18  click" ads. *Id.* ¶ 1. Advertisers pay for such ads when they are clicked on and redirected to the

19  advertised website (not when they are viewed), and they are generally billed on a per-click basis

20  until the advertiser reaches its pre-designated budget. *Id.* ¶ 32.

21       The relationship between Google and AdWords advertisers is governed by the AdWords

22  Agreement. Am. Compl. ¶ 3. Plaintiff is a party to this Agreement, which he accepted when he

23  signed up for an AdWords account in January 2008. *Id.* ¶ 7, 74. Plaintiff attaches the February

24  21, 2013 version of the AdWords Agreement to the Amended Complaint, and he alleges that this

25  version is the operative contract between the parties for purposes of his claims. *Id.* ¶ 3; Am.

26

27

28

Compl., Exhibit A (Exhibit 1 ("Ex. 1")).[1] The Agreement is three pages long and includes several provisions that bear directly on this case.

*First*, the Agreement specifically anticipates that invalid clicks may happen and may result in charges to advertisers, and the contract provides a specific remedial process for handling any such charges. Section 7 states: "Customer understands that third parties may generate impressions or clicks on Customer's ads for prohibited or improper purposes." Ex. 1 § 7. If advertisers suspect that third parties are generating fraudulent or invalid clicks on their ads, they can report suspicious charges to Google within 60 days of invoicing (the "Claims Period") and receive ad credits. *Id.* This claims process represents the advertiser's "sole remedy" for claims relating to advertising charges. *Id.* Advertisers expressly waive "ALL CLAIMS" for charges that are not submitted to Google within the Claims Period. *Id.*[2]

*Second*, the AdWords Agreement, by its terms, is a fully integrated contract: it represents the parties' "entire agreement" and "supersede[s] any prior or contemporaneous agreements on that subject." Ex. 1 § 12(c).[3]

*Third*, the Agreement expressly disclaims all implied warranties and states that the AdWords program is provided without "ANY GUARANTEE IN CONNECTION WITH THE PROGRAM OR PROGRAM RESULTS." Ex. 1 § 8.[4]

---

[1] For purposes of this motion, Google accepts Plaintiff's allegation. However, because Plaintiff created his AdWords account in 2008, a prior version of the AdWords Agreement, dated August 22, 2006 (the "2006 Agreement"), may actually be the operative contract between the parties. *See* Exhibit 2 ("Ex. 2"). At any rate, the two versions of the Agreement are materially indistinguishable with respect to the issues in this Motion. The exhibits referred to herein are attached to the accompanying Declaration of Dale R. Bish.

[2] Similarly, the 2006 Agreement provided: "Customer understands that third parties may generate impressions or clicks on Customer's ads for prohibited or improper purposes, and Customer accepts the risk of any such impressions and clicks. Customer's exclusive remedy, and Google's exclusive liability, for suspected invalid impressions or clicks is for Customer to make a claim for a refund in the form of advertising credits for Google Properties within the [applicable] time period.... " Ex. 2 § 5.

[3] The 2006 Agreement made this equally clear: "The Agreement constitutes the entire and exclusive agreement between the parties with respect to the subject matter hereof, and supersedes and replaces any other agreements, terms and conditions applicable to the subject matter hereof. No statements or promises have been relied upon in entering into this Agreement except as expressly set forth herein, and any conflicting or additional terms contained in any other documents (e.g. reference to a purchase order number) or oral discussions are void." Ex. 2 § 9.

**B.**     **Google's Efforts to Limit Charges for Invalid Clicks**

This case involves allegations about fraudulent or invalid clicks by third parties on the AdWords platform. Google uses the term "click fraud" to refer to clicks generated with malicious or fraudulent intent. Exhibit 3 ("Ex. 3") at 1-2.[5] "Invalid" clicks are clicks that Google considers to be illegitimate because they appear to be accidental, duplicative, the result of malicious software, or otherwise fraudulent. *Id.* Plaintiff does not identify any individuals or entities that he believes are responsible for click fraud, whether in connection with his AdWords account or any other advertiser's account. He has not brought claims against any of those alleged fraudsters. Instead, Plaintiff seeks to proceed solely against Google on the theory that Google did not do enough to prevent third parties from abusing its systems by generating fraudulent clicks.

But it is clear just from Plaintiff's Amended Complaint, and the public-facing materials incorporated by reference, that Google has implemented a range of solutions to address click fraud and limit its effects on AdWords advertisers. *See* Am. Compl. ¶ 30 (referencing Google's "global team which is dedicated to staying on top of [advertisers'] concerns, monitoring traffic across Google's ad network, and preventing advertisers from paying for invalid traffic."); Ex. 3 at 3-4. Google uses a complex array of filtering systems—some automated, some involving

---

(...continued from previous page)

[4] The 2006 AdWords Agreement also provided: "To the fullest extent permitted by law, Google disclaims all guarantees regarding positioning, levels, quality, or timing of: (i) costs per click; (ii) click through rates; (iii) availability and delivery of any impressions, Creative, or Targets on any Partner Property, Google Property, or section thereof; (iv) clicks; (v) conversions or other results for any ads or Targets; (vi) the accuracy of Partner data (e.g. reach, size of audience, demographics or other purported characteristics of audience); and (vii) the adjacency or placement of ads within a Program." Ex. 2 § 5.

[5] Throughout the Amended Complaint, Plaintiff quotes, refers to, and expressly relies on statements from Google's online Ad Traffic Quality Resource Center and AdWords Help Center. Am. Compl. ¶¶ 2, 22, 31, 70(b)(viii)-(x), 77-78, 101, 103, 118. The public-facing webpages on which these statements appear thus are incorporated into the Amended Complaint and properly considered by the Court in connection with this Motion. *See Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 511 (9th Cir. 2013) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.") (internal quotation marks, alteration, and citation omitted). For the Court's convenience, Google has provided copies of those pages with this motion. *See* Ex. 3, Ad Traffic Quality Resource Center, https://www.google.com/ads/adtrafficquality/ (last visited Oct. 20, 2016); Exhibit 4 ("Ex. 4"), AdWords Help Center: Invalid Clicks, https://support.google.com/adwords/answer/42995?hl=en (last visited Oct. 20, 2016); *accord Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

---

1    human review—that monitor for and detect instances of click fraud. When Google's systems

2    identify suspicious click patterns or behaviors that appear to be fraudulent or otherwise invalid,

3    those clicks are excluded, often before advertisers are charged for them. Ex. 3 at 3-4.[6]

4           While these systems catch a significant quantity of invalid clicks, they do not catch

5    everything. *See, e.g.*, Ex. 3 at 3 ("Undoubtedly, some portion of the invalid click activity is not

6    detected by our proactive systems and processes."). As discussed above, the AdWords

7    Agreement itself makes clear that despite Google's efforts, some invalid clicks may result in

8    charges to the advertiser's account. Ex. 1 § 7. While Google makes no promise that advertisers

9    will be protected from being charged for potentially invalid clicks that may be missed by

10   Google's filtering systems, advertisers are not without recourse should that happen. Google has

11   in place an investigations process triggered by claims from advertisers reporting what they

12   believe to be invalid clicks. If Google determines through this process that there were charges

13   based on fraudulent or invalid clicks, Google issues a credit to the advertiser's account. Ex. 3 at

14   4. This claims process is set out in the AdWords Agreement. Ex. 1 § 7. It is also described in the

15   extra-contractual materials that Plaintiff references in his Amended Complaint. Ex. 3 at 3-4

16   (describing "reactive investigations we undertake on behalf of advertisers who contact us with

17   concerns"); Ex. 4 ("If we find that invalid clicks have escaped automatic detection, you may be

18   eligible to receive a credit for those clicks."). Although this process "[a]ccounts for a much

19   smaller proportion of invalid clicks than that detected by [Google's] automatic filters" (Ex. 3 at

20   4), it is an important part of Google's efforts to combat click fraud.

21          The clicks identified from Google's proactive and reactive systems are what Google

22   describes as "invalid traffic," i.e., "clicks and impressions on AdWords ads ***that Google suspects***

23

24          [6] While trying to minimize the click fraud filtration tools that Google has developed for
25   AdWords, the Amended Complaint refers in various places to Google's "SQR Guidelines" and
     "PQRs." Am. Compl. ¶¶ 38-43; 70(b)(v), 70(b)(vii), 90, 92, 106. These guidelines relate
26   exclusively to Google Search. *Id.* ¶¶ 35-39 (acknowledging the SQR Guidelines and PQRs are
     related to "organic, user-generated Web searches," "organic search results," "organic searches
27   through the Google website" and "search engines"). Plaintiff does not (and cannot) allege they
     have any connection to the AdWords program. Nor does he allege that any of his ads ever
     appeared on third-party webpages that had been assigned a low quality score through Google's
28   Search guidelines. *Cf. id.* ¶ 50 (Plaintiff used AdWords for "highly-targeted marketing").

1   to not be the result of genuine user interest." Ex. 3 at 1 (emphasis added). That does not mean, of

2   course, that *all* instances of what may be invalid clicks are invariably detected. And if advertisers

3   do not bring what they believe to be charges based on fraudulent clicks to Google's attention

4   through the internal claims process, those charges may never be fully investigated or identified.

5                       **C.      Plaintiff and His Claims Against Google**

6           Plaintiff Gurminder Singh alleges that he is a small-business owner who signed up for an

7   AdWords account in January 2008. Am. Compl. ¶¶ 4, 7, 17. Plaintiff acknowledges that he

8   consented to the terms of the AdWords Agreement by clicking through the Agreement when he

9   created his AdWords account. *Id.* ¶ 7. Plaintiff alleges he has used AdWords since that time, i.e.,

10  for more than eight years, because it offers "keyword-specific" and "highly-targeted" advertising

11  opportunities for "his various business ventures." *Id.* ¶ 50.

12          Plaintiff alleges that in "early 2016," he began to suspect that certain of his

13  advertisements "were being fraudulently manipulated by third-party publishers/website owners."

14  *Id.* ¶ 52. Specifically, Plaintiff alleges he saw a noticeable increase in total clicks while seeing a

15  decrease in "conversions" (valuable actions taken on the advertiser's website after someone

16  clicks on the ad). *Id.* ¶¶ 53-54. There is no indication in the Amended Complaint that Plaintiff

17  ever reported any of his concerns to Google or sought Google's assistance in identifying the third

18  parties responsible for any click fraud. Indeed, the Amended Complaint does not identify *any*

19  instance in which Plaintiff was supposedly charged by Google for fraudulent or invalid clicks.

20  Nor does Plaintiff allege that he ever requested advertising credits for such clicks through

21  Google's claims process.

22          Rather than documenting or seeking compensation for any improper charges, Plaintiff

23  alleges that he conducted two "experiments" to "determine the extent of such fraud." *Id.* ¶ 55.

24  Plaintiff says that he created two pairs of advertisements that directed customers to two different

25  websites. *Id.* ¶¶ 56-61. One of each pair of these ads was, according to Plaintiff, a "Standard" ad,

26  whereas the other two ads were "Experimental." *Id.* ¶ 56. Plaintiff then monitored the click

27  activity that was reported to him in connection with these ads. *Id.* ¶¶ 57-62. He makes the

28  (entirely unsupported) assumption that all reported clicks on the Experimental ads were invalid

1    while all reported clicks on the Standard ads were legitimate. *Id*. ¶¶ 59, 62. Based solely on these

2    fake ads, along with a footnoted reference to an unrelated article published on LinkedIn (*id*. ¶ 59,

3    n.19), Plaintiff claims that the rate of click fraud on AdWords is upwards of 30-50%. *Id*. ¶¶ 59,

4    62-63. Plaintiff did not share his "findings" with Google. He did not request ad credits. (Indeed,

5    Plaintiff does not allege that he was charged for any clicks associated with his experimental ads.)

6    Nor did he stop using AdWords.

7          Instead, Plaintiff filed this lawsuit against Google on July 1, 2016. He filed his Amended

8    Complaint on September 9, 2016. The Amended Complaint asserts four causes of action: (1)

9    breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) violation

10   of California's Unfair Competition Law ("UCL"); and (4) violation of California's False

11   Advertising Law ("FAL"). *Id*. ¶¶ 72-123. Plaintiff also purports to bring his claims on behalf of a

12   putative class of AdWords advertisers. *Id*. ¶ 8, 65.

13   **III.    ARGUMENT**

14         A complaint must be dismissed when it "fail[s] to state a claim upon which relief can be

15   granted." Fed. R. Civ. P. 12(b)(6). "'The court may dismiss a complaint as a matter of law for (1)

16   lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim.'" *Lovesy*

17   *v. Armed Forces Benefit Ass'n*, No. C-07-2745 SBA, 2008 U.S. Dist. LEXIS 97790, at *5 (N.D.

18   Cal. Nov. 5, 2008) (citation omitted). Because "only a complaint that states a plausible claim for

19   relief survives a motion to dismiss[,]" "[t]hreadbare recitals of the elements of a cause of action,

20   supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-

21   79 (2009). A court thus need not accept conclusory allegations or unwarranted inferences as true.

22   *Schmier v. U.S. Ct. of Appeals*, 279 F.3d 817, 820 (9th Cir. 2002). Applying these standards, the

23   claims alleged in the Amended Complaint fail as a matter of law.

24         **A.       Plaintiff Waived Any Claims Arising From Charges For Allegedly Invalid**

25                 **Clicks By Failing To Use The Claims Process Provided In The Agreement**

26         The gravamen of Plaintiff's claims is that Google allegedly failed to do enough to prevent

27   Plaintiff's AdWords account from being charged for fraudulent clicks. Plaintiff alleges that

28   Google's failure to prevent such clicks violated the terms of the parties' AdWords Agreement,

1    breached an implied covenant of good faith created by that agreement, and violated the UCL and

2    the FAL. While each of those claims fails on its own terms, the most fundamental problem with

3    Plaintiff's case is that it is barred by the plain terms of the AdWords Agreement.

4          Plaintiff acknowledges that he accepted the Agreement and that it governs his

5    relationship with Google as an AdWords advertiser. Am. Compl. ¶¶ 3, 7. Yet the Amended

6    Complaint inexplicably ignores what the Agreement actually says. Section 7 provides as follows:

7    "Customer understands that third parties may generate impressions or clicks on Customer's Ads

8    for prohibited or improper purposes and that its sole remedy is to make a claim for advertising

9    credits within the Claim Period, after which Google will issue the credits following claim

10   validation which must be used by the Use By Date." Ex. 1 § 7. This provision governs the exact

11   situation presented by this case: an advertiser who contends that it has been charged for clicks

12   that are invalid or fraudulent. It puts advertisers like Plaintiff on clear notice that some clicks on

13   their ads might be invalid and may not be detected by Google's systems.

14         Section 7 goes on to create a simple process for advertisers to use if they believe that they

15   have been charged for invalid clicks. It instructs them to submit a claim to Google within the

16   "Claim Period" (60 days following the invoice (*id.* § 3)), in response to which Google will issue

17   advertising credits reimbursing the advertiser for any charges that are determined to have arisen

18   from invalid clicks. Ex. 1 § 7. This process benefits both advertisers and Google. It gives

19   advertisers a streamlined method for reporting invalid clicks and for receiving credits for any

20   resulting charges. And it provides Google with certainty that any disputes relating to invalid

21   clicks will be presented promptly in a forum that allows for their efficient resolution.

22   Accordingly, by accepting the AdWords Agreement, Plaintiff agreed that his "sole remedy" for

23   charges resulting from purportedly invalid or fraudulent clicks would be to submit those claims

24   to Google within 60 days of the relevant invoice. *Id.*

25         That is exactly the situation here. The Amended Complaint makes no allegation that

26   Plaintiff ever (and certainly not within the 60-day window) submitted to Google any claim

27   regarding fraudulent clicks. Nor does Plaintiff allege that he ever sought to use Google's

28   administrative process to obtain advertising credits for charges relating to such clicks. Instead,

1   Plaintiff ignored the mechanism that the parties' contract establishes for precisely this scenario.

2   Despite being on notice in the Agreement itself that he might be charged for invalid clicks

3   (notwithstanding Google's efforts to prevent them), for more than eight years as an AdWords

4   advertiser, Plaintiff waited, doing and saying nothing to Google about any alleged overcharges

5   and never asking for credits or any other compensation. When he finally did raise the issue,

6   Plaintiff tried to bypass the contractually mandated process altogether by filing a lawsuit in

7   federal court, without even mentioning that process or the contractual provisions surrounding it.

8           Under the AdWords Agreement, the consequences of Plaintiff's failure to avail himself

9   of this administrative remedy are clear: "TO THE FULLEST EXTENT PERMITTED BY LAW,

10   (A) ADVERTISER AND CUSTOMER WAIVE ALL CLAIMS RELATING TO ANY

11   PROGRAM CHARGES UNLESS A CLAIM IS MADE WITHIN THE CLAIM PERIOD...."

12   Ex. 1 § 7. This waiver applies here. The claims asserted in Plaintiff's Amended Complaint are all

13   "claims relating to ... program charges." *See id*. § 1 (defining "Programs"). Because Plaintiff

14   failed to submit those claims to Google during the Claim Period, he has given up his "sole

15   remedy" (*id*. § 7) under the Agreement and waived any judicial claims arising from charges

16   associated with allegedly fraudulent or invalid clicks.[7]

17           This Court's recent ruling in *Free Range Content, Inc. v. Google*, No. 14-CV-02329,

18   2016 U.S. Dist. LEXIS 64365, at *33-40 (N.D. Cal. May 13, 2016), is directly on point. That

19   case involved a similar provision in Google's AdSense Agreement under which "a publisher

20   waives any payment-related claim by failing to dispute the payment or withholding within 30

21   days." *Id*. at *35. Granting Google's motion to dismiss based on the waiver, the Court concluded

22

23           [7] This contractual requirement that advertisers present their claims to Google within 60 days
24   is reasonable and enforceable. In *Feldman v. Google*, which involved virtually identical claims to
     this case, the Court rejected an advertiser's argument that the AdWords Agreement—including
25   specifically the provision "requiring that claims relating to charges be brought within sixty days
     of the charges"—was unconscionable. 513 F. Supp. 2d 229, 243 (E.D. Pa. 2007) (explaining that
26   the provision "affords [advertisers] sufficient time to identify, investigate, and report billing
     errors"); *see also, e.g.*, *Google, Inc. v. Mytriggers*, No. 09-CVH-10-14836, 2013 Ohio Misc.
27   LEXIS 11743, at *20 (Ohio C.P. July 2, 2013) (rejecting argument that AdWords Agreement is
     unconscionable). As these cases make clear, the bare allegation in the Amended Complaint that
28   the AdWords Agreement is an "adhesion contract" (Am. Compl. ¶ 81) does not render it
     unenforceable.

1   that "30 days is a reasonable amount of time in which to notify Google of a dispute" (*id*. at *39).

2   Accordingly, the Court dismissed all claims from the case that the relevant plaintiffs had failed to

3   submit to Google within the time provided by the agreement, and found that any amendment

4   would be "futile." *Id*. at *39-40. The Court should do the same in this case. As in *Free Range*,

5   Plaintiff's failure to use the process provided for in the parties' governing agreement "bars [his]

6   claims in their entirety." *Id*. at *38.

7       **B.      Plaintiff's Claim For Breach of Contract Fails As A Matter of Law**

8           Even without regard to the waiver provision, however, all of the claims asserted in the

9   Amended Complaint fail and should be dismissed under Rule 12(b)(6).

10          We start with breach of contract. Under California law, a claim for breach of contract

11  requires the violation of an *actual promise* contained within or incorporated into a contract. *See*

12  *Murphy v. Hartford Acc. & Indem. Co.*, 177 Cal. App. 2d 539, 543 (Cal. Ct. App. 1960). The

13  plaintiff must point to the "'specific provisions in the contract creating the obligation the

14  defendant is said to have breached.'" *In re Anthem Data Breach Litig.*, 162 F. Supp. 3d 953, 978

15  (N.D. Cal. 2016) (citation omitted); *Woods v. Google, Inc.*, No. 05:11-CV-1263-JF, 2011 U.S.

16  Dist. LEXIS 88795, at *9-10 (N.D. Cal. Aug. 10, 2011). Plaintiff contends that the AdWords

17  Agreement imposes an obligation on Google "to protect Plaintiff and the class from fraudulent

18  third-party clicks." Am. Compl. ¶¶ 77-79. But he does not identify any contractually binding

19  promises by Google to prevent Plaintiff from being charged for all (or some quantum of) invalid

20  clicks. And the written terms of the Agreement disclaim any such obligation. Plaintiff cannot

21  assert a breach of contract claim by inventing a promise that Google never made.

22          **1.      The AdWords Agreement makes no promises that Google will detect**

23                  **or prevent all, or some, invalid clicks from being charged**

24          Far from promising advertisers that Google will protect them from invalid clicks, the

25  AdWords Agreement puts advertisers expressly on notice that they may experience such clicks.

26  As discussed above, Section 7 clearly discloses the possibility of click fraud. Ex. 1 § 7. By the

27  terms of the Agreement, therefore, Plaintiff understood that his account might be charged for

28  clicks that Google's systems did not detect as invalid. This express contractual understanding is

1    the opposite of a promise to detect any or all invalid clicks. It rules out any argument that Google

2    promised Plaintiff as part of the Agreement that it would prevent click fraud from occurring or

3    resulting in charges to his account.

4              Reinforcing this language, Section 8 of the AdWords Agreement expressly disclaims any

5    idea that Google is making any guarantees regarding its advertising programs: "NONE OF

6    GOOGLE, ITS AFFILIATES OR GOOGLE'S PARTNERS MAKE ANY GUARANTEE IN

7    CONNECTION WITH THE [ADVERTISING] PROGRAMS OR PROGRAM RESULTS."

8    This disclaimer precludes any suggestion that the Agreement includes a promise to Plaintiff that

9    Google will detect all (or some quantum of) invalid clicks or will prevent advertisers from ever

10   being charged for such clicks. To the contrary, Google tells advertisers expressly that they take

11   the AdWords program "as is" and that there are no guarantees that they will be protected from

12   any efforts made by third parties to misuse Google's advertising systems.

13             Given these clear terms, it is not surprising that Plaintiff is unable to identify any

14   language in the AdWords Agreement that supports his breach of contract claim. The only

15   provision that Plaintiff references is a single sentence in Section 7: "[c]harges are solely based on

16   Google's measurements for the applicable Program, unless otherwise agreed to in writing." Am.

17   Compl. ¶ 76.[8] But this sentence does not support Plaintiff's claim in any way. It does not say that

18   invalid clicks will be detected and never billed to advertisers. To the contrary, the whole point of

19   the sentence is to say that Google is the party with the exclusive right to determine how

20   advertising charges should be measured. If those charges include clicks that Google's filters did

21   not register as fraudulent, those charges are based on "Google's measurements." And that is

22   equally true even if an advertiser believes those clicks to be invalid. It is still Google's

23   measurements that determined what the charges were. Of course, advertisers have recourse: they

24   are free to submit a claim to Google and receive credits for any invalid charges. But they cannot

25   assert, as Plaintiff does here, that Google has somehow promised to stop all invalid clicks before

26   they happen or to exclude all charges resulting from such clicks from ever being billed.

27   _____

28       [8] Although Plaintiff alleges the 2013 Agreement is the operative version of the contract, the
     language he quotes here actually comes from the 2006 Agreement (*see* Ex. 2 § 7).

1    Because the plain terms of the AdWords Agreement defeat any claim for breach of

2    contract, that claim should be dismissed without leave to amend. *See, e.g.*, *Nkwuo v. MetroPCS,*

3    *Inc.*, No. 5:14-CV-05027-PSG, 2015 U.S. Dist. LEXIS 111206, at *3 (N.D. Cal. Aug. 21, 2015)

4    (dismissing plaintiff's breach of contract claim where the "express terms of the service contract

5    … specifically permit[ted] the conduct [plaintiff] finds objectionable"); *Frances T. v. Village*

6    *Green Owners Ass'n*, 723 P.2d 573, 586 (Cal. Ct. App. 1986) ("Plaintiff's allegation that

7    defendants breached that contract . . . must fail because she does not allege that any provision in

8    any of the writings imposed such an obligation on defendant.").

9                        **2.      Plaintiff cannot rely on statements outside the AdWords Agreement**

10                              **as "binding promises" incorporated into the integrated contract**

11   Recognizing that the Agreement itself does not support his position, Plaintiff rests his

12   breach of contract claim on statements that are not part of the Agreement at all. Am. Compl. ¶¶

13   77-78. This effort to evade the parties' written contract does not work. Under California law, the

14   terms of a separate document can be incorporated into a written contract only where the written

15   agreement contains a "clear and unequivocal" reference to those terms. *Troyk v. Farmers Grp.,*

16   *Inc.*, 90 Cal. Rptr. 3d 589, 610 (Cal. Ct. App. 2009). The opposite is true here.

17   The AdWords Agreement, by its terms, is a fully integrated contract: "These Terms are

18   the parties' entire agreement relating to its subject and supersede any prior or contemporaneous

19   agreements on that subject." Ex. 1 § 12(c). This integration clause defeats any effort by Plaintiff

20   to "incorporate" outside materials into the AdWords Agreement. It makes clear that only the

21   terms of the written agreement itself form the contract between the parties and that no extra-

22   contractual statements can be invoked as additional promises in support of a breach of contract

23   action. *See In re Facebook, Inc., PPC Adver. Litig.*, 282 F.R.D. 446, 457 (N.D. Cal. 2012) ("The

24   [agreement] contains an integration clause, which precludes a finding that the ... statements

25   outside the [agreement] can be used to impose additional contractual obligations on Facebook.").

26   To further drive that point home, the Agreement also says that Google is providing AdWords

27   without "ANY GUARANTEE IN CONNECTION WITH THE PROGRAM OR PROGRAM

28   RESULTS." Ex. 1 § 8.

1    Ignoring all of this, Plaintiff suggests that the Agreement's "measurements" provision

2    somehow references, and thereby incorporates, statements in Google's Ad Traffic Quality

3    Resource Center and AdWords Help Center. Am. Compl. ¶¶ 76-80. Plaintiff is wrong. Neither

4    the measurements provision, nor anything else in the AdWords Agreement, overrides or limits

5    the clear language of the integration provision and disclaimer of warranties. To the contrary, as

6    we explained above, the measurements language simply means just what it says: that charges to

7    advertisers will be based on the measurements that Google makes, including cases where

8    Google's filters do not register certain clicks as invalid. The provision underscores that Google,

9    not the advertiser, determines which clicks result in charges. It is not a license to advertisers to

10   rewrite the Agreement by incorporating as supposedly binding promises various extra-

11   contractual statements about Google's efforts to combat click fraud. The parties specifically

12   agreed that such statements were not part of the Agreement, and the measurements clause cannot

13   be used to undo that understanding.

14              **3.      Even if the extra-contractual statements were part of the AdWords**

15                        **Agreement, they are not promises that can support a claim**

16   Even if there were a basis for incorporating extra-contractual statements into the

17   AdWords Agreement, Plaintiff's claim would still fail because the statements he invokes are not

18   promises that Google failed to honor.

19   First, Plaintiff points to the statement that "On average, invalid clicks account for less

20   than 10% of all clicks on AdWords ads." Am. Compl. ¶¶ 31, 77; *see also* Ex. 3 at 2. But this, on

21   its face, is simply a description of Google's historical experience in detecting click fraud. The

22   statement says that, on average, the invalid clicks that Google detects have accounted for

23   approximately 10% of overall clicks. It simply cannot be read as a promise that an advertiser will

24   never be charged for more than 10% invalid clicks or that Google will detect a specific

25   percentage of invalid clicks before they result in charges. And it does not change Plaintiff's

26   obligation under the Agreement to make a claim for a refund within 60 days of being billed for

27   any charges that he wishes to dispute. *See Woods*, 2011 U.S. Dist. LEXIS 88795, at *14.

28

1    Similarly, the statement that "[w]hen Google determines that clicks are invalid, we try to

2    automatically filter them from your reports and payments so that you're not charged for those

3    clicks" (Am. Compl. ¶ 78), is nothing more than a description of Google's filtering practices. It

4    is part of Google's efforts to explain the systems it has in place to identify invalid clicks. *See* Ex.

5    4. This statement is an empirical account of the efforts Google makes to stop click fraud. It does

6    not say that Google will prevent all (or some specific quantum of) charges for allegedly invalid

7    clicks. There is no basis for allowing Plaintiff to transform these straightforward empirical

8    statements into binding promises.

9    Indeed, the argument Plaintiff makes here has been squarely rejected by this Court. In the

10   original complaint in *Woods*, an AdWords customer advanced a similar breach of contract claim

11   based on Google's supposed failure to protect against click fraud. As here, the plaintiff tried to

12   argue that certain AdWords Help Center statements addressing Google's click fraud efforts were

13   binding promises incorporated into the AdWords Agreement. But Judge Fogel dismissed that

14   theory: "even if the Court were to consider Google's statements in the AdWords Help Center as

15   part of the Agreement, Woods has not shown that Google breached an actual promise." *Woods*,

16   2011 U.S. Dist. LEXIS 88795, at *14. The same is true here. The statements that Plaintiff relies

17   on are not part of the AdWords Agreement, and even if they were, they are not binding promises

18   that can support a claim for breach of contract.

19       **C.      Plaintiff Cannot State A Claim for Breach of the Implied Covenant**

20   Plaintiff next invokes the implied covenant of good faith and fair dealing. He alleges that

21   Google breached the implied covenant in the AdWords Agreement because Google supposedly

22   did not protect Plaintiff from all (or some quantum of) fraudulent clicks, or knowingly allowed

23   fraudulent clicks. Am. Compl. ¶¶ 90-91. Beyond the fact that this claim is subject to the

24   Agreement's waiver provision, an invocation of the implied covenant of good faith fails here for

25   two basic reasons. First, there is no underlying promise in the AdWords Agreement that Plaintiff

26   would be protected from invalid clicks (apart from the claims process that Plaintiff ignored).

27   Thus, even assuming that Plaintiff's claim does not merely duplicate his breach of contract

28   claim, his bid to use the implied covenant to impose a broad extra-contractual duty on Google is

1    legally improper. Second, the Amended Complaint makes no plausible allegation that Google

2    acted in bad faith to deprive Plaintiff of any benefit that he could reasonably have expected under

3    the terms of the Agreement.

4                    **1.        Plaintiff cannot use the implied covenant to rewrite the parties'**

5                            **agreement regarding fraudulent clicks**

6                The purpose of the implied covenant of good faith and fair dealing is to prevent

7    contracting parties from acting to injure one another's rights to receive the intended benefits of

8    their agreement. To invoke it, therefore, as this Court has recognized, the plaintiff must show

9    that "the defendant deprived the plaintiff of a benefit conferred by the contract in violation of the

10   parties' expectations at the time of contracting." *Free Range Content*, 2016 U.S. Dist. LEXIS

11   64365, at *40 (citation and internal quotations omitted); *see also Avila v. Countrywide Home*

12   *Loans*, No. 10-CV-05485-LHK, 2010 U.S. Dist. LEXIS 133701, at *13 (N.D. Cal. Dec. 7, 2010)

13   (plaintiff must show the defendant "deprived him of a benefit actually conferred or contemplated

14   by the contract"); *Agosta v. Astor*, 15 Cal. Rptr. 3d 565, 573-73 (Cal. Ct. App. 2004) (same).

15               This means that a claim for breach of the implied covenant must always be tied to the

16   "express covenants or promises of the contract." *Carma Developers, Inc. v. Marathon Dev. Cal.,*

17   *Inc.*, 826 P.2d 710, 727 (Cal. 1992). It "cannot impose substantive duties or limits on the

18   contracting parties beyond those incorporated in the specific terms of their agreement."

19   *Damabeh v. 7-Eleven, Inc.*, No. 5:12-CV-1739-LHK, 2013 U.S. Dist. LEXIS 66565, at *18

20   (N.D. Cal. May 8, 2013) (quotation marks omitted). Yet that is precisely what Plaintiff seeks to

21   do here. He would read into the AdWords Agreement an expansive obligation on Google's part

22   to detect and prevent fraudulent clicks. As an initial matter, this invocation of the implied

23   covenant essentially duplicates Plaintiff's breach of contract claim, and it can be dismissed for

24   that reason alone. *See Malcolm v. JP Morgan Chase Bank, N.A.*, 2010 U.S. Dist. LEXIS 23770,

25   at *7 (N.D. Cal. Mar. 15, 2010); *Careau & Co. v. Sec. Pac. Bus. Credit*, 272 Cal. Rptr. 387, 399-

26   400 (Cal. Ct. App. 1990). But to the extent the claim is distinct, it fails as a matter of law.

27               As explained above, the AdWords Agreement makes no promises that Google will

28   prevent any or all click fraud. To the contrary, the Agreement makes clear that click fraud may

1   occur, that such clicks (if undetected) may lead to charges, and that advertisers can remedy those

2   charges by using Google's claims process. Plaintiff cannot use the implied covenant to "rewrite"

3   the parties' contract "to include provisions entirely foreign to and expressly negated by the

4   original." *Tollefson v. Roman Catholic Bishop*, 268 Cal. Rptr. 550, 556 (Cal. Ct. App. 1990)

5   (disapproved on other grounds in *Scott v. Pacific Gas & Electric Co.*, 904 P.2d 834, 846 n.5

6   (Cal. 1995)). Because Google did not make any underlying promise to stop some quantum of

7   click fraud, or to never charge for clicks that may not be detected as invalid, there is no basis for

8   Plaintiff to assert that Google failed to carry out that supposed obligation in good faith. In short,

9   Plaintiff's claim suffers from the same defect that Judge Fogel identified in dismissing a virtually

10  identical claim in *Woods*: "Woods has failed to allege that Google undertook a specific duty that

11  it failed to discharge." 2011 U.S. Dist. LEXIS 88795, at *20.

12              **2.      Plaintiff does not plausibly allege that Google's actions regarding**

13                       **click fraud were unreasonable or done in bad faith**

14          Beyond improperly trying to change the terms of the parties' agreement, Plaintiff's claim

15  fails because there are no plausible allegations that Google acted in bad faith. Allegations

16  supporting a claim for breach of the implied duty of good faith "must show that the conduct of

17  the defendant . . . demonstrates a failure or refusal to discharge contractual responsibilities,

18  prompted not by an honest mistake, bad judgment or negligence *but rather by a conscious and*

19  *deliberate act*, which unfairly frustrates the agreed common purposes and disappoints the

20  reasonable expectations of the other party." *Careau*, 272 Cal. Rptr. at 399-400 (emphasis added).

21  Applying this rule in *Free Range,* this Court dismissed the claim brought by AdSense publishers

22  who alleged that Google breached the implied covenant by terminating them while allowing

23  other similar publishers to remain active. The Court held that these bald allegations were "not

24  enough to plead bad faith." *Free Range*, 2016 U.S. Dist. LEXIS 64365, at *46.

25          Plaintiff's claim here fails for the same reason. Apparently recognizing that his original

26  allegations (that Google should have done more to prevent click fraud) were inadequate, Plaintiff

27  amended his Complaint to allege that Google charged advertisers for clicks that it "knew or

28  should have known" were invalid. Am. Compl. ¶ 90. This allegation does not state a claim. To

1   the extent Plaintiff is trying to suggest actual knowledge, his allegations are entirely conclusory.

2   The Amended Complaint does not offer a single factual allegation that would suggest (much less

3   plausibly suggest) that Google ever charged Plaintiff, or indeed any advertiser, for clicks that

4   Google knew were invalid. Plaintiff identifies no instance when that supposedly happened. And

5   he certainly does not allege that he ever informed Google about any specific clicks or charges

6   that he thought were the product of click fraud.

7        Because it is clear that Plaintiff has no basis for alleging actual knowledge, he waters

8   down his allegations by suggesting that Google "should have known" or "turned a blind eye."

9   Am. Compl. ¶ 90. But this is merely another way of arguing that Google might have taken

10  additional steps that Plaintiff thinks would have better protected advertisers from the possibility

11  of click fraud. That is not enough to support a claim for breach of the implied covenant.

12  Plaintiff's allegations do not establish that Google engaged in any "conscious [or] deliberate act"

13  (*Careau & Co.*, 272 Cal. Rptr. at 399) to saddle Plaintiff with improper advertising charges. That

14  is especially true here, as the only basis for Plaintiff's constructive knowledge allegation is that

15  Google did not use its Search guidelines in connection with its AdWords click fraud detection

16  efforts. But merely because Google maintains certain measurements for one purpose (assessing

17  the quality of third-party websites for Search rankings), it does not act in bad faith by not using

18  those measurements for a totally different purpose (preventing advertising click fraud) in

19  connection with a different service. The implied covenant does not allow Plaintiff to impose a

20  broad obligation on Google—one not at all contemplated by the parties' actual agreement—to

21  take whatever steps an advertiser imagines might better protect against third-party wrongdoing.

22       **D.    Plaintiff Fails To State A Claim Under The UCL**

23       The Amended Complaint fares no better when it turns to Plaintiff's statutory claims. To

24  bring a claim under the UCL, Plaintiff must show that he lost money or property as a result of an

25  unlawful, unfair, or fraudulent business practice. Cal. Bus. & Prof. Code §§ 17200, 17204. While

26  Plaintiff claims to have suffered an injury in the form of overcharges for invalid clicks, he fails to

27  identify any actual charges for clicks that he believes to be invalid. But even if Plaintiff had

28

1    offered such allegations, his UCL claim fails because Plaintiff cannot establish that Google

2    committed any unlawful, unfair, or fraudulent practices in connection with its AdWords billing.

3    **1.    Plaintiff cannot state a claim under the "unlawful" prong**

4    Plaintiff's invocation of the UCL's unlawfulness prong relies solely on the claim that

5    Google breached the parties' contract. Am. Compl. ¶¶ 110-11. It is well settled, however, that a

6    "breach of contract, and by extension, a breach of the implied covenant of good faith and fair

7    dealing, is not itself an unlawful act for purposes of the UCL." *Boland v. Rolf C. Hagen (USA)*

8    *Corp.*, 685 F. Supp. 2d 1094, 1110 (E.D. Cal. 2010); *see also Sybersound Records, Inc. v. UAV*

9    *Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008). Here, Plaintiff has not pleaded, and could not plead,

10   that Google engaged in any unlawful conduct distinct from the alleged (and non-existent) breach

11   of the AdWords Agreement. His unlawfulness claim therefore must be dismissed. *See, e.g.*, *Ford*

12   *v. Lehman Bros. Bank, FSB*, No. C-12-00842 CRB, 2012 U.S. Dist. LEXIS 85600, at *28-30

13   (N.D. Cal. June 20, 2012) (dismissing unlawfulness claim where "[p]laintiff fails to demonstrate

14   how the facts alleged to support breach are, apart from breach, wrongful").

15   **2.    Plaintiff cannot state a claim under the "unfairness" prong**

16   Since the California Supreme Court's decision in *Cel-Tech Communications, Inc. v. Los*

17   *Angeles Cellular Telephone Co.*, 973 P.2d 527 (Cal. 1999), courts have divided over whether to

18   apply the test enunciated in that case, a modified "balancing test," or a three-part FTC test to

19   UCL unfairness claims such as this. *See generally Davis v. HSBC Bank Nevada*, 691 F.3d 1152,

20   1169-70 (9th Cir. 2012). Here, Plaintiff's claim fails under any of these tests.

21   The *Cel-Tech* standard requires "conduct that threatens an incipient violation of an

22   antitrust law, or violates the policy or spirit of one of those laws because its effects are

23   comparable to or the same as a violation of the law, or otherwise significantly threatens or harms

24   competition." 973 P.2d at 544. There is nothing remotely like that here. The Amended Complaint

25   offers no factual allegations that Google's billing practices violate the letter, policy, or spirit of

26   the antitrust laws, or that they harm competition.

27   Under the balancing test, a practice is "unfair" when it "'offends an established public

28   policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially

1   injurious to consumers.'" *South Bay Chevrolet v. General Motors Acceptance Corp.*, 85 Cal.

2   Rptr. 2d 301, 316 (Cal. Ct. App. 1999) (citation omitted); *see also Davis*, 691 F.3d at 1170

3   (applying the balancing test articulated in *South Bay*). Here, however, Plaintiff does not plausibly

4   allege that Google's policies regarding click fraud meet that standard. Nor could he. As

5   explained above, the materials in or incorporated into the Amended Complaint make clear that

6   Google takes various measures to protect advertisers from invalid or fraudulent clicks, often

7   before they are charged for them. *See* Ex. 3 at 3-4. Likewise, for any invalid clicks that those

8   filters may miss, Google has a process allowing advertisers to recover charges that may result.

9   Ex. 1 § 7. Google's actions in this regard simply are not contrary to public policy, immoral,

10  unethical, oppressive, or unscrupulous.

11        This case is similar to *Davis*, 691 F.3d at 1170-71. There, the plaintiff alleged a credit

12  card company's practices were unfair because its advertisements said that new credit card

13  holders would receive $25 the first time they used their credit card, but did not disclose there was

14  a $59 annual fee. *Id.* at 1158. The Ninth Circuit affirmed the dismissal of that claim because the

15  advertisements stated that other restrictions might apply, the application process disclosed the

16  annual fee, and the plaintiff could have avoided any injury by closing his credit card within 90

17  days. *Id.* at 1170-71. Likewise here, Google clearly discloses the risk of click fraud in the

18  AdWords Agreement and provides a simple process that allows advertisers to remedy any

19  charges related to invalid clicks. As in *Davis*, Plaintiff's vague allegations are inadequate to

20  support the claim that Google acted unfairly under the UCL. That is especially so given that the

21  Amended Complaint identifies no instance in which Plaintiff brought purported click fraud to

22  Google's attention or sought credits for charges supposedly based on invalid clicks.[9]

23        Finally, under the FTC test, conduct is "unfair" "if the consumer injury is substantial, is

24  not outweighed by any countervailing benefits to consumers or to competition, and is not an

25  injury the consumers themselves could reasonably have avoided." *Daugherty v. Am. Honda*

26

27        [9] Insofar as Plaintiff seeks to argue that Google's conduct with respect to billing was unfair
28  because it "knowingly" allowed charges for invalid clicks (Am. Compl. ¶ 109), these allegations
    fail for the reasons that Google has already explained. *Supra* Part III.C.2.

1  *Motor Co.*, 51 Cal. Rptr. 3d 118, 129 (Cal. Ct. App. 2006). Here, Plaintiff alleges no substantial

2  injury; indeed, he points to no instances where he was ever actually charged for invalid clicks.

3  And of course, he could have avoided those charges by using Google's claims process.

**3.     Plaintiff cannot state a claim under the fraud prong**

5  Finally, Plaintiff's claim under the UCL's fraud prong is based on allegedly false and

6  deceptive statements on Google's online Ad Traffic Quality Resource Center and AdWords Help

7  Center regarding Google's practices for addressing click fraud and invalid clicks. Am. Compl. ¶¶

8  101-102.[10] Plaintiff alleges that these extra-contractual statements induced him to use (or to

9  continue to use) the AdWords program. *Id.* ¶ 103. This claim fails for two fundamental reasons.

10  First, Plaintiff fails to plausibly allege that the statements at issue were false or deceptive.

11  Second, as a matter of law, Plaintiff could not have reasonably relied on those statements

12  because the AdWords Agreement that he accepted when he signed up and used the AdWords

13  program clearly discloses and disclaims all risks related to click fraud.

a.     Plaintiff cannot allege that the statements he claims to have relied on were
       actually false or deceptive

16  To state a claim under the fraud prong, "Plaintiff[] must allege specific facts to show that

17  members of the public are likely to be deceived" by the statements at issue. *In re Google Privacy

18  Policy Litig.*, No. C-12-01382-PSG, 2013 U.S Dist. LEXIS 171124, at *44-45 (N.D. Cal. Dec. 3,

19  2013); *accord Fazio v. Apple, Inc.*, 637 F. App'x 415, 415-16 (9th Cir. 2016). Because Fed. R.

20  Civ. P. 9(b) applies to these claims (*see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th

21  Cir. 2009); *Haskins v. Symantec Corp.*, No. 13-CV-01834-JST, 2013 U.S. Dist. LEXIS 169865,

22  at *13 (N.D. Cal. Dec. 2, 2013)), the complaint must include particularized allegations showing

23  how the statements were fraudulent. *See Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964,

---

[10] Plaintiff also hints at a fraudulent concealment theory based on Google's purported failure to disclose that it would not protect advertisers from invalid clicks. Am. Compl. ¶ 106. But any such claim fails for the same reasons as the affirmative misrepresentation claim. Google made clear that invalid clicks could occur and that advertisers could recover charges associated with such clicks by using the claims process set out in the AdWords Agreement. Plaintiff also references Google's Search guidelines (*id.*), but he does not, and cannot, explain how Google's decision not to use unrelated search metrics as part of click fraud efforts on AdWords could possibly rise to the level of "fraud." *See supra* n.6.

1    968 (N.D. Cal. 2008) ("plaintiffs seeking to satisfy Rule 9(b) must 'set forth an explanation as to

2    why the statement or omission complained of was false and misleading'" (citation omitted)).

3    Moreover, "[g]eneralized, vague, and unspecified assertions constitute mere puffery upon which

4    a reasonable consumer could not rely, and hence are not actionable." *Glen Holly Entm't v.*

5    *Tektronix Inc.*, 343 F.3d 1000 (9th Cir. 2003); *accord Oestreicher*, 544 F. Supp. 2d at 973-74

6    (dismissing UCL claim based on "non-actionable puffery").

7         Plaintiff cannot meet these standards here. The Amended Complaint identifies a series of

8    statements from online help pages that discuss Google's practices regarding the AdWords

9    program, including Google's efforts to prevent click fraud. Am. Compl. ¶ 101. But Plaintiff fails

10   to plausibly allege that any of these statements is fraudulent:

11   •    **"On average, invalid clicks account for less than 10% of all clicks."** As
          discussed above, this statement simply describes Google's historical experience in
12        detecting click fraud across the AdWords platform. It says that the invalid clicks detected
          by Google's systems, on average, account for less than 10% of overall clicks. That
13        statement is true, and the Amended Complaint offers no plausible basis for believing
          otherwise or for concluding that it would deceive the public. Plaintiff pleads nothing to
14        suggest that Google has actually measured invalid clicks at some far greater rate. Plaintiff
          tellingly omits the phrase "on average" when quoting this statement in the Amended
15        Complaint (¶ 101), but the phrase confirms that the statement, by its terms, says nothing
          about the percentage of invalid clicks Google might detect for any given advertiser or any
16        given advertising campaign. Thus, even assuming that Plaintiff's anecdotal
          "experiments" had any validity, which they do not, they say nothing about the rate of
17        invalid clicks across the entire AdWords platform. They cast no doubt on Google's
          generalized statement and cannot form the predicate for a viable fraud claim.
18
19   •    **"When Google determines that clicks are invalid, we try to automatically
          filter them from your reports and payments so that you're not charged for those
          clicks."** This statement describes Google's efforts to remove charges when it "determines
20        that clicks are invalid." It is a true statement, and no facts alleged in the Amended
          Complaint are to the contrary. Plaintiff can point to no instance in which Google actually
21        determined that certain clicks were invalid but proceeded to charge Plaintiff (or any other
          advertiser) for those clicks. There thus is no basis for Plaintiff to suggest that this
22        statement is in any way deceptive.

23   •    **"The relationship between Google, advertisers, and publishers is built on
          trust..."** This is an (obvious) observation about the advertising ecosystem as it related to
24        the AdWords program. The Amended Complaint pleads nothing to suggest that the
          relationship between Google and its advertisers is not based on trust or that Google does
25        not believe that it is so. This statement is not deceptive. Indeed, it is not a factual
          statement at all, but a clear example of "non-actionable puffery." *Oestreicher*, 544 F.
26        Supp. 2d at 973-74. Either way, it cannot support a claim under the UCL's fraud prong.

27   •    Google has a **"global team which is dedicated to … monitoring traffic across
          Google's ad network, and preventing advertisers from paying for invalid traffic."**
28        Like the others discussed, this statement is true, and nothing in the Amended Complaint
          says otherwise. Plaintiff does not allege any facts to suggest that Google does not have a

1    global team focused on ad traffic or that this team does not work to prevent advertisers
2    from being charged for invalid clicks.

3    •    **"The vast majority of all invalid clicks on AdWords ads are caught by our
     online filters. These filters are constantly being updated and react to a wide variety
     of traffic patterns and indications of click fraud attacks."** This statement simply says
4    in a very general way that most of the clicks Google suspects are not the result of genuine
     user interest are caught by its filters (as opposed to Google's manual investigations
5    process) and that Google updates those filters to make them better. This statement, like
     the one above, reports Google's experience across the entire AdWords platform. Here,
6    again, Plaintiff cannot point to a single factual allegation in the Amended Complaint that
     indicates that this statement is false (i.e., that most of the invalid clicks Google detects are
7    *not* actually caught by its filters or that Google does *not* work to improve those filters).

8    In short, Plaintiff cannot proceed under the UCL's fraud claim because he has not

9    plausibly alleged that any of the statements he seeks to put at issue were false or deceptive. To

10   the contrary, these statements, to the extent they are not just puffery, are accurate descriptions of

11   Google's experience and practices regarding click fraud. They are not statements that would

12   cause members of the public to be deceived, and they are insufficient to give rise to a plausible

13   claim of fraud. *See, e.g.*, *Cullen v. Netflix, Inc.*, No. 5:11-CV-01199-EJD, 2013 U.S. Dist. LEXIS

14   4246, at *16-21 (N.D. Cal. Jan. 10, 2013) (dismissing UCL claim where plaintiff failed to allege

15   sufficient facts to show that statements at issue were false and finding (1) plaintiff misinterpreted

16   defendant's statements regarding the percentage of closed captioning it would provide and (2)

17   plaintiff's own calculations did not contradict those statements).

18              b.       <u>As a matter of law, Plaintiff could not have reasonably relied on any of the</u>
19                       <u>extra-contractual statements at issue</u>

20   Even if Plaintiff could somehow overcome this problem, his fraud claim still would fail.

21   To proceed under the fraud prong, the "[p]laintiff must show that he personally lost money or

22   property because of his own *actual and reasonable reliance* on the allegedly untrue or

23   misleading statements." *Rosado v. eBay, Inc.*, 53 F. Supp. 3d 1256, 1264-65 (N.D. Cal. 2014)

24   (emphasis added). Plaintiff cannot make that showing because the clear language of the

25   AdWords Agreement precludes him, as a matter of law, from having reasonably relied on extra-

26   contractual statements regarding the AdWords program.

27   Where a contract includes express disclosures and disclaimers, someone bound by that

28   contract cannot allege reasonable reliance on extra-contractual statements. *See, e.g.*, *Janda v. T-*

1    *Mobile, USA, Inc.*, No. C-05-03729 JSW, 2009 U.S. Dist. LEXIS 24395, at *26-28 (N.D. Cal.

2    Mar. 13, 2009) (dismissing UCL fraud claim where defendant made unambiguous disclosures in

3    customers' service agreements); *Spiegler v. Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036,

4    1047-48 (C.D. Cal. 2008) (dismissing claim under "fraud" prong in light of an unambiguous

5    contract). That is the situation here. As discussed, the AdWords Agreement expressly put

6    Plaintiff on notice that "third parties may generate impressions or clicks on [his] Ads for

7    prohibited or improper purposes" and that such clicks could result in charges to his account,

8    which are to be resolved exclusively through Google's claims process. Ex. 1 § 7. The Agreement

9    also unequivocally disclaims any extra-contractual guarantees related to the AdWords program

10   and includes an express integration clause. *Id.*, § 8, § 12. These provisions foreclose Plaintiff as a

11   matter of law from establishing that he reasonably relied on any statements outside the

12   Agreement. *Accord Guido v. Koopman*, 2 Cal. Rptr. 2d 437, 440 (Cal. Ct. App. 1991)

13   ("[W]hether a party's reliance was justified may be decided as a matter of law if reasonable

14   minds can come to only one conclusion based on the facts.").

15          Two cases are squarely on point. In *Woods*, Judge Fogel dismissed an almost identical

16   UCL claim premised on Google's extra-contractual statements because "Woods does not explain

17   how Google's use of the AdWords Help Center to explain its program to advertisers prevented

18   him from understanding the clear language in the Agreement excluding any reliance on

19   extraneous statements or promises." *Woods*, 2011 U.S. Dist. LEXIS 88795, at *26. Likewise, in

20   *In re Facebook PPC Advertising Litigation*, No. 5:09-CV-03043-JF, 2010 U.S. Dist. LEXIS

21   136505 (N.D. Cal. Dec. 15, 2010), the court rejected a similar UCL claim brought by Facebook

22   advertisers alleging that a statement on Facebook's Advertising Help Center about the

23   company's efforts to prevent charges for click fraud was false and misleading. The court pointed

24   to the terms of the governing agreement, which disclosed that click fraud could occur and

25   disclaimed Facebook's liability. *Id.* at *20. In light of those provisions, the court held that the

26   plaintiffs could not reasonably have relied on the help center statement as a guarantee that

27   Facebook's filtering efforts would always be effective. *Id.* at *27-28.

28

1   So too here, the AdWords Agreement renders unreasonable any purported reliance on

2   statements outside the contract. No reasonable person reviewing Google's Help Center

3   statements in light of the Agreement could read them as saying that advertisers would be

4   protected from all or some given quantity of invalid clicks. They do not say that, and to the

5   extent Plaintiff somehow believed otherwise, that would not amount to the kind of reasonable

6   reliance needed for a fraud claim under the UCL.

7       **E.     Plaintiff's FAL Claim Fails for The Same Reasons as his UCL Claim**

8   Finally, Plaintiff asserts a claim under the False Advertising Law (Cal. Bus. & Prof. Code

9   § 17500). Am. Compl. ¶ 117. This claim duplicates his claim under the UCL's fraud prong and

10  fails for the same reasons. As explained, Plaintiff alleges no facts showing that Google's

11  statements were false or misleading, and he cannot demonstrate he relied on any such statements

12  in light of the clear terms of the AdWords Agreement. *See, e.g.*, *Williamson v. Reinalt-Thomas*

13  *Corp.*, No. 5:11-CV-03548-LHK, 2012 U.S. Dist. LEXIS 58639, at *21-22 (N.D. Cal. Apr. 25,

14  2012) (requiring actual and reasonable reliance for claim under the FAL); *Kwikset Corp. v.*

15  *Super. Ct.*, 246 P.3d 877, 887-88 (Cal. 2011) (same); *Davis*, 691 F.3d at 1169 (applying same

16  standards to dismiss claim under the FAL and under the UCL's fraud prong).

17  **IV.   CONCLUSION**

18  For these reasons, Plaintiff's Amended Complaint fails to state a claim and should be

19  dismissed without further leave to amend.

20

21  Dated:  October 24, 2016                    Respectfully submitted,

22                                              WILSON SONSINI GOODRICH & ROSATI
                                                Professional Corporation
23
                                                By:   /s/ Dale R. Bish
24                                                      Dale R. Bish

25                                              *Attorneys for Defendant*
                                                *Google Inc.*
26

27

28