DALE R. BISH, State Bar No. 235390
SONAL MITTAL, State Bar No. 299222
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: dbish@wsgr.com; smittal@wsgr.com

BRIAN WILLEN (admitted *pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: bwillen@wsgr.com

*Attorneys for Defendant*
*Google Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| GURMINDER SINGH, Individually and On Behalf of Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE INC., <br><br> Defendant. | CASE NO.: 5:16-cv-03734-BLF <br><br> **GOOGLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** <br><br> Date: May 11, 2017 <br> Time: 9:00 a.m. <br> Place: Courtroom 3, 5th Floor <br> Before: Hon. Beth Labson Freeman |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................................................1

ARGUMENT ................................................................................................................................1

I.   THE ADWORDS AGREEMENT BARS ALL CLAIMS THAT PLAINTIFF
     FAILED TO SUBMIT THROUGH GOOGLE'S CLAIMS PROCESS ...........................1

II.  PLAINTIFF FAILS TO STATE AN IMPLIED COVENANT CLAIM ...........................4

     A.   Plaintiff Can Identify No "Benefit Of The Agreement" That Google
          Frustrated ...............................................................................................................4

     B.   Plaintiff Does Not Plausibly Allege That Google's Efforts To Combat Click
          Fraud Are Unreasonable Or In Bad Faith .............................................................6

III. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE UCL.....................................7

     A.   Plaintiff Cannot State A Claim Under The "Unlawful" Prong ...............................7

     B.   Plaintiff Cannot State A Claim Under The "Unfairness" Prong.............................8

     C.   Plaintiff Cannot State A Claim Under The Fraud Prong ........................................9

          1.   Plaintiff fails to allege that Google's statements were false or
               misleading ...................................................................................................9

          2.   Plaintiff could not have reasonably relied on Google's statements ..........12

IV.  PLAINTIFF'S FAL AND FRAUDULENT INDUCEMENT CLAIMS FAIL FOR
     THE SAME REASONS AS HIS UCL CLAIM ...........................................................14

CONCLUSION ...........................................................................................................................15

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

## CASES

4    *Ashcroft v. Iqbal,*
        556 U.S. 662 (2009) ............................................................................................... 15
5
    *Bell Atl. Corp. v. Twombly,*
6        550 U.S. 544 (2007) ................................................................................................. 9

7    *Berkeley v. Wells Fargo Bank,*
        2016 U.S. Dist. LEXIS 1295 (N.D. Cal. Jan. 6, 2016) ...................................... 1
8
    *Brosnan v. Dry Cleaning Station Inc.,*
9        2008 U.S. Dist. LEXIS 44678 (N.D. Cal. June 6, 2008) ................................... 2

10   *Careau & Co. v. Sec. Pac. Bus. Credit,*
        272 Cal. Rptr. 387 (Cal. Ct. App. 1990) ............................................................. 6
11
    *Castagnola v. Hewlett-Packard Co.,*
12       2012 U.S. Dist. LEXIS 82026 (N.D. Cal. June 13, 2012) ............................... 12

13   *Cortez v. Purolator Air Filtration Prods. Co.,*
        23 Cal. 4th 163 (2000) ............................................................................................ 2
14
    *Damabeh v. 7-Eleven, Inc.,*
15       2012 U.S. Dist. LEXIS 130333 (N.D. Cal. Sept. 12, 2012) ............................ 14

16   *Darnaa, LLC v. Google Inc.,*
        2017 U.S. Dist. LEXIS 24187 (N.D. Cal. Feb. 21, 2017) ................................ 2
17
    *Davis v. HSBC Bank Nevada, N.A.,*
18       691 F.3d 1152 (9th Cir. 2012) .............................................................. 8, 9, 11, 12

19   *Eclectic Props. East, LLC v. Marcus & Millichap Co.,*
        751 F.3d 990 (9th Cir. 2014) ............................................................................... 15
20
    *Franczak v. Suntrust Mortg. Inc.,*
21       2013 U.S. Dist. LEXIS 31138 (N.D. Cal. Mar. 6, 2013) ................................... 6

22   *Free Range Content, Inc. v. Google Inc.,*
        2016 U.S. Dist. LEXIS 64365 (N.D. Cal. May 13, 2016) ............................ 2, 3
23
    *Guz v. Bechtel Nat'l, Inc.,*
24       24 Cal. 4th 317 (2000) ............................................................................................ 4

25   *Haskins v. Symantec Corp.,*
        2013 U.S. Dist. LEXIS 169865 (N.D. Cal. Dec. 2, 2013) ............................. 12
26
    *In re Facebook, Inc., PPC Advert. Litig.,*
27       82 F.R.D. 446 (N.D. Cal. 2012) ............................................................................. 5

28   *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.,*
        996 F. Supp. 2d 942 (S.D. Cal. 2014) ................................................................ 14

*J & J Sports Prods., Inc. v. Vizcarra,*
    2011 U.S. Dist. LEXIS 109732 (N.D. Cal. Sept. 27, 2011) ............................................. 2

*Knievel v. ESPN,*
    393 F.3d 1068 (9th Cir. 2005) ..................................................................................... 10

*Leonhart v. Nature's Path Foods, Inc.,*
    2014 U.S. Dist. LEXIS 46413 (N.D. Cal. Mar. 31, 2014) ............................................. 12

*Mackell v. Wells Fargo Home Mortg.,*
    2017 U.S. Dist. LEXIS 11842 (N.D. Cal. Jan. 26, 2017) ............................................. 6

*Marks v. Chicoine,*
    2007 U.S. Dist. LEXIS 8521 (N.D. Cal. Jan. 18, 2007) ............................................... 1

*Minor v. FedEx Office & Print Servs., Inc.,*
    182 F. Supp. 3d 966, 977 (N.D. Cal. 2016) ................................................................ 7

*Perez v. Wells Fargo Bank, N.A.,*
    2011 U.S. Dist. LEXIS 96706 (N.D. Cal. Aug. 29, 2011) ............................................. 4

*Plastino v. Wells Fargo Bank,*
    873 F. Supp. 2d 1179 (N.D. Cal. 2012) ................................................................... 4, 5

*Rivera v. Peri & Sons Farms, Inc.,*
    735 F.3d 892 (9th Cir. 2013) ....................................................................................... 2

*Rubio v. Capital One Bank,*
    613 F.3d 1195 (9th Cir. 2010) ................................................................................... 13

*South Bay Chevrolet v. Gen. Motors Acceptance Corp.,*
    85 Cal. Rptr. 2d 301 (Cal. Ct. App. 1999) ................................................................. 8

*Tayag v. Nat'l City Bank,*
    2009 U.S. Dist. LEXIS 33260 (N.D. Cal. Apr. 7, 2009) ............................................. 15

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) ............................................................................. 11, 14

*Williamson v. Reinalt-Thomas Corp.,*
    2012 U.S. Dist. LEXIS 58639 (N.D. Cal. Apr. 25, 2012) ............................................. 7

*Wilson v. Frito-Lay N. Am., Inc.,*
    2013 U.S. Dist. LEXIS 47126 (N.D. Cal. Apr. 1, 2013) ......................................... 14, 15

*Woods v. Google, Inc.,*
    2011 U.S. Dist. LEXIS 88795 (N.D. Cal. Aug. 10, 2011) ................................. 3, 5, 13, 14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### INTRODUCTION

Plaintiff's opposition brief cannot save the SAC. There is no obstacle to holding that the AdWords Agreement expressly bars Plaintiff's claims for any charges not previously submitted to Google. Beyond that, Plaintiff's causes of action independently fail. Plaintiff's implied covenant claim improperly attempts to rewrite the parties' Agreement and to disregard established legal standards for what constitutes a lack of good faith. And Plaintiff cannot make out a fraud, unfair competition, or false advertising claim by distorting Google's extra-contractual statements and ignoring what the governing agreement plainly says. The SAC should be dismissed, and because Plaintiff has already amended multiple times, the dismissal should be with prejudice.

### ARGUMENT

**I.     THE ADWORDS AGREEMENT BARS ALL CLAIMS THAT PLAINTIFF FAILED TO SUBMIT THROUGH GOOGLE'S CLAIMS PROCESS**

Google's opening brief explained that under Section 7 of the AdWords Agreement, a condition precedent to Plaintiff's claims was showing that he submitted the relevant charges to Google within 60 days of the invoice. Mot. at 8-12. In response, Plaintiff does not even try to argue that he actually used Google's claims process (except for a single set of charges in May 2015). Instead, Plaintiff says that the application of the contractual bar is an affirmative defense that cannot be resolved on a motion to dismiss. Plaintiff is wrong.

Plaintiff's failure to comply with Section 7 means that he cannot state a claim for breach of the implied covenant of good faith and fair dealing. That claim requires Plaintiff to "plead h[is] own performance under the contract or excuse for nonperformance." *Berkeley v. Wells Fargo Bank*, 2016 U.S. Dist. LEXIS 1295, at *4-5 (N.D. Cal. Jan. 6, 2016); *see also Marks v. Chicoine*, 2007 U.S. Dist. LEXIS 8521, at *16-17 (N.D. Cal. Jan. 18, 2007). To satisfy this element here, Plaintiff must allege that he performed under the AdWords Agreement by submitting claims to Google within 60 days of the charges that he now seeks to put at issue. The SAC does not do so. Because this pleading failure is a defect in Plaintiff's prima facie case, Section 7 is not an affirmative defense to that claim and is correctly raised under Rule 12(b)(6).

1   *See J & J Sports Prods., Inc. v. Vizcarra*, 2011 U.S. Dist. LEXIS 109732, at *5-6 (N.D. Cal.

2   Sept. 27, 2011) ("Affirmative defenses plead matters extraneous to the plaintiff's prima facie

3   case . . . ." (citation omitted)).

4          Nor is there any procedural obstacle to dismissing Plaintiff's other claims on this basis.

5   Section 7 applies equally to all those claims; by its terms, it bars Plaintiff from asserting "ALL

6   CLAIMS" relating to unsubmitted charges.[1] And Plaintiff offers no authority to support the

7   notion that a provision in a contract expressly precluding claims unless certain preconditions are

8   satisfied is an affirmative defense, rather than an obstacle that the plaintiff must overcome in

9   stating a claim. The law is otherwise. *See, e.g.*, *Brosnan v. Dry Cleaning Station Inc.*, 2008 U.S.

10  Dist. LEXIS 44678, at *2 (N.D. Cal. June 6, 2008) ("Failure to mediate a dispute pursuant to a

11  contract that makes mediation a condition precedent to filing a lawsuit warrants dismissal."); *cf.*

12  *Darnaa, LLC v. Google Inc.*, 2017 U.S. Dist. LEXIS 24187, at *15-21 (N.D. Cal. Feb. 21, 2017)

13  (dismissing claim under Rule 12(b) based on contractual limitation of liability provision). None

14  of the cases that Plaintiff cites (Opp'n at 23-24) involves a *contractual* waiver provision, and

15  certainly not one invoked in response to claims that directly rely on that agreement, as Plaintiff's

16  claims do here (SAC ¶¶ 2, 14, 77-81, 111-112, 114, 119, 126, 135). Indeed, Plaintiff ignores this

17  Court's own decision in *Free Range*, which applied Rule 12(b)(6) to dismiss claims based on a

18  nearly identical waiver provision in Google's AdSense Agreement. *Free Range Content, Inc. v.*

19  *Google Inc.*, 2016 U.S. Dist. LEXIS 64365, at *33-40 (N.D. Cal. May 13, 2016).

20         But even if Section 7 were characterized as an affirmative defense to the non-contractual

21  claims, it would still be appropriate to reject those claims. "When an affirmative defense is

22  obvious on the face of a complaint, . . . a defendant can raise that defense in a motion to

23  dismiss." *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013). That is the

24  situation here. Everything needed to resolve this issue is apparent from the SAC, which

25

26  _____

27          [1] Plaintiff says that an "equitable defense may not be asserted to wholly defeat a UCL claim."
    Opp'n at 24 (quoting *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 179 (2000)).
    But Section 7's waiver provision is *not* an equitable defense. It is an express requirement of the
28  parties' agreement, and Google's argument based on the terms of the agreement sounds in law,
    not in equity.

specifically addresses Google's claims process and the corresponding waiver, without alleging that Plaintiff used that process to bring disputed charges to Google's attention (except in one instance). SAC ¶¶ 77-86.[2] It is clear from these allegations (and what the opposition brief says) that Plaintiff did not submit claims to Google for the vast majority of the charges at issue. As in *Free Range*, that is enough to grant Google's motion to dismiss "to the extent that it seeks to dismiss" claims based on such charges. 2016 U.S. Dist. LEXIS 64365, at *39.

There are no disputed issues of fact that stand in the way. While Plaintiff points glancingly to his allegations that Google's claims process is "illusory or futile" (Opp'n at 24), he has no response to Google's opening brief on this point. Mot. at 11-12 (explaining that the SAC alleges no facts plausibly supporting that Google's process is not real or effective). Beyond that, Plaintiff does not even try to explain why, even if Google's process might not result in advertisers receiving credits on any given occasion, that would provide a *legal* justification for reading the waiver provision out of the Agreement. And that result would make no sense. To avoid the waiver for a given set of charges, Plaintiff merely had to submit a timely claim. Plaintiff's failure to do even that bars his claims here. *See Woods v. Google, Inc.*, 2011 U.S. Dist. LEXIS 88795, at *15 (N.D. Cal. Aug. 10, 2011) (dismissing claim where "Woods does not allege that he attempted to seek a refund—as required by the Agreement—for charges relating to clicks he suspected were invalid").

Finally, Plaintiff suggests that his claims are outside Section 7 insofar as they seek restitution for unlawful business practices and false advertising. Opp'n at 25. But Plaintiff's UCL and FAL claim are specifically premised on Google's supposed failure to protect Plaintiff from invalid clicks on his AdWords accounts (SAC ¶¶ 115-116, 118, 120, 128), and they seek relief "for all amounts that Google charged them for invalid and fraudulent clicks" (SAC ¶¶ 122, 130). Those are indisputably claims "RELATING TO" AdWords "PROGRAM CHARGES." Ex. 1

---

[2] In alleging that he "contacted Google about 'suspicious clicks'" in May 2015 (SAC ¶¶ 85-86), Plaintiff does not allege that these clicks actually resulted from click fraud or that they resulted in charges that are among the charges at issue in this case.

§ 7. They arise from advertising charges that Plaintiff contends were improper. Such claims fall squarely within the Agreement's waiver no matter what remedy Plaintiff now seeks.

## II.     PLAINTIFF FAILS TO STATE AN IMPLIED COVENANT CLAIM

The opposition brief confirms that there is nothing in the AdWords Agreement to which Plaintiff can tie his claim for breach of the implied covenant of good faith. Plaintiff instead seeks to rewrite the Agreement to impose on Google an expansive obligation to protect against third-party fraud. That effort fails as a matter of law, for two independent reasons.

### A.     Plaintiff Can Identify No "Benefit Of The Agreement" That Google Frustrated

Plaintiff says that violation of an express provision of the Agreement is not necessary for a breach of the implied covenant. Opp'n at 4-5. But that does not change the black-letter rule that the covenant "cannot be endowed with an existence independent of its contractual underpinnings" and "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349-50 (2000) (citations omitted) (internal quotation marks omitted); *accord* Mot. at 13. Accordingly, "to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must identify the *specific contractual provision* that was frustrated." *Plastino v. Wells Fargo Bank*, 873 F. Supp. 2d 1179, 1191 (N.D. Cal. 2012) (emphasis added); *accord Perez v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 96706, at *50-51 (N.D. Cal. Aug. 29, 2011) (dismissing claim on this basis). Plaintiff's claim runs headlong into these principles.

Plaintiff seeks to use the implied covenant to impose a broad duty on Google to protect advertisers from all or nearly all invalid clicks. But that duty has no connection to the parties' actual contract. The only thing Plaintiff points to is Section 7's "measurements" clause. Opp'n at 5-6. As Google has explained, however, this provision says nothing about click fraud; it simply makes clear that Google is responsible for determining the charges billed to advertisers. There is no basis for using this provision to bootstrap an implied obligation on Google to ensure that AdWords charges never include invalid clicks. Mot. at 14.

1   That is especially so in light of the express contractual language, which Plaintiff ignores,

2   warning advertisers that third parties may register improper clicks (Ex. 1 § 7) and disclaiming

3   any guarantees about AdWords programs or results (Ex. 1 § 8). Not only does the Agreement

4   make no promises that Google will catch fraudulent clicks, therefore, it goes out of its way to

5   make clear that advertisers may sometimes be charged for them. These provisions underscore

6   that the "benefit of the bargain" does not include protection from any and all instances of click

7   fraud. While Google in fact makes substantial efforts in that regard, Plaintiff cannot use the

8   implied covenant to hold it liable for not doing more. *See Woods*, 2011 U.S. Dist. LEXIS 88795,

9   at *18-20 (dismissing claim based on failure to prevent click fraud because "the complaint does

10   not allege adequately that Google deprived Woods of a benefit to which he was entitled under

11   the Agreement").

12   Seemingly recognizing that the actual terms of the Agreement cut against him, Plaintiff

13   turns to Google's public statements. Opp'n at 5-6. This effort does not work. Plaintiff cites no

14   case allowing a party to use extra-contractual statements to support an implied covenant claim.

15   That is unsurprising in light of the established authority discussed above, which requires such

16   claims to be grounded in the specific terms of the agreement. *E.g.*, *Plastino*, 873 F. Supp. 2d at

17   1191 (dismissing implied covenant claim based on alleged promise made outside governing

18   contract). Plaintiff's approach is especially unwarranted here, given that the AdWords

19   Agreement is a fully integrated contract, which says expressly that extra-contractual statements

20   may *not* be invoked as additional promises. Ex. 1 § 12(c); *accord In re Facebook, Inc., PPC*

21   *Advert. Litig.*, 282 F.R.D. 446, 457 (N.D. Cal. 2012) (holding that integration clause "precludes a

22   finding that the . . . statements outside the [agreement] can be used to impose additional

23   contractual obligations on Facebook"). But even taken on their own terms, the public statements

24   Plaintiff identifies are not promises and cannot be read to expand Google's contractual

25   obligations. Plaintiff again fails even to address *Woods*, which rejected a nearly identical claim

26   on this basis. 2011 U.S. Dist. LEXIS 88795, at *14.

27   In short, Plaintiff fails to establish that Google has undertaken a duty to protect him from

28   all (or some quantum of) charges resulting from improper clicks. Insofar as Plaintiff incurred

1   such charges, they were not caused by Google's "failure or refusal to discharge contractual

2   responsibilities" and cannot support an implied covenant claim. *Careau & Co. v. Sec. Pac. Bus.*

3   *Credit*, 272 Cal. Rptr. 387, 399 (Cal. Ct. App. 1990).

**B.      Plaintiff Does Not Plausibly Allege That Google's Efforts To Combat Click Fraud Are Unreasonable Or In Bad Faith**

6          Nor can Plaintiff overcome his failure to properly allege Google's lack of good faith. In

7   discussing the legal standard (Opp'n at 6-7), Plaintiff ignores that he must allege not merely "bad

8   judgment" or "negligence," but "a conscious and deliberate act" on Google's part. *Mackell v.*

9   *Wells Fargo Home Mortg.*, 2017 U.S. Dist. LEXIS 11842, at *23 (N.D. Cal. Jan. 26, 2017)

10   (quoting *Careau*, 272 Cal. Rptr. 387 at 399-400) (dismissing implied covenant claim for failure

11   to allege conscious and deliberate frustration of the benefits of the agreement); *see also Franczak*

12   *v. Suntrust Mortg. Inc.*, 2013 U.S. Dist. LEXIS 31138, at *9-10 (N.D. Cal. Mar. 6, 2013) (same).

13          Tellingly, Plaintiff abandons even the limited and insufficient allegations in the SAC on

14   this point (¶¶ 99-101). The opposition brief does not even try to argue, for example, that Google

15   knew that it was charging Plaintiff for invalid clicks or try to defend the SAC's baseless reliance

16   on Google's Search Quality Raters ("SQR") Guidelines. Mot. at 15-16. Plaintiff instead pins his

17   bad faith claim on the assertion that "research has shown that click-fraud may account for as

18   much as 60% of the registered clicks on the AdWords platform." Opp'n at 7. This is insufficient.

19   As an initial matter, even taking this figure at face value, it would not support the conclusion that

20   Google *consciously* acted to saddle Plaintiff with charges based on invalid clicks. Citing a bare

21   statistic does nothing to suggest that Google engaged in any deliberate, bad faith conduct.

22   Plaintiff cites no authority finding a breach of the implied covenant of good faith based on a

23   party not doing more to prevent wrongdoing by unrelated third parties.

24          But even if Plaintiff's approach worked in theory, it would not support a claim here. That

25   is because the 60% figure is an invention of Plaintiff's opposition brief. That statistic does not

26   appear in the SAC, and there is no factual basis for it anywhere in that pleading. Plaintiff refers

27   to Paragraph 38, which makes a very different allegation: "According to an article in the *Atlantic*

28   from 2013, 60 percent of all Internet traffic is the result of bots, many of which consist of

1   software that provides false ad views." SAC ¶ 38; *see also id.* ¶¶ 40-41 & n.12 (citing same

2   statistic). That does not remotely say that 60% of all clicks on Google AdWords ads are the

3   result of click fraud, much less that 60% of *charges* for AdWords ads are from fraudulent clicks.

4   Plaintiff cannot manufacture an implied covenant claim by inventing his own statistics. The fact

5   that the opposition brief resorts to such a clear distortion highlights that Plaintiff has no actual

6   allegations suggesting that charges from fraudulent clicks are prevalent on AdWords, much less

7   that Plaintiff himself faced such charges as a result of some bad faith choice on Google's part to

8   implement inadequate filtering systems.

9   **III.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE UCL**

10          Plaintiff likewise cannot save his UCL claim. He still points to no actual charges that

11   allegedly resulted from invalid clicks. Without that, Plaintiff has not lost money or property "as a

12   result of" Google's supposed wrongdoing and lacks standing to sue under the UCL. *See, e.g.*,

13   *Williamson v. Reinalt-Thomas Corp.*, 2012 U.S. Dist. LEXIS 58639, at *29-30  (N.D. Cal. Apr.

14   25, 2012) (UCL "plaintiff must show he personally lost money or property because of his own

15   actual and reasonable reliance on the allegedly unlawful business practices"). Beyond that,

16   Plaintiff's arguments do not establish any unlawful, unfair, or fraudulent activity.

17          **A.    Plaintiff Cannot State A Claim Under The "Unlawful" Prong**

18          First, as explained in Google's opening brief, the unlawfulness claim set out in the SAC

19   fails because a breach of the implied covenant of good faith does not count as an "unlawful" act

20   under the UCL. Mot. at 17-18. Plaintiff has no response, so he tries to recast his claim as being

21   based on a purported violation of the False Advertising Law, Cal. Bus. & Prof. Code § 17500

22   ("FAL"). Opp'n at 16. Plaintiff's effort to replead his claim through his opposition brief is

23   improper. *Accord Minor v. FedEx Office & Print Servs., Inc.*, 182 F. Supp. 3d 966, 977 (N.D.

24   Cal. 2016) ("Plaintiff may not use his opposition to raise and argue new allegations or claims not

25   in the complaint."). But even if Plaintiff could change his theory at will, it would do him no

26   good. As discussed below, the FAL claim fails on its own terms, so it cannot support an

27   unlawfulness claim here.

28

1

**B.      Plaintiff Cannot State A Claim Under The "Unfairness" Prong**

2       As to the unfairness prong, while Google does not agree that the *South Bay* "balancing"

3   test is necessarily the correct test here (Opp'n at 17), Plaintiff cannot state a claim under that

4   standard. Mot. at 18-19. To meet this requirement, Plaintiff would have to show that Google's

5   conduct "offends an established public policy" or "is immoral, unethical, oppressive,

6   unscrupulous or substantially injurious to consumers." *South Bay Chevrolet v. Gen. Motors*

7   *Acceptance Corp.*, 85 Cal. Rptr. 2d 301, 316 (Cal. Ct. App. 1999) (citation omitted).

8       Plaintiff's arguments duplicate the arguments he makes in support of his claim under the

9   fraud prong: "Google misrepresented the likelihood that customers would actually incur charges

10  for a significant volume of invalid clicks." Opp'n at 17-18. But there is no factual support for

11  this assertion in the SAC. Plaintiff points to rank speculation from magazine articles and blogs

12  about the amount of Internet traffic that results from "bots" (SAC ¶¶ 37-42), but here again,

13  these allegations say nothing about the percentage of fraudulent clicks on *AdWords ads*, much

14  less anything about how many such clicks are *missed* by Google's filtering systems such that

15  they actually result in charges for advertisers. And, as discussed below (*infra* Section III.C.1),

16  Plaintiff distorts Google's public statements to stand for propositions that Google has expressly

17  disclaimed. Plaintiff cannot maintain a UCL claim in this manner. The statements that Google

18  actually makes are not in any way injurious to advertisers. To the contrary, they benefit

19  advertisers by giving them insight into the efforts that Google makes to combat click click fraud,

20  including general statistical information about the amount of invalid traffic that Google's

21  systems detect. What *would* offend public policy is for Google to face liability for its efforts to

22  be transparent about its activities.

23      Notwithstanding Plaintiff's unconvincing effort to distinguish it, this case is similar to the

24  Ninth Circuit's decision in *Davis*, which held, as a matter of law, that Plaintiff had no unfairness

25  claim because: (1) the defendant's communications warned that the charges at issue would

26  apply; and (2) the plaintiff had an opportunity to avoid those charges by cancelling within 90

27  days. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1170 (9th Cir. 2012). So too here,

28  Google tells the public that the information it publishes is about the overall rate of invalid clicks

1   across the AdWords platform, warns advertisers in the governing Agreement that charges may

2   result from improper clicks, expressly disclaims all guarantees in connection with AdWords, and

3   provides an internal claims process for advertisers to seek credits for any charges that may result

4   from undetected click fraud. In light of all this, as in *Davis*, the SAC fails to allege "above the

5   speculative level" that Google's statements "themselves caused any harm." *Id.* (quoting *Bell Atl.*

6   *Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

7       **C.      Plaintiff Cannot State A Claim Under The Fraud Prong**

8           As to the UCL's fraud prong, Plaintiff does not dispute that he must he must plead with

9   particularity the circumstances establishing why the statements he challenges were misleading

10  and must allege facts making it plausible to conclude that he reasonably relied on those

11  statements. Plaintiff can do neither.

12          1.      <u>Plaintiff fails to allege that Google's statements were false or misleading</u>

13          As described in the SAC, Plaintiff's fraud prong claim purports to be based on a list of

14  specific statements made by Google about AdWords. SAC ¶¶ 110-111. Google's opening brief

15  explained why none of these statements, examined in light of Plaintiff's factual allegations, are

16  actually misleading. Mot. at 20-23; *see also id.* at 14 (discussing the Agreement's

17  "measurements" clause). In response, Plaintiff focuses on only two of those statements (which he

18  describes as "core"), relegating the rest to a supporting role that the opposition brief does not

19  discuss further. Opp'n at 8 & n.2.[3]

20          Even as to the statements now at issue, Plaintiff cannot carry his burden. Those

21  statements appear in Google's "Ad Traffic Quality Resource Center":

22          ***The vast majority of all invalid clicks on AdWords ads are caught by our online***
            ***filters.*** These filters are constantly being updated and react to a wide variety of

23  —————————————————

24      [3] The opposition brief also points to a different statement on Google's website (that
    "AdWords customers 'only pay for results', *i.e.*, when someone clicks their ads" (Opp'n at 8)),

25  which is *not* among those on which the SAC purports to rest the fraud claim. SAC ¶¶ 110-111.
    The SAC makes no allegation that this statement is false or misleading or that Plaintiff saw or

26  relied on it. Plaintiff's belated attempt to substantively modify his claim is improper. In any
    event, this statement is not actionable: it is simply a description of cost-per-click advertising,

27  where advertisers pay when their ads are clicked, rather than when they are placed or viewed. It
    does not say or suggest that AdWords advertisers will never be charged for clicks that might be

28  based on undetected third-party fraud. As discussed, Google specifically tells advertisers the
    opposite. *See infra* Section III.C.2.

1
2

traffic patterns and indications of click fraud attacks. ***On average, invalid clicks account for less than 10% of all clicks on AdWords ads.***

3    Ex. 3 at 2 (emphasis added). The opposition brief fundamentally distorts these words and ignores

4    the context in which they appear.[4] The import of this statement is that, on average, the clicks

5    caught by Google's "online filters" as invalid account for fewer than 10% of the overall clicks on

6    the AdWords platform. Plaintiff says that advertisers would interpret this statement as saying

7    something different, that the rate of invalid clicks (both those detected and undetected) is under

8    10%. Opp'n at 9-10. Plaintiff is incorrect. Beyond the fact that Google would not know the rate

9    of improper clicks that it did *not* catch, Plaintiff ignores the express definition of the term

10   "invalid." On the same page of the Ad Traffic Quality Resource Center, Google defines "invalid"

11   as meaning "clicks and impressions on AdWords ads *that Google suspects to not be the result of*

12   *genuine user interest.*" Ex. 3 at 1 (emphasis added). When Google uses the term "invalid," it is,

13   by definition, referring to clicks that Google has identified as such and filtered from an

14   advertiser's charges.

15          While those statements are clear on their face, any possible confusion is eliminated by the

16   blog post discussed in Google's opening brief and ignored by Plaintiff. *See* Mot. at 21

17   (discussing Ex. 5).[5] That blog post explains, in the form of a bar graph, exactly what Google's

18   statistics mean: that less than 10% of AdWords clicks reflect "INVALID CLICKS,

19   _____

20          [4] Plaintiff misleadingly tries to treat the 10% statement and the "vast majority" statement as
     two separate statements, claiming that the latter "stands alone." Opp'n at 10-11. But the

21   statements appear in the same paragraph, and "vast majority" is just a more general formulation
     of the 10% statistic. This paragraph makes a unitary statement about the amount of invalid

22   activity detected by Google's proactive systems across the AdWords platform; there is no reason
     to slice and dice it into discrete representations. Plaintiff also says that the Ad Traffic Quality

23   Resource Center "contains no discussion of Google's 'manual investigations process.'" *Id.* That
     is false. The Center contains an entire page devoted to "Invalid Click Protection," which

24   describes both Google's proactive filtering systems *and* its reactive manual investigation process.
     Ex. 3 at 3-4. That page provides valuable context for what Google says about the efficacy of its
     filters.

25
          [5] As set out in Google's opening brief, this public-facing Google post is incorporated by

26   reference in the SAC. Mot. at 5 n.2. Plaintiff does not argue otherwise, except to say that these
     materials cannot be used for the truth of what they say. Opp'n at 3. That is not an issue here.

27   Google is using the blog post not for its truth, but simply because it bears directly on how a
     member of the public would understand the statements that Plaintiff now claims are fraudulent.

28   That is an entirely proper use of the incorporation by reference doctrine. *See, e.g.*, *Knievel v.
     ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

1   PROACTIVELY DETECTED." It also tells advertisers, specifically in reference to that 10%

2   figure, that by "proactively filtering clicks worth potentially hundreds of millions of dollars

3   every year, we are able to provide very effective protection against attempted click fraud." Ex. 5

4   at 4. This explanatory information leaves no doubt that the 10% and "vast majority" statements

5   refer simply to the percentage of clicks proactively detected as invalid by Google's systems.

6       In short, no reasonable advertiser could believe that Google's statements have the

7   meaning that Plaintiff now tries to ascribe to them. Plaintiff cannot establish a fraud claim by

8   distorting Google's words and closing his eyes to what Google actually says. *See Davis*, 691

9   F.3d at 1162 ("[A] representation does not become 'false and deceptive' merely because it will

10  be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of

11  persons to whom the representation is addressed." (citation omitted)). And Plaintiff does not

12  even try to argue that Google's statements, understood correctly, are false or misleading. Those

13  statements cannot support a claim under the UCL.

14      But even if the statements were given the misguided reading that Plaintiff advances, the

15  SAC *still* would not state a claim. Rule 9(b) requires that Plaintiff "set forth what is false or

16  misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

17  1097, 1106 (9th Cir. 2003). The SAC does not do so. Plaintiff's claim that Google's statistics are

18  misleading is based solely on his so-called "experiments" and the "findings by third parties" that

19  supposedly provide evidence that "the majority of invalid clicks are not caught by Google's

20  online filters." Opp'n at 9-10 (citing SAC ¶¶ 38-39, 56-76). But, as Google's opening brief

21  explained, Plaintiff's admittedly "unsophisticated" "experiments" say nothing about the actual

22  rate of click fraud and are insufficient to give rise to a fraud claim. Mot. at 7, 21 & n.7. Plaintiff

23  does not respond. Likewise, the opposition brief totally distorts the third-party articles cited in

24  the SAC. As discussed above (*supra* Section II.B), those articles say nothing about the rate of

25  click fraud on AdWords; they do not refer to AdWords at all. Even taken as true, therefore, those

26  articles would not support a conclusion that the amount of undetected click fraud on AdWords is

27  higher than 10%.

28

1    Contrary to what Plaintiff suggests (Opp'n at 12), courts have not hesitated to dismiss

2  UCL fraud claims at the pleading stage where plaintiffs fail to properly allege that the statements

3  at issue were misleading. *See, e.g.*, *Davis*, 691 F.3d at 1169; *Leonhart v. Nature's Path Foods,*

4  *Inc.*, 2014 U.S. Dist. LEXIS 46413, at *27-28 (N.D. Cal. Mar. 31, 2014); *Haskins v. Symantec*

5  *Corp.*, 2013 U.S. Dist. LEXIS 169865, at *19-20 (N.D. Cal. Dec. 2, 2013); *accord Castagnola v.*

6  *Hewlett-Packard Co.*, 2012 U.S. Dist. LEXIS 82026, at *19 (N.D. Cal. June 13, 2012)

7  ("[D]ismissal of such claims is appropriate where the plaintiff fails to show the likelihood that a

8  reasonable consumer would be deceived."). The same result is warranted here.

9                    2.    Plaintiff could not have reasonably relied on Google's statements

10    Plaintiff's claim under the fraud prong independently fails because he cannot allege that

11  he reasonably relied on the statements at issue. That is so for at least two reasons. *First*, the "vast

12  majority" and 10% statements that Plaintiff now focuses on, which report the quantity of invalid

13  clicks on AdWords, provide a *network-wide* figure, not one that measures the rate of invalid

14  clicks on any particular advertisers' accounts. Mot. at 20-21. This is clear not only from the use

15  of the phrase "on average," but also from Google's explanatory blog post, which goes out of its

16  way to warn advertisers *not* to use those statistics as a promise or statement about what their

17  individual experience may be:

18          It is important to understand that the network-wide invalid clicks rate is separate
            from an individual advertiser's invalid clicks rate. . . . Thus, the overall invalid
19          clicks rate, as well as its day-to-day fluctuations, has almost no relation to the
            invalid clicks rate for an individual advertiser. . . . As noted above, ***these network***
20          ***figures do not have any bearing on what individual advertisers may experience,***
            ***and you should refer to your invalid clicks report for that data.***
21

22  Ex. 5 at 5-6 (emphasis added). In light of these disclaimers, Plaintiff simply could not have relied

23  on Google's statements to mean that his ads would never experience more than a given quantum

24  of fraudulent clicks. To the extent he claims to have done so, such reliance is unreasonable and

25  cannot give rise to a UCL claim.

26    *Second*, as discussed in Google's opening brief, reasonable reliance on these statements is

27  defeated by the express terms of the AdWords Agreement. Plaintiff acknowledges that Section 7

28  advises "customers that they may be charged for invalid clicks," but he says that that warning

does not say "anything about the level of risk that such charges will actually be incurred." Opp'n at 13. But Plaintiff ignores the Agreement's disclaimer and integration provisions, which expressly disavow "ANY GUARANTEE IN CONNECTION WITH THE PROGRAMS OR PROGRAM RESULTS" (Ex. 1 § 8) and make clear that the contractual terms themselves "are the parties' entire agreement relating to its subject and supersede any prior or contemporaneous agreements on that subject" (Ex. 1 § 12(c)). These provisions defeat any reliance by Plaintiff on extra-contractual statements about the rate of invalid clicks. Indeed, the two sets of statements reinforce one another, both overtly warning that Google is not making any representations about what an individual advertiser may experience in regards to third-party clicks.

The only case that Plaintiff cites in an effort to support a contrary result is *Rubio v. Capital One Bank*, 613 F.3d 1195 (9th Cir. 2010). Opp'n at 15. But *Rubio* is very different. The plaintiff there received a solicitation stating that a Capital One credit card would have a fixed interest rate but listing three conditions that would cause the interest rate to increase. 613 F.3d at 1198. The defendant later increased the plaintiff's interest rate for a reason not listed in the promotion. Although the governing agreement stated that the interest rate was subject to change at any time, the court held that a reasonable consumer would have understood that to mean that the rate would change only if one of the conditions listed in the promotion were satisfied. *Id.* at 1202-03. Here, in contrast, not only did Google make no representation that the click fraud rate on Plaintiff's AdWords account would never exceed a given amount, the Agreement said expressly that no guarantees were being made and that Plaintiff was not to rely on any statements outside the contract. For Plaintiff to have done so would unreasonably disregard those warnings.

Instead, as Google has explained, this case is very similar to *Woods*. Plaintiff tries to escape that result by claiming that *Woods* "turned on" the fact that the plaintiff was an attorney. Opp'n at 14. While Judge Fogel did note the plaintiff's profession, his decision to dismiss a nearly identical claim was ultimately based on the fact that the plaintiff's reliance allegations could not overcome the integration clause in the AdWords Agreement. *Woods*, 2011 U.S. Dist. LEXIS 88795, at *27. *Woods* does not stand for the proposition that advertisers can ignore Google's disclaimers and rely on extra-contractual statements as long as they are not lawyers.

1   But even insofar as the sophistication of the individual advertiser matters, that would not help

2   Plaintiff here. Plaintiff purports to be a successful small-business owner, who researched many

3   advertising platforms, manages multiple AdWords accounts to do "highly-targeted marketing

4   related to his various business ventures," and conducted his own experiments to evaluate the

5   incidence of purported click fraud. SAC ¶¶ 11, 57, 59, 63. Just as in *Woods*, therefore, Plaintiff

6   cannot (and does not) claim that he lacks the intelligence or experience to understand the

7   meaning of the unambiguous language in the Agreement. His claim fails accordingly.

8   **IV.   PLAINTIFF'S FAL AND FRAUDULENT INDUCEMENT CLAIMS FAIL FOR**

9   **THE SAME REASONS AS HIS UCL CLAIM**

10  **Section 17500.** As explained in Google's opening brief, Plaintiff's claim under the FAL

11  duplicates his claim under UCL's fraud prong and fails for the same reasons. Mot. at 24-25.

12  Plaintiff's response is surprising. Even though he concedes that Rule 9(b)'s pleading

13  requirements apply to his UCL claim and fraudulent inducement claims, he argues that they do

14  not apply to his parallel FAL claim. Opp'n at 19. That is incorrect. In support of all those claims,

15  Plaintiff makes identical allegations that Google's public statements were "false" and

16  "misleading" and "deceptive." *Compare* SAC ¶¶ 110-111 (UCL), *and* ¶ 133 (fraudulent

17  inducement), *with* ¶ 128 (FAL). Those claims rise or fall together. *See, e.g.*, *In re Sony Gaming*

18  *Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 988-89 (S.D. Cal. 2014)

19  (applying same Rule 9(b) standard to UCL and FAL claims that "allege the same factual basis

20  for relief").

21  Plaintiff cites *Vess*, but the Ninth Circuit expressly held in that case that FAL claims *are*

22  subject to Rule 9(b), even though "fraud is not an essential element" of the statute and even

23  where the plaintiff does not use the term "fraud" in his complaint. *Vess*, 317 F.3d at 1103-05. All

24  that matters is whether the claim "sound[s] in fraud." *Id.* at 1103-04. That is the situation here:

25  the gravamen of Plaintiff's FAL claim is that "Google's marketing and advertising materials

26  were false, misleading, and deceptive." SAC ¶ 128. That is an allegation of fraud and must be

27  pleaded with particularity. *See, e.g.*, *Damabeh v. 7-Eleven, Inc.*, 2012 U.S. Dist. LEXIS 130333,

28  at *17 (N.D. Cal. Sept. 12, 2012) (holding Rule 9(b) applicable to FAL claim); *Wilson v. Frito-*

1   *Lay N. Am., Inc.*, 2013 U.S. Dist. LEXIS 47126, at *13-14 (N.D. Cal. Apr. 1, 2013) (same);

2   *Tayag v. Nat'l City Bank*, 2009 U.S. Dist. LEXIS 33260, at *6 (N.D. Cal. Apr. 7, 2009) (same).

3   In any event, Plaintiff's FAL claim would fail even if Rule 9(b) did not apply: as discussed

4   above, Plaintiff fails to plausibly allege that Google's statements are misleading and that he

5   reasonably relied on them. That is true no matter what the pleading standard.

6   **Fraudulent Inducement.** Plaintiff acknowledges that this claim cannot proceed if his

7   UCL fraud prong claim is dismissed, as it should be, based on the lack of a fraudulent statement

8   and/or reasonable reliance. Plaintiff also recognizes that fraudulent inducement requires actual

9   knowledge of the supposed falsity. Opp'n at 22-23. While courts in this District have held that

10   Rule 9(b) applies to this element (Mot. at 25), the pleading standard makes no difference here.

11   Plaintiff's allegation of knowledge (SAC ¶ 134) is pure boilerplate, precisely the kind of

12   "threadbare recital" that fails to satisfy even Rule 8. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79

13   (2009). That allegation is not entitled to be assumed true, is supported by no factual allegations

14   making a claim of knowledge plausible, and does not allow Plaintiff to state a claim for

15   fraudulent inducement. *Accord Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d

16   990 (9th Cir. 2014) (applying *Iqbal* to dismiss claim for lack of plausible allegations of

17   fraudulent intent).

18   ## CONCLUSION

19   Plaintiff's SAC fails as a matter of law and should be dismissed with prejudice.

20

21   Dated:  March 20, 2017                    Respectfully submitted,

22                                            WILSON SONSINI GOODRICH & ROSATI
                                             Professional Corporation
23
                                             By:   /s/ Dale R. Bish
24                                                  Dale R. Bish

25                                            *Attorneys for Defendant*
                                             *Google Inc.*
26

27

28