UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GURMINDER SINGH, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE INC.,<br><br>Defendant. | Case No. 16-cv-03734-BLF<br><br>**ORDER GRANTING GOOGLE INC.'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>[Re: ECF 47] |

This case deals with something we have all experienced—"click ads." Through this action, Plaintiff Gurminder Singh alleges that Defendant Google Inc. ("Google") engages in a scheme of employing false and misleading advertisements and promotional materials to induce small businesses to participate in its online advertising program known as Google AdWords ("AdWords"), which results in demand for payment for invalid clicks. Second Am. Compl. ("SAC") ¶ 1, ECF 44. Singh asserts four claims against Google arising from this alleged scheme: (1) breach of the implied covenant of good faith and fair dealing; (2) violations of California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (3) violations of California's false advertising law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; and (4) fraud in the inducement. *See generally* SAC.

Presently before the Court is Defendant's motion to dismiss Plaintiff's SAC. *See generally* Mot., ECF 47. The Court heard argument on the motion on May 11, 2017. For the reasons stated

herein and on the record, the Court GRANTS Defendant's motion WITH LEAVE TO AMEND.

**I.     BACKGROUND**

Google is an online service provider whose offerings include various online advertising programs including the one at issue, AdWords. AdWords is an online platform that Google makes available for advertisers to have their ads displayed on various Google properties, including Google Search and YouTube, and other websites. SAC ¶¶ 1, 23. Advertisers pay each time their ad is "clicked," meaning the ads are "pay-per-click" ads. *Id.* ¶ 1. The relationship between Google and AdWords advertisers is governed by the Google Inc. Advertising Program Terms (the "Agreement"). *Id.* ¶ 10; Ex. 1 & 2 to Bish Decl. ISO Mot., ECF 47-2, 47-3.

Because AdWords advertisers are charged by the click, Google maintains policies to prevent "click fraud," which it defines as "clicks generated with malicious or fraudulent intent."[1] Ex. 3 to Bish Decl. ISO Mot. ("Ex. 3") 1–2, ECF 47-4. The "Google Ad Traffic Quality Resource Center" refers to "clicks and impressions on AdWords that Google suspects not to be the result of genuine user interest" as "invalid clicks" *Id.* at 1. The Google Ad Traffic Quality Resource Center states that "advertisers are not charged for [invalid] clicks or impressions." *Id.* Google has undertaken various efforts in an attempt to address click fraud and limit its effect on AdWords advertisers. For example, Google has "a global team which is dedicated to staying on top of [advertisers'] concerns, monitoring traffic across Google's ad network, and preventing advertisers from paying for invalid traffic." SAC ¶ 46. This team "work[s] to isolate and filter out potentially invalid clicks" before the advertiser is charged for any invalid clicks. Ex. 3, at 3.

---

[1] The Google Ad Traffic Quality Resource Center, while not referenced as an exhibit, is mentioned repeatedly in the complaint. *See, e.g.*, SAC ¶¶ 45–50, 79. The page appears to contain the fullest discussion of invalid clicks on one page. Plaintiff does not contest the accuracy of these documents and objects only insofar as Google is asking the Court to take the contents as true, which it is not. *See* Opp'n 3. Accordingly, the Court takes judicial notice of the statements on that URL: https://www.google.com/intl/en_ALL/ads/adtrafficquality/index.html ("Ad Traffic Resource Center"). *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002) (holding that "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss").

Singh signed up for an AdWords account in January 2008. SAC ¶ 14. He alleges that he has continued to use AdWords since that time, and now manages three separate AdWords accounts. *Id.* ¶¶ 57, 59. Singh avers that in early 2016, he began to suspect that third-party publishers and/or website owners were fraudulently manipulating certain of his advertisements. *Id.* ¶ 60. In this lawsuit, Singh challenges Google's "pay-per-click" AdWords Program as unfair, unlawful, and fraudulent. Singh contends that Google's representations that "click-fraud" occurs infrequently and that Google has robust systems in place to effectively filter out the "vast majority" of invalid clicks and prevent customers for being charged for those clicks are false and misleading, and are made to induce individuals and small business to participate in the AdWords program notwithstanding the possibility that they may be charged for fraudulent or "invalid" clicks. Opp'n 1, ECF 53. Singh asserts four causes of action: (1) breach of the implied covenant of good faith and fair dealing; (2) unfair, unlawful, and fraudulent competition; (3) false advertising; and (4) fraudulent inducement.

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). However, under the "incorporation by reference" doctrine, the Court also may consider documents which are referenced extensively in the complaint and which are accepted by all parties as authentic. *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999), *abrogated on other grounds by S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008).

## III. DISCUSSION

Google moves to dismiss Singh's SAC on two separate grounds. First, Google argues that Section 7 of the AdWords Agreement applies here to bar any claims arising from charges for allegedly invalid clicks that Singh failed to submit through Google's internal claims process. *See* Mot. 9–12. Second, Google contends that the SAC fails to state a claim under which relief may be granted. The Court addresses each in turn below.

### A. AdWords Agreement

Google first argues that the Agreement bars all claims that Singh did not submit to Google through the claims process. Mot. 9–10 (citing SAC ¶¶ 10, 14, 78); Ex. 2 to Bish Decl. ("2006 Agreement") §§ 5, 7, ECF 47-3 ("[The c]ustomer's exclusive remedy, and Google's exclusive liability, for suspected invalid impressions or clicks is for [c]ustomer to make a claim for a refund in the form of advertising credits for Google Properties within [60 days]. Any refunds for suspected invalid impressions or clicks are within Google's sole discretion."); Ex. 1 to Bish Decl. ("2013 Agreement") §7, ECF 47-2 ("Customer understands that third parties may generate impressions or clicks on Customer's Ads for prohibited or improper purposes and that its sole remedy is to make a claim for advertising credits within the Claim Period, after which Google will issue the credits following claim validation which must be used by the Use By Date."). In response, Plaintiff argues that Google's position is unavailing for three reasons: (1) waiver is an affirmative defense not ordinarily cognizable at the pleading stage; (2) waiver is an equitable defense that is not a complete defense to claims under the UCL or FAL; and (3) Plaintiff alleges that he used or attempted to use the claims process for at least some set of clicks he believes to be

4

1  suspect or questionable. Opp'n 23–24. In light of the deficiencies in Plaintiff's SAC, as discussed

2  below, the Court declines to address these arguments at this point in the litigation.

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing

Google argues that Singh fails to state a claim for breach of the implied covenant of good faith and fair dealing because the AdWords Agreement includes no promise that Google will protect advertisers from being charged for fraudulent clicks and because Singh fails to plausibly allege that Google acted unreasonably or in bad faith. Mot. at 12–17. Singh opposes Google's motion, and contends that he has sufficiently alleged that Google breached the implied covenant of good faith and fair dealing by frustrating Plaintiff's rights to the benefits of the Agreement. Opp'n 5. Specifically, Singh asserts that Google failed in its duty to apply appropriate systems, processes, and measurements to protect him from fraudulent clicks, and subsequently, fraudulent charges. *Id.* at 6. Singh also contends that he has sufficiently alleged that Google acted in bad faith through its inaction, lack of diligence, and evasion of the spirit of the bargain. *Id.* at 6–7.

"Under California law, a claim for breach of the covenant of good faith and fair dealing requires that a contract exists between the parties, that the plaintiff performed his contractual duties or was excused from nonperformance, that the defendant deprived the plaintiff of a benefit conferred by the contract in violation of the parties' expectations at the time of contracting, and that the plaintiff's damages resulted from the defendant's actions." *Avila v. Countrywide Home Loans*, No. 10-CV-05485, 2010 WL 5071714, at *5 (N.D. Cal. Dec. 7, 2010). Although a "breach of a specific provision of the contract is not a necessary prerequisite" to a claim for breach of the implied covenant, *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 373 (1992) the implied covenant "cannot impose substantive limits or duties on the contracting parties beyond those incorporated in the specific terms of their agreement." *Damabeh v. 7-Eleven, Inc.*, No. 12-cv-1739, 2013 WL 1915867, at *6 (N.D. Cal. May 8, 2013) (citation and internal quotation marks omitted).

Plaintiff's claim here fails. First, the allegations read as though Singh seeks to state a claim for breach of warranty, *i.e.*, that Google warranted he would not be charged for invalid clicks, but he was. *See, e.g.*, SAC ¶ 97. However, this is not what Plaintiff is claiming, as

5

Plaintiff's counsel confirmed at the hearing. Indeed, Singh could not make such a claim because Google acknowledges the existence of click fraud and the possibility that an advertiser would be charged for fraudulent clicks. *See, e.g.*, 2013 Agreement § 7. Additionally, Plaintiff's allegations relating to this claim include various allegations of fraud. *See, e.g.*, SAC ¶¶ 100–01. This impermissibly expands the scope of Google's duties under the contract. *See Damabeh*, 2013 WL 1915867, at *6. Plaintiff suggests that the Court's assessment that he impermissibly seeks to expand the scope of Google's contractual duties is inaccurate because the implied covenant covers frustration of purpose, and his expectations were informed by the false and misleading representations in Google's public postings. *See* Opp'n 4–6. This argument is unavailing. First, Plaintiff has failed to explain how the extra-contractual statements can provide the basis for a claim for breach of the implied covenant, particularly where, as here, the contract contains an integration clause. Reply ISO Mot. 5, ECF 54; 2013 Agreement § 12(c); 2006 Agreement § 9. Second, Plaintiff cannot use the covenant to "rewrite" the parties' contract "to include provisions entirely foreign to . . . the original." *See Tollefson v. Roman Catholic Bishop*, 219 Cal. App. 3d 843, 854 (1990), *disapproved of on other grounds by Scott v. Pac. Gas & Elec. Co.*, 11 Cal. 4th 454, 474 n.5 (1995). For these reasons, the Court GRANTS Defendant's motion to dismiss Plaintiff's claim for breach of the implied covenant of good faith and fair dealing WITH LEAVE TO AMEND.

### C. UCL, FAL, and Fraudulent Inducement Claims[2]

The UCL prohibits any "unlawful, unfair or fraudulent business practices." Cal. Bus. & Prof. Code § 17200; *see also Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Because the statute is written in the disjunctive, it applies separately to business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. *See Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003). Singh contends that Google's conduct has violated all three prongs. Google, however, argues that the SAC does not adequately allege that its conduct was unlawful, unfair, or fraudulent. Mot. 17–24.

---

[2] The Court notes that in addition to the deficiencies outlined below, it is not clear that Plaintiff has standing under the UCL.

6

### i. Unlawful Business Practices

Google contends that Singh cannot state a claim under the unlawful prong because he relies on his claim that Google breached the implied covenant of good faith and fair dealing, which is not actionable under the unlawful prong. Mot. 17 (citing *Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094, 1110 (E.D. Cal. 2010); *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152–53 (9th Cir. 2008)). In opposition, Singh argues that he has stated a claim under the unlawful prong of the UCL based on Google's alleged violations of the FAL. Opp'n 16. Despite this argument, paragraph 119 of the SAC makes plain that Plaintiff's claim under the unlawful prong of the UCL is based on Google's alleged breach of the implied covenant. Because a UCL claim cannot rest on a claim for breach of the implied covenant, the Court GRANTS Google's motion to dismiss on this ground WITH LEAVE TO AMEND.

### ii. Unfair Business Practices

"An act or practice is unfair if the consumer injury [1] is substantial, [2] is not outweighed by any countervailing benefit to consumers or to competition, and [3] is not an injury the consumers themselves could reasonably have avoided." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 839 (2006). Plaintiff must allege facts to support all three elements of a UCL unfair business practice claim. *Id.*

Although the precise test for the UCL's unfair prong has not been definitively established, Plaintiff endorses the balancing test enunciated in *South Bay Chevrolet v. General Motors Acceptance Corporation*, 72 Cal. App. 4th 861 (1999). Opp'n 16–17 (citing *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007)). Pursuant to the *South Bay* balancing test, a practice is "unfair" "when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *S. Bay*, 72 Cal. App. 4th at 886. "This test involves balancing the harm to the consumer against the utility of the defendant's practice." *Lozano*, 504 F.3d at 735 (citing *S. Bay*, 72 Cal.App.4th at 886).

Defendant contends that regardless of the test applied, Plaintiff's claims fail. Mot. 18; *see also* Reply ISO Mot. 8 ("Google does not agree that the *South Bay* 'balancing' test is necessarily the correct test here[.]"). Because Plaintiff endorses the balancing test from *South Bay*, the Court

7

analyzes his claims thereunder, but does not suggest that is the proper test.

Singh contends that he has stated a claim under the unfair prong of the UCL through allegations regarding Google's practice of making misrepresentations about the frequency of invalid clicks and the efficacy of its filtering efforts. Opp'n 18. Specifically, he alleges that Google misrepresented the likelihood that customers would actually incur charges for a significant volume of invalid clicks by assuring them that (1) such clicks represent a small percentage of all clicks; (2) that Google filters out the "vast majority" of all such clicks; and (3) customers would only pay when interested individuals click on their ad. *Id.* As Google correctly contends, however, Plaintiff has not plausibly alleged substantive unfairness under *South Bay*. Google discloses the risk of click fraud in the Agreement and elsewhere, and provides a process that allows advertisers to receive compensation for charges related to invalid clicks. Mot. 18–19; *cf. Davis v. HSBC Bank Nevada*, 691 F.3d 1152, 1169–70 (9th Cir. 2012) (affirming dismissal of claim under unfair prong of UCL because the defendant's communications warned that the charges at issue would apply and because the plaintiff had an opportunity to avoid the charges by canceling within 90 days). And, as discussed below, there is no factual support for Plaintiff's assertion that Google misrepresented the likelihood that customers would actually incur charges for a significant volume of invalid clicks. *See also* Reply ISO Mot. 8. The Court is also concerned that Singh ignores the claims process detailed in the Agreement. Plaintiff's conclusory allegations that the claims process is illusory are insufficient; to rely on this theory, Plaintiff must provide additional factual allegations. For these reasons, the Court GRANTS Google's motion to dismiss Singh's claim under the unfair prong WITH LEAVE TO AMEND.

### iii. Fraudulent Business Practices, False Advertising, and Fraudulent Inducement

Google asserts that Singh's UCL, FAL, and fraudulent inducement claims premised on fraudulent misrepresentations are insufficient because the SAC fails to plausibly allege that Google's statements at issue were false or misleading or that Plaintiff reasonably relied on those statements. Mot. 24–25. Singh argues that he adequately alleges that he saw and relied on a collection of specific representations that were false and/or misleading, and that he would not have

8

advertised with Google had he known those representations were false. Opp'n 8, 19–20. He also contends that his claims under the fraudulent prong are not precluded by the language of the of the AdWords agreement. *Id.* at 12.

"Generally, to be actionable under the UCL, a concealed fact must be material in the sense that it is likely to deceive a reasonable consumer." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025–26 (9th Cir. 2008) (citing *Aron v. U–Haul Co. of Cal.*, 143 Cal. App. 4th 796, 806 (2006)). "[T]he plaintiff must produce evidence showing 'a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care.'" *Id.* (quoting *Brockey v. Moore*, 107 Cal. App. 4th 86, 99 (2003)). In addition, "a class representative proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements." *In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009). "Reliance is proved by showing that the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct. A plaintiff may establish that the defendant's misrepresentation is an immediate cause of the plaintiff's conduct by showing that in its absence the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct." *Id.* at 326 (citation and internal quotation marks omitted).

A cause of action for fraud is further subject to the heightened pleading requirements of Rule 9(b), and the party alleging fraud "must state with particularity the circumstances constituting fraud or mistake."[3] Fed. R. Civ. P. 9(b). Rule 9(b) requires a plaintiff to be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotation marks and citation omitted). The plaintiff not only must set forth more than the neutral facts necessary to identify the transaction but also must explain why the statement or omission complained of was

---

[3] Although Plaintiff contends that Rule 9(b)'s heightened pleading standard does not apply to his claim under the fraudulent prong of the UCL, the Court disagrees. *See, e.g.*, *Woods v. Google*, No. 11-cv-1263, 2011 WL 3501403, at *8 (N.D. Cal. Aug. 10, 2011) (applying Rule 9(b) standard to claims under the fraudulent prong of the UCL).

9

false or misleading. *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994).

Singh claims the following representations are fraudulent or misleading:

- "[I]nvalid [or fraudulent] clicks account for less than 10% of all clicks on AdWords ads."

- "When Google determines that clicks are invalid, we try to automatically filter them from your reports and payments so that you're not charged for those clicks."

- "The relationship between Google, advertisers, and publishers is built on trust. Advertisers rely on the relevance of our ad placement, our reporting statistics, and the quality of the clicks their ads receive. Publishers in turn count on advertiser participation, relevant ads which create a good experience for users, and an accurate and reliable source of income which contributes to the success of their websites and business. We take this trust seriously and we know that the Google advertising networks couldn't exist without it."

- "[Google has] a global team which is dedicated to staying on top of your concerns, monitoring traffic across Google's ad network, and preventing advertisers from paying for invalid traffic."

- "The vast majority of all invalid clicks on AdWords ads are caught by our online filters. These filters are constantly being updated and react to a wide variety of traffic patterns and indications of click fraud attacks."

- Investigations prompted by customer inquiries are "relatively rare" and such investigations identify invalid clicks representing less than .02% of all clicks.

- "[C]harges are solely based on Google's measurements for the applicable Program, unless otherwise agreed to in writing."

SAC ¶¶ 110–11. The first six are quotations from Google's AdWords Help Center website and elsewhere, *id.* ¶ 110 and the last statement comes from the Agreement itself, *id.* ¶ 111. Google claims that Singh has not met Rule 9(b)'s requirement that he explain why the statements are false and/or misleading. Mot. 20. Google also argues that Singh could not have reasonably relied on any of the extra-contractual statements at issue. Mot. 23.

To satisfy Rule 9(b), Singh must identify both the particular statements he claims are fraudulent and why he claims that the statements are fraudulent. To do this, Singh relies on an "experiment" he conducted, as well as a 2013 article in the *Atlantic*. *See* SAC ¶¶ 38, 63–71. As to the former, Singh alleges that he created four advertisements, in two pairs, one of which was a

"Standard Ad" and the other an "Experimental Ad" that consisted, essentially, of gibberish. *Id.* ¶¶ 64–71. Without providing any basis for this inference, Plaintiff suggests that no person would have clicked on the Experimental Ads, and therefore extrapolates that all clicks on the Experimental Ads were fraudulent or invalid. *Id.* ¶¶ 68, 71. He uses the number of clicks on the Experimental Ad as the denominator, and the number of clicks on the Standard ad as the numerator to conclude that somewhere between 35 and 50 percent of all clicks on AdWords ads are fraudulent. *Id.* ¶¶ 68, 71. This experiment, however, is utterly implausible and would not be admissible in any form. Accordingly, the Court declines to consider these allegations.

As to the latter, Plaintiff's reliance on the 2013 article from the *Atlantic* is unpersuasive. Plaintiff alleges that the article states that 60 percent of all Internet traffic is the result of bots, many of which consist of software that provides false ad views. *Id.* ¶ 38. Contrary to Sing's belief that this article supports his allegations regarding the high percentage of fraudulent clicks, the article appears to undermine Singh's claims that he was not aware of the possibility that the rate of click fraud might exceed 10 percent, as he alleges he believed. Moreover, neither the experiment nor the magazine article says anything about the efficacy of Google's filters. And, Plaintiff does not adequately allege that he was ever charged for invalid clicks. Accordingly, the Court finds that Plaintiff has not plausibly alleged that the aforementioned statements were false and/or misleading, and thus GRANTS Google's motion to dismiss Plaintiff's claims based on the fraudulent prong WITH LEAVE TO AMEND. For the same reason, the Court GRANTS Google's motion to dismiss Plaintiff's claim under the FAL and for fraudulent inducement WITH LEAVE TO AMEND. *Davis*, 691 F.3d at 1169 (applying same standards to dismiss claim under FAL and UCL's fraud prong); *Worley v. Avanquest N. Am., Inc.*, No. C 12-4391, 2013 WL 450388, at *5 (N.D. Cal. Feb. 5, 2013) (holding that plaintiff's UCL and fraudulent inducement claims fail "for the same reasons his fraudulent inducement claim fails, *i.e.,* because he has not pled with sufficient specificity allegations regarding the falsity of defendant's representations").

For the foregoing reasons, and those discussed on the record, the Court GRANTS Google's motion to dismiss WITH LEAVE TO AMEND. Plaintiff shall file any amended pleading on or before July 10, 2017. Failure to meet the deadline to file an amended complaint or failure to cure

the deficiencies identified in this order will result in a dismissal of Plaintiff's claims with prejudice.

**IT IS SO ORDERED.**

Dated: June 2, 2017

_____
BETH LABSON FREEMAN
United States District Judge

12