DALE R. BISH, State Bar No. 235390
SONAL MITTAL, State Bar No. 299222
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300
Facsimile:   (650) 565-5100
Email:  dbish@wsgr.com; smittal@wsgr.com

BRIAN M. WILLEN (admitted *pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Telephone:  (212) 999-5800
Facsimile:  (212) 999-5899
Email:  bwillen@wsgr.com

*Attorneys for Defendant*
*Google Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

|  |  |
|---|---|
| GURMINDER SINGH, Individually and On Behalf of Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE INC.,<br><br>Defendant. | CASE NO.:  5:16-cv-03734-BLF<br><br>**GOOGLE INC.'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**<br><br>Date: Nov. 30, 2017<br>Time: 9:00 a.m.<br>Place: Courtroom 3, 5th Floor<br>Before: Hon. Beth Labson Freeman |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................ 1

STATEMENT OF ISSUES .............................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

I.    PRELIMINARY STATEMENT ............................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ............................................... 3

      A.    The AdWords Program and Agreement .................................................... 3

      B.    Google's Efforts To Combat Click Fraud .................................................. 4

      C.    Plaintiff's Claims Against Google and The Dismissal of The SAC ........ 6

III.  ARGUMENT ...................................................................................................... 9

      A.    Plaintiff Lacks Standing To Assert Claims Under The UCL And FAL
            Because He Fails To Identify Any Charges For Invalid Or Fraudulent
            Clicks ..................................................................................................... 9

      B.    Plaintiff Fails To State A Misrepresentation Claim Under The UCL Or FAL ..... 10

            1.    Plaintiff Fails to Allege That The Statements At Issue Were
                  Deceptive ..................................................................................... 11

            2.    Plaintiff's Allegations About Google's 10% Statement Are
                  Misguided ...................................................................................... 13

            3.    Plaintiff's New Allegations Repeat Deficiencies Identified By This
                  Court ............................................................................................. 15

            4.    Plaintiff Could Not Have Reasonably Relied On Google's
                  Statements .................................................................................... 19

      C.    The TAC Fails to Save Plaintiff's Unfairness Claim ............................... 20

      D.    Plaintiff Waived All Claims Arising From Charges For Allegedly Invalid
            Clicks That He Failed To Submit to Google Through The Claims Process ........ 21

IV.   CONCLUSION .................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................................10

*Birdsong v. Apple, Inc.,*
    590 F.3d 955 (9th Cir. 2009)..............................................................................9

*Cullen v. Netflix, Inc.,*
    2013 U.S. Dist. LEXIS 4246 (N.D. Cal. Jan. 10, 2013) ....................................11

*Davis v. HSBC Bank Nev., N.A.,*
    691 F.3d 1152 (9th Cir. 2012)......................................................................15, 21

*Feldman v. Google Inc.,*
    513 F. Supp. 2d 229 (E.D. Pa. 2007) .................................................................23

*Ford v. Lehman Bros. Bank, FSB,*
    2012 U.S. Dist. LEXIS 85600 (N.D. Cal. June 20, 2012) .................................10

*Free Range Content, Inc. v. Google Inc.,*
    2016 U.S. Dist. LEXIS 64365 (N.D. Cal. May 13, 2016) ..................................23

*Glen Holly Entm't Inc. v. Tektronix Inc.,*
    352 F.3d 367 (9th Cir. 2003) .............................................................................12

*Hall v. Time Inc.,*
    70 Cal. Rptr. 3d 466 (Cal. Ct. App. 2008) ..........................................................9

*In re GlenFed, Inc. Sec. Litig.,*
    42 F.3d 1541 (9th Cir. 1994)..............................................................................11

*Janda v. T-Mobile, USA, Inc.,*
    2009 U.S. Dist. LEXIS 24395 (N.D. Cal. Mar. 13, 2009) .................................20

*Knievel v. ESPN,*
    393 F.3d 1068 (9th Cir. 2005).............................................................................4

*Oestreicher v. Alienware Corp.,*
    544 F. Supp. 2d 964 (N.D. Cal. 2008) ...............................................................12

*Quadrant Info. Servs., LLC v. LexisNexis Risk Sols., Inc.,*
    2012 U.S. Dist. LEXIS 108597 (N.D. Cal. Aug. 2, 2012).................................10

*Rosado v. eBay, Inc.,*
    53 F. Supp. 3d 1256 (N.D. Cal. 2014) ...............................................................19

*Walker v. Ditech Fin. LLC,*
    2016 U.S. Dist. LEXIS 139306 (N.D. Cal. Oct. 6, 2016)..................................10

*Walker v. Geico Gen. Ins. Co.,*
    558 F.3d 1025 (9th Cir. 2009)..............................................................................9

*Williamson v. Reinalt-Thomas Corp.*,
    2012 U.S. Dist. LEXIS 58639 (N.D. Cal. Apr. 25, 2012)................................................9, 19

*Woods v. Google Inc.*,
    2011 U.S. Dist. LEXIS 88795 (N.D. Cal. Aug. 10, 2011)..................................................20

*Wright v. Gen. Motors Acceptance Corp.*,
    545 F. App'x. 686 (9th Cir. 2013)..........................................................................................9

## STATUTES & RULES

Cal. Bus. & Prof. Code § 17204........................................................................................................9

Cal. Bus. & Prof. Code § 17535........................................................................................................9

Fed. R. Civ. P. 9(b)..............................................................................................................7, 11, 19

Fed. R. Civ. P. 12(b)(6).....................................................................................................................1

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on November 30, 2017 at 9:00 a.m., in the courtroom of the Honorable Beth Labson Freeman of the United States District Court for the Northern District of California, 280 South 1st Street, San Jose, Defendant Google Inc. ("Google") will and hereby does move the Court for an order dismissing Plaintiff's Third Amended Class Action Complaint ("TAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**STATEMENT OF ISSUES**

A.      Whether Plaintiff lacks standing under the Unfair Competition Law ("UCL") and False Advertising Law ("FAL") because he fails to allege that he was ever actually charged for any fraudulent or invalid clicks.

B.      Whether the TAC fails to state a claim under the UCL or FAL because Plaintiff fails to plausibly allege either that Google's public statements regarding its click fraud policing efforts were misleading or that Plaintiff reasonably relied on those statements.

C.      Whether Plaintiff's unfairness claim under the UCL should be dismissed because Google discloses the risk of click fraud in the parties' agreement and elsewhere and provides a process that allows advertisers to receive compensation for charges related to invalid clicks.

D.      Whether Section 7 of the AdWords Agreement bars claims arising from charges for any supposedly invalid clicks that Plaintiff failed to submit through Google's internal claims process within 60 days of the relevant invoice.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      PRELIMINARY STATEMENT**

The TAC represents Plaintiff's fourth effort to state claims arising out of Google's public statements about the measures it takes to combat click fraud on the AdWords platform. This Court dismissed Plaintiff's Second Amended Complaint ("SAC") because, among other reasons, Plaintiff failed to allege that he was ever actually charged for invalid clicks and because he offered no plausible factual allegations that any of Google's public statements were misleading. The Court gave Plaintiff a limited opportunity to come forward with specific allegations to address these deficiencies, warning that failure to do so "will result in a dismissal of Plaintiff's

claims with prejudice." ECF No. 64 ("MTD Order") at 12. The TAC does not come close to doing so. Plaintiff has abandoned his breach of implied covenant and fraudulent inducement claims, and his effort to resuscitate his claims under the UCL and FAL fails, both for the reasons this Court has already identified and additional ones.

*First*, despite this Court's express admonition, Plaintiff still points to no instances in which he was actually charged for invalid clicks. Plaintiff therefore lacks standing to assert claims under the UCL and FAL because he has not plausibly alleged that he lost money or property as a result of Google's allegedly wrongful practices.

*Second*, although Plaintiff's remaining claims are all premised on the same fraud-based theory recycled from the SAC, the handful of new allegations included in the TAC do nothing to suggest that any of Google's public statements are actually deceptive. To the contrary, Plaintiff simply doubles down on allegations the Court has rejected. That includes Plaintiff's "experiments," which the Court dismissed as "utterly implausible" (MTD Order at 11), and scattered third-party reports about online fraud, which do not address, and certainly not in in any plausible way, the efficacy of Google's AdWords filters.

*Third*, Plaintiff still offers nothing to establish that he *reasonably* relied on Google's public statements. That is not surprising: Google specifically warns advertisers not to rely on those statements as saying anything about their individual experiences, and the governing AdWords Agreement further disclaims any extra-contractual guarantees and assurances. Given that, Plaintiff's purported reliance could not have been reasonable as a matter of law.

*Fourth*, the TAC does nothing to overcome this Court's holding that Plaintiff failed to state a viable claim under the UCL's unfairness prong. To the contrary, Plaintiff recycles the same insufficient theory he offered in the SAC.

*Fifth*, Plaintiff still cannot evade the express provision in the AdWords Agreement under which advertisers expressly waive all legal claims relating to charges that they fail to submit to Google within 60 days. Plaintiff was clearly on notice of this requirement, but the TAC makes no allegation that Plaintiff used the claims process for the overwhelming majority, if any, of the charges for which he now seeks redress. Plaintiff cannot avoid this unambiguous waiver by

1  asserting that Google's claims process is somehow "illusory." Ignoring the Court's instruction

2  that he "must provide additional factual allegations" on this point (MTD Order at 8), Plaintiff

3  merely repeats the conclusory allegations that this Court previously rejected.

4      In short, Plaintiff has not and cannot overcome the serial deficiencies that preclude any

5  viable claim in this case. The TAC should be dismissed, and this time the dismissal should be

6  with prejudice.

7  **II.     FACTUAL AND PROCEDURAL BACKGROUND**

8      Because this Court is familiar with the background of this case (MTD Order at 1-3),

9  Google sets out only what is most relevant to this renewed motion to dismiss.

10      **A.     The AdWords Program and Agreement**

11      Google AdWords is an online advertising platform that allows advertisers to display their

12  ads on various Google properties and other websites. TAC ¶¶ 1, 12, 27-31. This action involves

13  "pay-per-click" advertisements on AdWords. TAC ¶¶ 70, 139, 154. Advertisers are billed for

14  such ads only when their ad is actually clicked on and consumers are directed to the advertised

15  website. TAC ¶¶ 1-2, 23, 25-26. The relationship between Google and advertisers is governed by

16  the AdWords Agreement, the current version of which is attached as Exhibit A to the TAC.[1]

17  While Plaintiff has abandoned his claims for breach of contract and breach of the implied

18  covenant of good faith, several provisions of the AdWords Agreement bear directly on his

19  remaining statutory claims.

20      *First*, the Agreement expressly warns advertisers that "third parties may generate

21  impressions or clicks on Customer's Ads for prohibited or improper purposes" and creates a

22  process for addressing that issue. TAC Ex. A § 7. Advertisers' remedy for such clicks "is to

23  make a claim for advertising credits" within 60 days of the relevant invoice (the "Claim Period"),

24  "after which Google will issue the credits following claim validation." *Id*. By entering the

25  Agreement, moreover, advertisers expressly "WAIVE ALL CLAIMS RELATING TO ANY

26  PROGRAM CHARGES" that are not submitted to Google within the Claim Period. *Id*.

27   

28     [1] For purposes of this motion, Google accepts Plaintiff's allegation that the February 21, 2013 version of the AdWords Agreement is the relevant version.

1    *Second*, the Agreement disclaims any extra-contractual assurances regarding the

2    AdWords program (including the validity or quality of "clicks"). It does so through a broad

3    disclaimer stating that the AdWords program is "PROVIDED 'AS IS' AND AT CUSTOMER'S

4    AND ADVERTISER'S OPTION AND RISK" and that Google makes no guarantees "IN

5    CONNECTION WITH THE PROGRAMS OR PROGRAM RESULTS." *Id.* § 8. The Agreement

6    also includes an integration clause that makes clear that the written contract is the parties' "entire

7    agreement" and "supersede[s] any prior or contemporaneous agreements on that subject." *Id.*

8    § 12(c); *accord* MTD Order at 6 (applying the integration clause to reject Plaintiff's purported

9    reliance on extra-contractual statements).

10    **B.    Google's Efforts To Combat Click Fraud**

11    This case involves allegations about fraudulent or invalid clicks by third parties on the

12    AdWords platform. Google uses the term "click fraud" to refer to clicks generated with

13    malicious or fraudulent intent. MTD Order at 2 (citing Declaration of Dale R. Bish ISO Mot. to

14    Dismiss SAC ("Bish Decl.") Ex. 3, ECF No. 47-4, at 1-2).[2] In contrast, the term "invalid clicks"

15    is used to refer to a broader set of clicks that Google "suspects not to be the result of genuine

16    user interest." *Id.*; *see also* Bish Decl. Ex. 4.

17    As this Court has observed, "Google has undertaken various efforts in an attempt to

18    address click fraud and limit its effect on AdWords advertisers." MTD Order at 2. That includes

19    "a global team which is dedicated to staying on top of [advertisers'] concerns, monitoring traffic

20    across Google's ad network, and preventing advertisers from paying for invalid traffic." *Id.*

21    (alteration in original) (quoting SAC ¶ 46); *accord* TAC ¶ 47. This team uses an array of filtering

22    systems that monitor for and detect instances of click fraud across the AdWords platform. MTD

23

24    ――――――――――――――

25    [2] The Court has already taken judicial notice of the Ad Traffic Quality Resource Center (Bish Decl. Ex. 3) (*see* MTD Order at 2 n.1), and it should do the same for the AdWords Help Center page on invalid clicks (Bish Decl. Ex. 4, ECF No. 47-5) and the "Inside AdWords blog" post

26    (Bish Decl. Ex. 5, ECF No. 47-6). Both of these documents are expressly referenced throughout the TAC and form the basis for Plaintiff's claims. *See* TAC ¶¶ 44 & n.23, 120 & n.51,

27    130(b)(viii), 135-136, 150; *accord Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (applying incorporation-by-reference doctrine to online materials referenced in, but not attached

28    to, the complaint).

1   Order at 2. When Google's systems identify suspicious click patterns or behaviors, those clicks

2   are excluded, often before advertisers are charged for them. Bish Decl. Ex. 3 at 3-4; Ex. 5 at 1-2.

3        While Google's proactive systems catch a significant quantity of invalid clicks, they do

4   not catch everything. This is explained by the AdWords Agreement itself, and by Google's

5   public statements, which make clear that, despite Google's efforts, "some portion of the invalid

6   click activity is not detected by our proactive systems and processes." Bish Decl. Ex. 3 at 3; *see*

7   *also* MTD Order at 6 ("Google acknowledges the existence of click fraud and the possibility that

8   an advertiser would be charged for fraudulent clicks."). To address that scenario, Google has a

9   process through which it investigates claims brought to its attention by advertisers and issues ad

10  credits for charges Google determines to have been based on invalid clicks. Bish Decl. Ex. 3 at

11  3-4; Ex. 4; Ex. 5 at 2.

12       To provide greater transparency to advertisers, Google publishes general information

13  about the overall volume of invalid click activity that its systems detect. These public statements

14  are at the heart of this case, but they are entirely unobjectionable. Google has reported that the

15  "vast majority" of the invalid clicks that it detects are found by the proactive filters, and that,

16  historically, the clicks that those filters identify as invalid have accounted for less than 10% of all

17  clicks on the AdWords platform. *See* TAC ¶¶ 122, 135 (citing Bish Decl. Ex. 3 ("On average,

18  invalid clicks account for less than 10% of all clicks on AdWords ads.")); Bish Decl. Ex. 5 at 4

19  ("Our invalid clicks rate—the activity rate—has remained in the range of less than 10% of all

20  clicks every quarter since we launched AdWords in 2002.").[3] As for the reactive investigations,

21  Google's public statements have explained that portion of the process "[a]ccounts for a much

22  smaller proportion of invalid clicks than that detected by [Google's] automatic filters." Bish

23  Decl. Ex. 3 at 3-4. Google has indicated that the clicks found to be invalid through such

24  investigations "constitute less than 0.02% of all clicks." Bish Decl. Ex. 5 at 4-5.

25       [3] These statements, by their terms, speak only to the *overall* volume of invalid click activity

26  that Google has detected across the entire AdWords system, not the actual or expected
    experience of any given advertiser. Indeed, Google clearly specifies that this "network-wide

27  invalid clicks rate is separate from an individual advertiser's invalid clicks rate," and "these
    network figures do not have any bearing on what individual advertisers may experience." Bish

28  Decl. Ex. 5 at 5-6.

1    Taken together, the clicks identified as invalid by the combination of Google's proactive

2    and reactive systems make up what Google describes as "invalid traffic," that is, "clicks and

3    impressions on AdWords ads *that Google suspects* to not be the result of genuine user interest."

4    Bish Decl. Ex. 3 at 1 (emphasis added). That does not mean, of course, that *all* instances of what

5    may be invalid clicks are necessarily detected. If Google's algorithms do not detect an invalid

6    click, and advertisers do not bring what they believe to be charges based on such clicks to

7    Google's attention, those charges may never be investigated.

8    **C.    Plaintiff's Claims Against Google and The Dismissal of The SAC**

9    Plaintiff is a small business owner who first signed up for an AdWords account in

10   January 2008. TAC ¶ 14. Plaintiff has been advertising with Google ever since, and he now

11   claims to manage three separate AdWords accounts. TAC ¶¶ 68-69. In creating these accounts,

12   Plaintiff accepted the AdWords Agreement and is bound by its terms. TAC ¶ 10, 14. Plaintiff

13   alleges that, starting in early 2016, he began to suspect that some of his advertisements "were

14   being fraudulently manipulated by third-party publishers/website owners." TAC ¶ 70. There is

15   no indication in the TAC that Plaintiff brought these concerns to Google or sought Google's

16   assistance in identifying the third parties responsible for this purported misconduct.

17   Instead, Plaintiff commenced this lawsuit against Google. Plaintiff filed his original

18   complaint on July 1, 2016 (ECF No. 1), an amended complaint on September 9, 2016 (ECF No.

19   14), and the SAC on November 23, 2016 (ECF No. 44). The SAC asserted causes of action for

20   breach of the implied covenant of good faith and fair dealing, statutory claims under the UCL

21   and FAL, and a claim for fraudulent inducement. On June 2, 2017, the Court dismissed the SAC.

22   MTD Order at 11-12. In so doing, the Court made a number of significant rulings that govern

23   this motion.

24   *First*, the Court held that Plaintiff's implied covenant claim reflected an impermissible

25   effort to expand "the scope of Google's duties under the contract." MTD Order at 6. The Court

26   explained that Plaintiff could not contend that Google "warranted he would not be charged for

27   invalid clicks" because "Google acknowledges the existence of click fraud and the possibility

28   that an advertiser would be charged for fraudulent clicks." *Id*. at 5-6. The Court also rejected

1    Plaintiff's reliance on Google's extra-contractual statements, explaining that such reliance was

2    inconsistent with the fact that the AdWords Agreement "contains an integration clause." *Id.* at 6.

3        *Second*, the Court dismissed Plaintiff's claim under the UCL's "unfair" prong. *Id.* at 7-8.

4    This claim was based on the theory that "Google misrepresented the likelihood that customers

5    would actually incur charges for a significant volume of invalid clicks." *Id.* at 8. But the Court

6    rejected that theory because "Google discloses the risk of click fraud in the Agreement and

7    elsewhere, and provides a process that allows advertisers to receive compensation for charges

8    related to invalid clicks." *Id.* In rejecting Plaintiff's claims on this basis, the Court expressed

9    concern that "Singh ignores the claims process detailed in the Agreement" and specifically held

10   that "Plaintiff's conclusory allegations that the claims process is illusory are insufficient; to rely

11   on this theory, Plaintiff must provide additional factual allegations." *Id.*

12       *Third*, the Court collectively addressed Plaintiff's claims under the UCL fraud prong, the

13   FAL, and for fraudulent inducement. *Id.* at 8-11. Those claims each turned on the same

14   allegations about Google's allegedly misleading public statements about its efforts to combat

15   click fraud and the efficacy of its filters. *Id.* at 10. The Court observed that "it is not clear that

16   Plaintiff has standing [to sue] under the UCL" (*id.* at 6 n.2), pointing out that "Plaintiff does not

17   adequately allege that he was ever charged for invalid clicks" (*id.* at 11). The Court also held that

18   all of the fraud-based claims were subject to Rule 9(b)'s requirement that Plaintiff must plead

19   with particularity why "the statement or omission complained of was false or misleading." *Id.* at

20   9-10. The Court found that Plaintiff failed to satisfy that requirement for any of the Google

21   statements he had put at issue. *Id.* at 10-11.

22       In so holding, the Court considered two kinds of allegations that Plaintiff had used to

23   suggest that Google's public statements about the effectiveness of its filters were misleading.

24   The first were Plaintiff's so-called "experiments," where he created test ads that he claimed that

25   no real person would have clicked on and then "extrapolate[d] that all clicks on the Experimental

26   Ads were fraudulent or invalid." *Id.* at 11. The Court declined to consider these "experiments,"

27   finding them "utterly implausible and … not … admissible in any form." *Id.* Next, the Court

28   addressed various third party media reports about fraudulent activity on the Internet and in the

1   online advertising industry more specifically. SAC ¶¶ 37-42, 47 & nn.8-14, 16-17. Those reports

2   included a 2013 article in the *Atlantic* magazine that, according to Plaintiff, stated "that 60

3   percent of all Internet traffic is the result of bots, many of which consist of software that provides

4   false ad views." MTD Order at 11 (citing SAC ¶ 38). The Court rejected Plaintiff's reliance on

5   this material as well. Not only did the articles say nothing "about the efficacy of Google's

6   filters," but they also "undermine Singh's claims that he was not aware of the possibility that the

7   rate of click fraud might exceed 10 percent, as he alleges he believed." *Id*.

8          For these reasons, the Court concluded that "Plaintiff has not plausibly alleged that the

9   aforementioned statements were false and/or misleading." *Id*. That required dismissal of his

10  UCL, FAL, and fraudulent inducement claims. *Id*. While the Court gave Plaintiff one more

11  chance to amend his complaint, it made clear that "failure to cure the deficiencies identified in

12  this order will result in a dismissal of Plaintiff's claims with prejudice." *Id.* at 12.

13         Plaintiff filed his TAC on July 10, 2017. Plaintiff has abandoned his claims for breach of

14  the implied covenant of good faith and for fraudulent inducement. His claims are now limited to

15  alleged violations of the UCL and FAL. TAC ¶¶ 133-155. The same fraud-based theory

16  underlies the entire TAC. As before, that theory is that certain of Google's public statements

17  about its efforts to combat click fraud were deceptive and induced Plaintiff into joining and using

18  AdWords. TAC ¶¶ 136, 150. This theory is identical to the theory set out in the SAC and rejected

19  by this Court. In response to that holding, Plaintiff makes no new allegations about Google's

20  supposed misconduct, and he identifies no new statements that he suggests were misleading or

21  deceptive. *Compare* TAC ¶ 135, *with* SAC ¶ 110.[4]

22

23

24

25         [4] In the TAC, Plaintiff purports to assert claims on behalf of a putative class of AdWords

26  advertisers who paid for clicks originating from the Google Display Network since June 1, 2012.
    TAC ¶ 125. But the August 1, 2017 deadline that this Court set for Plaintiff to file a motion for

27  class certification has now passed without Plaintiff filing any such motion. ECF No. 40. Plaintiff
    thus has waived his right to seek to represent a class, and this case is now limited to Plaintiff's

28  individual claims.

1    III.    **ARGUMENT**

2          Plaintiff has not meaningfully addressed the deficiencies identified by the Court in

3    dismissing the SAC or the other shortcomings discussed in Google's previous motion to dismiss.

4    The TAC should be dismissed, without further leave to amend.

5          A.    **Plaintiff Lacks Standing To Assert Claims Under The UCL And FAL**

6                **Because He Fails To Identify Any Charges For Invalid Or Fraudulent Clicks**

7          To assert any claim under the UCL or FAL, Plaintiff must plausibly allege not just that he

8    suffered an "injury in fact" under Article III, but also that he lost "money or property as a result

9    of" Google's alleged violation. Cal. Bus. & Prof. Code § 17204; *Walker v. Geico Gen. Ins. Co.*,

10   558 F.3d 1025, 1027 (9th Cir. 2009) (UCL); Cal. Bus. & Prof. Code § 17535; *Williamson v.*

11   *Reinalt-Thomas Corp.*, 2012 U.S. Dist. LEXIS 58639, at *21-22 (N.D. Cal. Apr. 25, 2012)

12   (FAL). This statutory standing requirement is "substantially narrower" than standing under

13   Article III. *See Wright v. Gen. Motors Acceptance Corp.*, 545 F. App'x 686, 688 (9th Cir. 2013).

14         While it dismissed Plaintiff's UCL and FAL claims on other grounds, the Court noted

15   that Plaintiff also appeared to lack statutory standing under this lost money or property

16   requirement. MTD Order at 6 n.2. That was because "Plaintiff does not adequately allege that he

17   was ever charged for invalid clicks." *Id.* at 11. Without such an allegation, there is no connection

18   between Google's purported unfair or deceptive conduct and any injury suffered by Plaintiff. If

19   Plaintiff was never actually charged for invalid clicks, he simply cannot assert that he lost money

20   or property as a result of anything Google said about its efforts to prevent such charges.[5]

21         The Court's ruling put Plaintiff on notice that to continue to assert claims under the UCL

22   or FAL he would have to amend his complaint to include plausible allegations that he was

23   charged for clicks that were not valid. But the TAC does not even try to do so. Like its

24   predecessor, the TAC fails to identify any instance in which Google charged Plaintiff for clicks

25

26         [5] While Plaintiff paid money to Google in connection with his AdWords ads, doing so in
     connection with legitimate clicks plainly is not an economic harm or a valid basis for asserting a
27   UCL or FAL claim. *See, e.g.*, *Hall v. Time Inc.*, 70 Cal. Rptr. 3d 466, 471-74 (Cal. Ct. App.
     2008) (no standing under UCL even though plaintiff paid money to defendant for product at
28   issue); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961-62 (9th Cir. 2009) (same).

1   that were supposedly invalid. Plaintiff does not offer a single new allegation in response to the

2   Court's ruling on this point. To the contrary, the TAC repeats the same allegations that the Court

3   has already found lacking: the SAC's conclusory assertions that Plaintiff "lost money or

4   property" as a result of Google's actions and/or inactions (TAC ¶ 134) and "expended money on

5   advertising with Google that [he] otherwise would not have spent" (TAC ¶ 141). *Accord* SAC

6   ¶¶ 109, 117. Such allegations were not enough then, and they are not enough now. They

7   exemplify the kind of "threadbare" assertions that do not state a viable claim. *Ashcroft v. Iqbal*,

8   556 U.S. 662, 663, 681 (2009); *see, e.g.*, *Walker v. Ditech Fin. LLC*, 2016 U.S. Dist. LEXIS

9   139306, at *34 (N.D. Cal. Oct. 6, 2016) (generic allegation that plaintiff "lost money and/or

10   property as a result of the[] [defendant's] unlawful, unfair, and fraudulent business practices"

11   was "insufficient" to state UCL claim); *Quadrant Info. Servs., LLC v. LexisNexis Risk Sols., Inc.*,

12   2012 U.S. Dist. LEXIS 108597, at *10 (N.D. Cal. Aug. 2, 2012) (allegation that "[Quadrant] has

13   suffered injury in fact and has lost money as a result of [LexisNexis'] unfair competition" was

14   "conclusory" and "insufficient to establish standing under the UCL" (alterations in original)).

15   Beyond that, the TAC offers nothing. As before, there is not even an effort to point to any

16   specific charges that Plaintiff believes to be based on invalid clicks. *Accord Ford v. Lehman*

17   *Bros. Bank, FSB*, 2012 U.S. Dist. LEXIS 85600, at *25 (N.D. Cal. June 20, 2012) ("An absence

18   of *facts* describing the money or property allegedly lost is fatal to a plaintiff's UCL claim.").

19      In short, for the reasons the Court has already recognized, Plaintiff has not sufficiently

20   alleged that he lost money as a result of Google's conduct. He therefore lacks standing to bring

21   claims under the UCL and FAL. This defect by itself warrants dismissal of the TAC.

22      **B.      Plaintiff Fails To State A Misrepresentation Claim Under The UCL Or FAL**

23      Plaintiff also fails to state a substantive claim under the UCL or FAL. These two causes

24   of action are based on the same theory: Google's alleged "scheme of employing false and

25   misleading advertisements and promotional materials in order to induce small businesses to

26   participate in its online advertising program." TAC ¶ 1.[6] In dismissing the previous version of

27

28      [6] While Plaintiff alleges only a single UCL count, the TAC alludes to all three prongs of the
   statute. TAC ¶¶ 141-143. In reality, the whole UCL claim is premised on the same deception
   theory. Plaintiff's allegations under the UCL's unlawful prong now expressly reference his claim
   (continued...)

1   these claims, the Court rejected this theory: "Plaintiff has not plausibly alleged that the …

2   statements [at issue] were false and/or misleading." MTD Order at 11. The TAC fails to address

3   this deficiency. Beyond that, Plaintiff still cannot allege that he reasonably relied on Google's

4   alleged misrepresentations, which independently forecloses his claims.

5             1.    <u>Plaintiff Fails to Allege That The Statements At Issue Were Deceptive</u>

6        The misrepresentation claims asserted in the TAC are based on the same set of Google

7   public statements identified in the SAC. *Compare* TAC ¶ 135, *with* SAC ¶ 110. As the Court has

8   held, Rule 9(b) applies here, and requires Plaintiff to allege with particularity facts that explain

9   why each of these statements "was false or misleading." MTD Order at 9-10 (citing *In re*

10  *GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)); *see, e.g.*, *Cullen v. Netflix, Inc.*,

11  2013 U.S. Dist. LEXIS 4246, at *16-21 (N.D. Cal. Jan. 10, 2013) (dismissing fraud claim where

12  plaintiff failed to allege sufficient facts to show that statements at issue were false), *aff'd*, 600 F.

13  App'x 508 (9th Cir. 2015). Once again, Plaintiff has not met that requirement.

14       The statements at issue, which were published on Google's online help pages, describe

15  Google's efforts to protect advertisers from charges for invalid or fraudulent clicks. TAC ¶¶ 3-5,

16  135. Most of the statements listed in paragraph 135 of the TAC can be addressed succinctly, as

17  Plaintiff does not even try to allege facts to suggest that they are false or misleading:

18        •   **"When Google determines that clicks are invalid, we try to automatically**

19          **filter them from your reports and payments so that you're not charged for those**

20          **clicks."** This statement describes Google's efforts to filter or remove charges when it

21          determines that clicks are invalid. It is a true statement, and no facts alleged in the TAC

22          suggest otherwise. Indeed, as discussed above, despite being on clear notice from the

23          Court about the importance of such allegations, Plaintiff has not pointed to any instance

24

25

26       (…continued from previous page)
    under the FAL (TAC ¶ 143), and these two claims duplicate one another. The same is true of

27  Plaintiff's cursory reference to the unfairness prong, which focuses on the same allegedly
    misleading statements (TAC ¶ 142), though we separately address that claim below (*infra*

28  Section III.C).

in which Google determined that certain clicks were invalid but proceeded to charge Plaintiff (or any other advertiser) for those clicks anyway.

• **"[Y]ou only pay for results … [s]igning up for Google AdWords is free. You only pay when someone clicks your ads to visit your website, or calls you. In other words, when your advertising is working."** This statement is simply a description of cost-per-click advertising, where advertisers pay when their ads are clicked, rather than when they are placed or viewed. TAC ¶ 23. It does not say or suggest that AdWords advertisers will never be charged for clicks that might be based on undetected third-party fraud. As this Court has recognized, Google specifically tells advertisers the opposite. MTD Order at 6 ("Google acknowledges the existence of click fraud and the possibility that an advertiser would be charged for fraudulent clicks."); *see also* TAC Ex. A § 7; Bish Decl. Ex. 3 at 3. Plaintiff cannot premise a fraud claim on a statement like this.

• **"The relationship between Google, advertisers, and publishers is built on trust…."** This is an (obvious) observation about the advertising ecosystem as it relates to the AdWords program. The TAC pleads nothing to suggest that the relationship between Google and its advertisers is not based on trust or that Google does not believe that it is so. This statement is not deceptive. Indeed, it is not a factual statement at all, but a clear example of "non-actionable puffery." *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973-74 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489 (9th Cir. 2009); *accord Glen Holly Entm't Inc. v. Tektronix Inc.*, 352 F.3d 367, 379 (9th Cir. 2003) ("generalized, vague and unspecific assertions constitut[e] mere 'puffery' upon which a reasonable consumer could not rely," and hence are not actionable).

• **Google has a "global team which is dedicated to … monitoring traffic across Google's ad network, and preventing advertisers from paying for invalid traffic."** Like the others discussed, this statement is true, and nothing in the TAC says otherwise. Plaintiff does not allege any facts to suggest that Google does not have a global team focused on ad traffic or that this team does not work to prevent advertisers from being charged for invalid clicks.

- **"Investigations prompted by customer inquiries are 'relatively rare' and such investigations identify invalid clicks representing less than .02% of all clicks."** As in the SAC, Plaintiff has again misrepresented the statement that the TAC purports to quote. What the statement actually says is: "Because of the broad operation of our proactive detection, the relatively rare cases we find of advertisers being affected by undetected click fraud constitute less than 0.02% of all clicks." Bish Decl. Ex. 5 at 4-5. Google does not say that investigations are rare; to the contrary, it says that "[Google's] Click Quality team investigates *every* inquiry we receive from advertisers who believe they may have been affected by undetected click fraud." *Id*. at 4 (emphasis added). As for the second part of the statement—that click fraud identified through reactive investigations constitutes 0.02% of all clicks—nothing in the TAC suggests that this is untrue (i.e., that the number of invalid clicks uncovered by Google's investigations is more than 0.02% of the total number of clicks across AdWords).

In short, it is clear that none of these statements can support a misrepresentation claim. The TAC makes no serious effort to suggest otherwise.

## 2. Plaintiff's Allegations About Google's 10% Statement Are Misguided

The statements that received the most attention in connection with Google's previous motion to dismiss, and that likewise appear to be the focus of the TAC (*e.g.*, ¶¶ 6, 18, 135), are Google's statements about the efficacy of its proactive filters and the proportion of invalid clicks caught by those filters. These statements appear in a paragraph in Google's Ad Traffic Quality Resource Center:

> ***The vast majority of all invalid clicks on AdWords ads are caught by our online filters.*** These filters are constantly being updated and react to a wide variety of traffic patterns and indications of click fraud attacks. ***On average, invalid clicks account for less than 10% of all clicks on AdWords ads***.

Bish Decl. Ex. 3 at 2 (emphases added). It is important to be clear about what this paragraph says and what it does not. It describes Google's historical experience with its proactive filters. The first sentence says simply that most of the "invalid" clicks that Google identifies have been detected by its filters, as opposed to Google's manual investigations process. The last sentence

1    says that, on average, the clicks caught by those filters account for less than 10% of the overall

2    clicks on AdWords. In this paragraph, Google was reporting empirical information; it was not

3    making a promise or prediction. And this information merely provides an "average" that spans

4    the entire AdWords platform. By its terms, the statement makes no claim about the efficacy of

5    Google's filters for any given advertiser, advertisement, or campaign.[7]

6         Plaintiff has previously suggested—and the TAC appears to proceed on the assumption—

7    that these statements are saying something different: that the rate of invalid clicks on AdWords

8    (both those detected and undetected by Google's filters) is under 10% and that no advertiser will

9    ever experience any higher rate of suspicious clicks. *E.g.*, TAC ¶ 7. That is incorrect. Beyond the

10   fact that Google would not know the rate of potentially invalid clicks that it did *not* catch,

11   Plaintiff ignores the express definition of the term "invalid." On the same page of the Ad Traffic

12   Quality Resource Center, Google defines "invalid" as "clicks and impressions on AdWords ads

13   that ***Google suspects to not be the result of genuine user interest***." Bish Decl. Ex. 3 at 1

14   (emphasis added). As this Court has already recognized, therefore, when the Resource Center

15   uses the term "invalid," it is, by definition, referring to clicks that Google's systems have

16   identified as suspicious. MTD Order at 2 (referencing Google's definition of "invalid clicks").

17        While Google's words are clear on their face, the "Inside AdWords" blog post (Bish

18   Decl. Ex. 5) confirms exactly what the 10% and "vast majority" statement means. (As explained

19   above, *supra* n.2, this blog post is quoted and incorporated by reference in the TAC (¶ 120 &

20   n.51), and so is properly before the Court.) The blog explains, in the form of a bar graph, that

21   fewer than 10% of all AdWords clicks reflect "INVALID CLICKS, PROACTIVELY

22   DETECTED." Bish Decl. Ex. 5 at 3. In contrast, the graph explains, the clicks identified as

23   invalid by reactive investigations account for only 0.02% of overall clicks. *Id*. at 4-5. This makes

24   clear that the "vast majority" statement refers to the portion of clicks detected as invalid by the

25   _____

26   [7] Google makes that point expressly in a blog post that explains the 10% figure in greater
     detail: "It is important to understand that the ***network-wide*** invalid clicks rate is separate from an
     individual advertiser's invalid clicks rate.… Thus, the overall invalid clicks rate, as well as its

27   day-to-day fluctuations, ***has almost no relation to the invalid clicks rate for an individual
     advertiser***." Bish Decl. Ex. 5 at 5-6 (emphases added). The TAC misleadingly elides this point

28   when it quotes the 10% statement with the phrase "on average" missing (¶ 135).

1    proactive filers (in contrast to the reactive investigations) and that the 10% figure refers to the

2    percentage of all AdWords clicks that those filters excluded before advertisers were charged for

3    them. *See also id.* at 4 ("Our invalid clicks rate—the activity rate—has remained in the range of

4    less than 10% of all clicks every quarter since we launched AdWords in 2002. At Google's

5    current revenue rate, every percentage point of invalid clicks we throw out represents over $100

6    million/year in potential revenue foregone.").

7        Read for what Google actually says, the "vast majority" and 10% statement is not

8    remotely deceptive. Indeed, the TAC does not make any allegation suggesting that Google's

9    proactive filters are not responsible for catching most of the clicks Google determines to be

10   invalid or that Google has actually detected invalid clicks across the AdWords platform at a rate

11   greater than 10%. That alone requires dismissal of the TAC. Plaintiff cannot establish a

12   misrepresentation claim by ascribing to Google something it did not actually say. *See Davis v.*

13   *HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012) ("[A] representation does not

14   become 'false and deceptive' merely because it will be unreasonably misunderstood by an

15   insignificant and unrepresentative segment of the class of persons to whom the representation is

16   addressed." (citation omitted)).

17                3.    Plaintiff's New Allegations Repeat Deficiencies Identified By This Court

18       But even if Google's statements were understood in the distorted way that Plaintiff

19   suggests, they still would not allow Plaintiff to state a claim. What this Court said about the SAC

20   remains true: "there is no factual support for Plaintiff's assertion that Google misrepresented the

21   likelihood that customers would actually incur charges for a significant volume of invalid

22   clicks." MTD Order at 8. In reaching that conclusion, the Court specifically dismissed two sets

23   of allegations that Plaintiff tried to use to cast doubt on Google's statements: (1) Plaintiff's so-

24   called "experiments"; and (2) references to various articles purporting to make claims about

25   online fraud. The TAC doubles down on these same discredited theories. The little new that

26   Plaintiff says about his experiments and third-party reports cannot evade this Court's ruling.

27       **Plaintiff's "Experiments."** The Court dismissed Plaintiff's prior allegations about his

28   "experiments" in no uncertain terms, describing them as "utterly implausible" and saying that

1   they "would not be admissible in any form." MTD Order at 11. In response, Plaintiff offers more

2   of the same.

3        The TAC repeats the identical allegations about Plaintiff's original experiments (TAC

4   ¶¶ 82-93), while adding a few paragraphs about other people who have used similar kinds of so-

5   called "bluff ads" (TAC ¶¶ 95-105). This changes nothing. Merely pointing out that others have

6   used a similar methodology does not legitimize an approach that the Court has already rejected.

7   And even if this method has been used before, Plaintiff does not claim that the versions of the

8   "bluff ads" he used were verified by any third party, much less that an actual researcher deemed

9   his specific experiments a plausible way of generating conclusions about the percentages of

10  invalid clicks that Google's filters miss. (That is especially unlikely given that the text of

11  Plaintiff's experimental ads was hardly gibberish, but instead included recognizable statements

12  like "Get the facts today" and "we'll take your left over B-tonis and produce nice designs." TAC

13  ¶¶ 84, 89.) In short, what the Court concluded about Plaintiff's experiments remains true: there is

14  simply no basis for assuming "that all clicks on the Experimental Ads were fraudulent or

15  invalid." MTD Order at 11. Without that assumption, Plaintiff's experiment is meaningless.

16       Next, Plaintiff points for the first time to a different experiment, in which he ran a video

17  ad that told viewers that it would put malware on their computers. TAC ¶¶ 77-81. This new

18  experiment is equally implausible. It suffers from the same problem this Court has identified:

19  Plaintiff has provided no foundation whatsoever for the premise that any view, much less *all*

20  views, of a video ad like this were necessarily invalid or fraudulent. And that assumption is

21  baseless. There are any number of plausible reasons—ranging from inattention, lack of

22  understanding, disbelief, or just curiosity—why someone might have viewed this ad.[8]

23       Beyond all that, even if these experiments were somehow to be credited, they still would

24  not make out a viable misrepresentation claim. As discussed above, the Google statements at

25  issue are directed to the AdWords platform as a whole—not to particular ads or campaigns.

26  _____

27  [8] The TAC also cryptically alleges that "Plaintiff has since conducted a series of additional
    experiments, each of which independently demonstrates that Google's claims regarding the
    efficacy of its filters are false." TAC ¶ 93. The TAC does not further explain or describe these
28  supposed experiments, and such cursory allegations cannot overcome the Court's ruling.

1    Google never said anything to suggest that its filters would detect all potentially invalid clicks

2    (or some given amount of clicks) on any given ad. Exactly the opposite: Google specifically

3    cautions advertisers that its "network figures do not have any bearing on what individual

4    advertisers may experience." Bish Ex. 5 at 5-6. Thus, even assuming that Plaintiff's anecdotal

5    experiments had reliably identified a significant volume of invalid click activity for the test ads

6    (which they do not), that would say nothing about the rate of invalid clicks across the AdWords

7    platform, and it would do nothing to turn Google's generalized statements about its filters into

8    deceptions capable of sustaining a claim under the UCL or FAL.

9        **Third-Party Articles.** Plaintiff's other tactic for attacking Google's statements is equally

10   contrary to this Court's ruling. In dismissing the SAC, the Court rejected Plaintiff's reliance on

11   an article from the *Atlantic* (among other third party articles, *see* SAC ¶¶ 37-42, 47 & nn.8-14,

12   16-17) about the frequency of fraud in online advertising. The Court explained that such articles

13   were "unpersuasive" because they do not address "the efficacy of Google's filters," and, if

14   anything, they actually "undermine Singh's claims that he was not aware of the possibility that

15   the rate of click fraud might exceed 10 percent." MTD Order at 11. Plaintiff does not

16   meaningfully respond to that holding. The TAC continues to reference the same articles this

17   Court has already found wanting (TAC ¶¶ 37-43), while adding some references (mostly in

18   footnotes) to other similar ones (TAC ¶¶ 52-62). These allegations cannot save Plaintiff's claims.

19       Like the original *Atlantic* article, most of the articles cited in the TAC offer only general

20   estimates about the prevalence of click fraud across the Internet. *See, e.g.*, TAC ¶¶ 37-42, 48 &

21   nn.9-22, 24-25. Even if credited, these articles simply suggest that click fraud is a problem in the

22   online advertising industry, and that bots are often used in connection with such schemes, which

23   is not disputed. Articles like these do not in any way undermine Google's public statements,

24   which accept the premise that click fraud can occur, and explain the efforts that Google makes to

25   address the problem. As this Court has already recognized, such articles say nothing about the

26   actual incidence of undetected click fraud on the AdWords platform and do nothing to state a

27   viable misrepresentation claim.

28

1    Insofar as a few of the articles cited in the TAC make some reference to AdWords, they

2    still do not support Plaintiff's claims. One article claims that Google failed to shut down a

3    purported clickbot operation targeting AdWords. TAC ¶¶ 58-59. Even assuming (without any

4    basis in the article or otherwise) that this operation represented a genuine threat, the article

5    makes no claim about the "efficacy of Google's filters" in detecting click fraud (MTD Order at

6    11), whether from this bot or others. Indeed, the article says nothing at all about those filters or

7    their success in preventing advertisers from being charged for invalid clicks. It does not remotely

8    support a claim that Google's statements were false or misleading.

9    The same is true of another article, which speculates that Google uses different systems

10   to determine ad views on video ads than it uses to determine public views on YouTube videos.

11   TAC ¶¶ 53-57. It fails to consider why public views and advertising views might measure

12   different things (and have different metrics), and it speculates without any foundation that

13   Google is permitting invalid views to infect the latter metric. Beyond that, the article's musings

14   are based on a miniscule sample size (301 views), and even there it concluded that YouTube

15   actually filtered more fake advertising views than any other ad platform (TAC ¶ 53 n.26 at 5). In

16   short, this article does nothing to suggest that Google is deceiving the public when it reports

17   information about the work that its AdWords filters have done in stopping click fraud.

18   The final new article mentioned in the TAC (¶¶ 60-62) is incredible on its face. It claims

19   that 98% of clicks on AdWords ads (and similar numbers of clicks on other ad platforms) are

20   attributable to bots. This conclusion is based on a single ad placed on a single website, and the

21   article fails to describe how the authors distinguished genuine clicks from invalid clicks. This

22   methodology is facially unsound. Even if it could be taken seriously, moreover, this article's

23   conclusions would at best be anecdotal (premised as they are on just one ad), and they could not

24   support a misrepresentation claim targeting statements like Google's. This article, like the others,

25   provides no legitimate basis for Plaintiff to assert that Google is deceiving the public when it

26   provides historical information regarding the observed efficacy of its filters in catching invalid

27

28

click activity across the AdWords platform (while cautioning that these are "network figures" that say nothing about individual ads or advertisers).[9]

In short, the TAC fails to meaningfully confront the deficiencies the Court has already found in Plaintiff's theory. Because the TAC offers no plausible allegations that Google's statements at issue were false or misleading, Plaintiff's claims fail to meet the requirements of Rule 9(b) and should be dismissed without further leave to amend.

4. **Plaintiff Could Not Have Reasonably Relied On Google's Statements**

Plaintiff's misrepresentation claims fail for another reason: the TAC does not plausibly allege "actual and reasonable reliance on the allegedly untrue or misleading statements." *Rosado v. eBay, Inc.*, 53 F. Supp. 3d 1256, 1264-65 (N.D. Cal. 2014) (UCL); *accord Williamson*, 2012 U.S. Dist. LEXIS 58639, at *21-22 (same for FAL). While the Court did not need to address reliance in its prior ruling, it provides an independent basis for dismissing the TAC.

For one thing, Google's statements themselves defeat any reasonable reliance. As discussed above (*supra* Section III.B.1-2 & n.7), the 10% and "vast majority" statements merely provide an "average" about Google's historical experience in using its filters to detect invalid clicks across the AdWords platform. Bish Decl. Ex. 3. And Google goes out of its way to explain that "***these network figures do not have any bearing on what individual advertisers may experience***, and you should refer to your invalid clicks report for that data." Bish Decl. Ex. 5 at 5-6 (emphasis added). Google's disclaimers underscore that its statements were never meant to be understood as saying anything about undetected invalid click activity that might occur in connection with a given advertiser or campaign. Given that, Plaintiff could not reasonably have relied on those statements to believe that Google would catch all instances of click fraud (or any given quantum of invalid clicks) that might affect his accounts or ads.

---

[9] Beyond all that, even assuming they spoke to the issue relevant to this case, these articles, which were published between 2010 and 2014, suffer from the same problem that the Court already identified in regard to the *Atlantic* article: they would actually "undermine Singh's claims that he was not aware of the possibility that the rate of click fraud might exceed 10 percent." MTD Order at 11.

Beyond that, the express terms of the governing AdWords Agreement further rule out any claim of justifiable reliance on Google's extra-contractual statements. As this Court has observed, the Agreement expressly "acknowledges the existence of click fraud and the possibility that an advertiser would be charged for fraudulent clicks." MTD Order at 6; *see* TAC Ex. A § 7 ("third parties may generate impressions or clicks on [Plaintiff's] Ads for prohibited or improper purposes"). The Agreement also includes clear disclaimer and integration provisions, which disavow "ANY GUARANTEE IN CONNECTION WITH THE PROGRAMS OR PROGRAM RESULTS" (TAC Ex. A § 8), and explain that the contractual terms themselves "are the parties' entire agreement relating to its subject and supersede any prior or contemporaneous agreements on that subject" (*id*. § 12(c)). As a matter of law, these provisions foreclose Plaintiff from asserting that he reasonably relied on statements outside the Agreement. *Cf*. MTD Order at 6 (applying the Agreement's integration clause).

*Woods v. Google* is directly on point. Applying these same provisions of the AdWords Agreement, Judge Fogel dismissed a nearly identical claim premised on Google's extra-contractual statements about invalid clicks because "Woods does not explain how Google's use of the AdWords Help Center to explain its program to advertisers prevented him from understanding the clear language in the Agreement excluding any reliance on extraneous statements or promises." *Woods v. Google Inc.*, 2011 U.S. Dist. LEXIS 88795, at *26 (N.D. Cal. Aug. 10, 2011); *cf. Janda v. T-Mobile, USA, Inc.*, 2009 U.S. Dist. LEXIS 24395, at *26-28 (N.D. Cal. Mar. 13, 2009) (dismissing fraud claim where defendant made unambiguous disclosures in service agreements), *aff'd*, 378 F. App'x 705 (9th Cir. 2010). The same is true here. Given the language of the contract, no reasonable person could have relied on Google's help center pages as assuring that he would be protected from all or nearly all invalid clicks. Insofar as Plaintiff claims to have done so, such reliance is unreasonable and cannot give rise to a misrepresentation claim under the UCL or FAL.

## C.    The TAC Fails to Save Plaintiff's Unfairness Claim

Plaintiff's passing reference to the UCL's unfairness prong does not state a claim. The TAC does not address the deficiencies that led the Court to dismiss this same claim in the SAC.

1   As before, what little Plaintiff says about unfairness merely duplicates his core misrepresentation

2   theory. TAC ¶ 142 (alleging that Plaintiff was "not informed that Google's filters do not catch a

3   vast majority of invalid and fraudulent clicks, that invalid and fraudulent clicks account for far

4   more than 10% of all clicks on AdWords ads"). That theory fails for all the reasons discussed

5   above. MTD Order at 8 (dismissing unfairness claim because "there is no factual support for

6   Plaintiff's assertion that Google misrepresented the likelihood that customers would actually

7   incur charges for a significant volume of invalid clicks").

8          Beyond that, the Court concluded that Plaintiff had not plausibly alleged "substantive

9   unfairness" under the UCL because "Google discloses the risk of click fraud in the Agreement

10  and elsewhere, and provides a process that allows advertisers to receive compensation for

11  charges related to invalid clicks." *Id.* (citing *Davis*, 691 F.3d at 1169-70). In that regard, the

12  Court expressed "concern[] that Singh ignores the claims process detailed in the Agreement" and

13  made clear that "Plaintiff's conclusory allegations that the claims process is illusory are

14  insufficient." *Id*. But Plaintiff has not even tried to fix these problems. The one-paragraph

15  discussion of unfairness in the TAC is virtually identical to the allegations in the SAC. *Compare*

16  TAC ¶ 142, *with* SAC ¶ 118. And other than a halfhearted footnote,[10] Plaintiff offers no new

17  factual allegations in support of his conclusory assertion that Google's claims process is

18  "illusory." *Compare* TAC ¶¶ 115-124, *with* SAC ¶¶ 77-86. Those allegations remain insufficient.

19         **D.      Plaintiff Waived All Claims Arising From Charges For Allegedly Invalid**

20         **        Clicks That He Failed To Submit to Google Through The Claims Process**

21         Finally, Plaintiff's claims are precluded by the AdWords Agreement. Under Section 7 of

22  that agreement, a condition precedent to any claim "relating to" AdWords program charges is

23  that the advertiser must have submitted the charge to Google within 60 days of the relevant

24

---

25  [10] In that footnote (TAC ¶ 123 n.52), Plaintiff cryptically refers to two additional instances in
    which he supposedly contacted Google about "suspicious clicks" on his ads. But, as with the
26  similar allegations in the SAC (¶¶ 115-123), Plaintiff does not elaborate on these assertions. He
    does not explain what issues he raised, does not allege that Google failed to investigate his
27  concerns, and (perhaps most tellingly) does not allege Google declined to offer him ad credits. In
    short, this footnote does not come close to providing the "additional factual allegations" that the
28  Court required. Instead, it just offers more of what the Court has already rejected.

1  invoice. TAC Ex. A § 7. Under this provision, Plaintiff waived claims for any charges that he

2  failed to bring to Google's attention using this claim process. While the Court did not need to

3  address this argument in dismissing the SAC (*see* MTD Order at 4-5), Section 7 remains an

4  independent bar to the claims asserted in this case.

5       Although Plaintiff's claims run from June 2012 to June 2016 (a period covering 48

6  monthly invoices for each of Plaintiff's accounts), the TAC identifies only three instances in

7  which Plaintiff supposedly brought "suspicious clicks" to Google's attention. TAC ¶¶ 123-124 &

8  n.52. Those sketchy allegations do not allow him to escape the contractual waiver. For one thing,

9  while Plaintiff was clearly on notice of Google's arguments on this point (MTD Order at 4), the

10  TAC still fails to allege that Plaintiff did what Section 7 requires: made a timely claim for

11  advertising credits. The TAC offers not a single fact to suggest that Plaintiff brought disputed

12  *charges* to Google based on what he believed to be *invalid or fraudulent* clicks—much less that

13  he did so within 60 days of the relevant invoice. Indeed, the idea that he did so is at odds with

14  what Plaintiff says elsewhere in the TAC. Plaintiff alleges that it was not until "early 2016" that

15  he "began to suspect his GDN-based PPC advertisements were being fraudulently manipulated

16  by third-party publishers/website owners." TAC ¶ 70. But the occasions on which Plaintiff says

17  he contacted Google regarding "suspicious clicks" all occurred before that (in May 2015, August

18  2013, and January 2010). TAC ¶ 123 & n.52. By Plaintiff's own account then, his

19  communications with Google could not have related to his subsequent concerns about click

20  fraud—and those communications cannot help him avoid the waiver as to the claims in this case.

21       In any event, even if one or more of these instances did satisfy Section 7, there is no basis

22  for concluding that Plaintiff brought any other charges—including those for the overwhelming

23  majority of charges at issue in this case—to Google's attention via the claims process. Instead,

24  with respect to all those charges, Plaintiff now seeks to bypass the contractually mandated

25  mechanism for addressing potentially invalid clicks. That is not permissible. The contractual

26  waiver applies to all, or nearly all, of the charges at issue in this case, and any claims based on

27  such charges should be dismissed.

28

1    This Court's ruling in *Free Range Content, Inc. v. Google Inc.*, 2016 U.S. Dist. LEXIS

2    64365 (N.D. Cal. May 13, 2016), is on point. That case involved a similar provision in Google's

3    AdSense Agreement under which "a publisher waives any payment-related claim by failing to

4    dispute the payment or withholding within 30 days." *Id*. at *35. The Court dismissed all claims

5    that the relevant plaintiffs failed to submit to Google within the 30-day time period provided by

6    the parties' agreement. *Id*. at *39-40. The same result is warranted here.

7    Plaintiff cannot escape this result by alleging that Google's claims process is "illusory."

8    Plaintiff made the same allegation in the SAC, and the Court rejected it as "conclusory" and

9    "insufficient," instructing Plaintiff that he would need to "provide additional factual allegations"

10   if he wanted to rely on such a theory. MTD Order at 8. The TAC fails to do anything like that.

11   The allegations offered in support of Plaintiff's story (TAC ¶¶ 115-124) are virtually identical to

12   those in the SAC. The only new allegations come in a footnote referencing two occasions where

13   Plaintiff says he reported "suspicious clicks" (without explaining what that means) and Google

14   found that the clicks seemed normal. TAC ¶ 123 & n.52. As discussed above (*supra* n.10), these

15   allegations are just as vague and unhelpful as the ones the Court has found lacking. Obviously,

16   the mere fact that Google sometimes does not find evidence of click fraud in response to

17   advertisers' claims does not suggest that the process is illusory. Not every claim is valid and not

18   every disputed charge is the result of click fraud or improper behavior. Plaintiff certainly does

19   not allege that Google failed to investigate in response to any of his requests or that Google ever

20   refused to issue ad credits in response to a claim that it knew was valid. *Cf. Feldman v. Google

21   Inc.*, 513 F. Supp. 2d 229, 243 (E.D. Pa. 2007) (upholding and enforcing 60-day claim period in

22   AdWords Agreement). Without that, Plaintiff still has not come close to offering a plausible

23   allegation that Google's process is illusory.

24   **IV.    CONCLUSION**

25   Because Plaintiff has not addressed the deficiencies this Court already identified, and for

26   the other reasons described above, the TAC should be dismissed with prejudice.

27

28

1   Dated:  August 18, 2017              Respectfully submitted,

2                                  WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:   s/  Brian M. Willen
           Brian M. Willen

*Attorneys for Defendant
Google Inc.*