UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GURMINDER SINGH,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>GOOGLE LLC,<br><br>　　　　Defendant. | Case No. 16-cv-03734-BLF<br><br>**ORDER GRANTING IN PART WITH LEAVE TO AMEND AND DENYING IN PART GOOGLE'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**<br><br>[Re: ECF 68] |

Defendant Google LLC ("Google") has raised another challenge to Plaintiff Gurminder Singh's ("Singh") pleadings in this putative class action—this time through a motion to dismiss the Third Amended Complaint ("TAC"). *See* ECF 68 ("Mot."). This suit arises from Google's conduct with respect to "pay-per-click" advertisements on its online advertising platform, AdWords. Singh, a small business owner, signed up for AdWords in January 2008 and now manages three AdWords accounts. *See* TAC ¶¶ 11, 14, 68-69, ECF 65. On behalf of himself and others similarly situated, Singh alleges that Google makes false and misleading statements to potential advertisers concerning the extent of invalid or fraudulent clicks on the AdWords platform, and then ultimately charges its advertisers for such clicks that are not generated by real users at a much higher rate than advertisers were led to believe. *Id*. ¶¶ 2-3, 9.

On June 2, 2017, this Court granted Google's motion to dismiss Singh's Second Amended Complaint ("SAC") with leave to amend on a number of grounds, including Singh's failure to plausibly allege that Google's challenged statements were false or misleading. *See* ECF 64 ("Prior

Order"). Singh has now dropped two of his claims against Google, and the TAC alleges two causes of action for: (1) violations of California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; and (2) violations of California's false advertising law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq. See* TAC ¶¶ 132-155. Google moved to dismiss the TAC, and the Court heard argument on November 30, 2017. At the hearing, the Court expressed its concerns regarding Singh's failure to allege standing under either the UCL or FAL, as the TAC does not allege that Singh lost money or property as a result of Google's conduct. After the Court expressed willingness to permit another amendment to the pleadings, Google urged the Court to revisit the reliance issue which Google argued could resolve the case as a matter of law.

The Court has considered the parties' arguments presented in their briefing and at the hearing, as well as the relevant law. For the reasons that follow, the Court GRANTS IN PART WITH LEAVE TO AMEND and DENIES IN PART Google's motion to dismiss in order to provide Singh with an opportunity to allege standing.

## I. BACKGROUND

The factual background of this case is familiar to the parties and the Court and is set forth in this Court's order granting Google's motion to dismiss the SAC. *See* Prior Order at 2-3. For purposes of this motion, the Court considers Singh's additions to the TAC, which he summarizes in his opposition to Google's motion to dismiss. *See* Opp'n at 3-9, ECF 76. Singh himself admits that "many of the factual allegations remain consistent" between the SAC and TAC. *Id.* at 3. This includes the various statements that Singh challenges as false or misleading such as Google's representation on its website that "invalid [or fraudulent] clicks account for less than 10% of all clicks on AdWords ads." TAC ¶¶ 4, 6-7, 135, 142.[1] When the Court dismissed the SAC with leave to amend, it pointed to specific deficiencies for Singh to address in order to proceed in this action. *See generally* Prior Order. As discussed further below, the vast majority of Singh's supplemental allegations are not relevant to the previous deficiencies identified by the Court. However, the Court's Prior Order did not reach Google's arguments that Singh failed to allege

---

[1] The Court repeats the factual allegations that remain consistent with the SAC where necessary in the analysis section below.

2

standing and reliance. *Id*.

At the outset, the TAC doubles down on allegations regarding the pervasiveness of click-fraud in the online advertising industry as a whole. *See* TAC ¶¶ 37-39, 41-42, 48. Singh concedes that these allegations "do not directly implicate Google" but he provides them to support his contention that not even AdWords is safe from click-fraud. *See* Opp'n at 4. The TAC also provides articles and published research studies that "expose" the failure of AdWords to adequately filter out invalid clicks. TAC ¶¶ 40, 42, 53, 55, 58, 59, 60-62, 87, 102-104, 105 and nn. 16, 19, 39. This Court previously rejected Singh's reliance on similar third party articles, including an article from the *Atlantic*, holding that these sources do not speak to the efficacy of Google's filters and actually "undermine Singh's claims that he was not aware of the possibility that the rate of click fraud might exceed 10 percent, as he alleges he believed." Prior Order at 11.

Singh further admits that not all of his newly cited research explicitly involved AdWords, such as a 2014 study from the College of William and Mary and George Mason University which found that over 75% of the clicks in their research samples should have been deemed "invalid." *Id*. ¶¶ 102-104. This study that allegedly demonstrated the flaws in click-fraud detection, was conducted on a "major ad network," which Singh alleges upon information and belief is Google AdWords. *Id*. ¶ 104 n. 45. This sole allegation is not sufficient to plausibly allege that the study involved AdWords. In sum, the TAC has supplemented allegations regarding the pervasiveness of click fraud, although there are no factual allegations applicable to Singh's personal experience with Google, or even facts directly applicable to the efficacy of Google's click-fraud filters at all.

Despite this Court's severe skepticism of Singh's own experiment in the SAC, the TAC includes new allegations from additional "tests" that Singh conducted on the AdWords Platform which he asserts are similar to those performed by the third-party researchers discussed above. *Id*. ¶¶ 18, 64, 76, 79-94, 99, 109-114. Singh's experiments purport to demonstrate that Google does not sift out a vast majority of invalid clicks, in contrast to Google's claim that "[o]n average, invalid clicks account for less than 10% of all clicks on AdWords ads." *Id*.; *see also* Opp'n at 7-8. The Court has not departed from its previous determination that Singh's personal experiments are "utterly implausible and would not be admissible in any form." Prior Order at 11. These

3

experiments are not scientific, regardless of Singh's personal knowledge and experience with AdWords. Moreover, the additional experiments do not speak to whether Singh has standing to challenge Google's alleged conduct, or whether Singh could have reasonably relied on Google's statements, which are the two arguments raised by Google addressed in this Order.[2]

Importantly, the TAC does not add any allegedly misleading statements by Google for the Court to evaluate, nor does it address whether Singh was personally charged for invalid clicks.

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A cause of action for fraud is further subject to the heightened pleading requirements of Rule 9(b), and the party alleging fraud "must state with particularity the circumstances constituting

---

[2] At first, the TAC also added allegations that Singh contacted Google's AdWords Support Team via email and telephone on numerous occasions between 2010 and 2015 regarding "suspicious clicks" on his AdWords accounts, but Google responded that it found no "evidence suggesting that invalid clicks have been charged to [Singh's] accounts," and the clicks "appear[ed] to fit a normal pattern of user behavior." TAC ¶¶ 123-124 and nn. 52-53. After briefing on the motion to dismiss was completed, Singh filed a notice of errata withdrawing these allegations from the TAC. *See* ECF 83.

4

fraud or mistake." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Rule 9(b) requires a plaintiff to be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotation marks and citation omitted). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). The plaintiff not only must set forth more than the neutral facts necessary to identify the transaction but also must explain why the statement or omission complained of was false or misleading. *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994).

On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). However, under the "incorporation by reference" doctrine, the Court also may consider documents which are referenced extensively in the complaint and which are accepted by all parties as authentic. *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999), *abrogated on other grounds by S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008).

If the Court concludes that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule15...[is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir.2000) (en banc) (internal quotation marks and citation omitted). Nonetheless, a district court may deny leave to amend a complaint due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment,[and] futility of amendment." *See Leadsinger, Inc. v. BMG Music Publ'g,* 512 F.3d 522, 532 (9th Cir. 2008).

## III. DISCUSSION

### A. Standing

Google's primary argument is that Singh lacks standing to assert claims under the UCL and FAL because Singh does not allege that he was ever charged for invalid clicks. *See* Mot. at 9-10. Singh argues that under applicable law, he has sufficiently alleged plausible facts that he has sustained an injury resulting from Google's alleged misconduct. Opp'n at 10-13. The Court finds that the standing argument is dispositive of Google's motion to dismiss, and requires that Singh amend his allegations in order to move forward.

In addition to identifying an unlawful, unfair or fraudulent business act or practice under one of the California UCL's prongs or the FAL, a plaintiff must allege that he or she has suffered (1) economic injury (2) as a result of the challenged practice. *See Kwikset Corp. v. Sup.Ct.,* 51 Cal.4th 310, 323 (2011). Specifically, the plaintiff must allege that he or she "suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. Standing under the UCL is therefore "substantially narrower" than standing under Article III of the Constitution. *Wright v. Gen. Motors Acceptance Corp.*, 545 F. App'x 686, 688 (9th Cir. 2013). Thus, Singh must allege that he suffered an economic injury as a result of (i.e. caused by) Google's allegedly "unfair business practice or false advertising that is the gravamen of the claim." *Kwikset*, 51 Cal.4th at 322.

Although this Court's Prior Order dismissed the SAC on alternate grounds and did not analyze the standing issue, the Court indicated that whether Singh had standing under the UCL was not clear. *See* Prior Order at 6 n.2. The Court further found that Singh did not adequately allege in the SAC "that he was ever charged for invalid clicks." *Id*. at 11. Without a plausible allegation in the TAC that Singh was actually charged for invalid or fraudulent clicks, Google argues that there is no connection between Google's purported unfair or deceptive conduct and any injury to Singh. *See* Mot. at 9. The Court finds that the TAC does not contain any factual allegations regarding Singh's own experience paying for invalid clicks, and thus the TAC does not allege that Singh suffered an economic injury as a result of Google's conduct sufficient to confer

standing under the UCL and FAL.[3]

Singh argues that Google's interpretation of the law inserts an "artificial requirement" into the "lost money or property" requirement for standing under the UCL or FAL. *See* Opp'n at 10. The Court disagrees with Singh's interpretation of California Supreme Court and Ninth Circuit precedent as applied to this case. Singh concedes that under *Kwikset*, he must allege that he suffered "some form of economic injury" as a result of his AdWords-related dealings with Google. *Id*. He further argues that plaintiffs in a false advertising case meet this requirement so long as they allege that, in reliance on a misrepresentation, they "paid more for [a product] than they otherwise would have paid, or bought it when they otherwise would not have done so." *Id*. (citing *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 n.3 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013)).

Singh's allegations in the TAC are difficult to square with the standing analysis applied to consumer products cases. In *Hinojos*, for example, the plaintiff purchased apparel and luggage at a Kohl's department store after relying on deceptive advertisements that indicated the items were being sold at "reduced" prices when in reality they were routinely sold by Kohl's at the advertised sale prices. *Id*. at 1102. The plaintiff alleged that he would not have purchased the products from Kohl's in the absence of the misrepresentations. *Id*. Similarly, the California Supreme Court in *Kwikset* addressed claims that Kwikset falsely marketed and sold locksets labeled as "Made in U.S.A." that actually contained foreign-made parts or involved foreign manufacture. 51 Cal. 4th at 317. The consumers alleged that they would not have bought the locksets had they known the label was false. *Id*. at 316-17.

Not only is Singh's attempt to cast the facts of this case as one for the purchase of consumer products unavailing, Singh has also mischaracterized his own allegations underlying his claims. Singh is a small business owner who signed up for AdWords, a free service, in order to advertise on the platform. TAC ¶¶ 11-14. AdWords is not a product that Google offered to Singh for purchase. Rather, through a business arrangement, Google agreed to display Singh's ads on

---

[3] As stated at the hearing, Singh could presumably derive factual allegations of this nature from his AdWords billing reports to show that he paid for a certain percentage of invalid clicks.

7

the Internet, and Singh agreed to pay Google an amount based on the number of times an Internet user clicks on his advertisements. TAC ¶¶ 1, 11-12. This is distinguishable from cases where a product is offered to a consumer for purchase, and the consumer is harmed "*by the purchase itself*, not by any contingency that might happen after the purchase." *McCoy v. Nestle USA, Inc.*, 173 F. Supp. 3d 954, 964 (N.D. Cal. 2016) (emphasis in original).

Even if Singh's allegations could be cast in terms of a consumer product, the product he paid for would be a bill for clicks on his advertisements—a certain percentage of which might be invalid. Clearly, if Google charges an advertiser only for valid clicks, then there is no injury resulting from Google's alleged misrepresentations. Moreover, at the pleading stage, it is fair to draw the inference that a reasonable consumer relying on Google's representation that "invalid clicks account for less than 10% of all clicks on AdWords ads," would use AdWords with the understanding that invalid or fraudulent clicks accounted for just that—less than 10% of all clicks. The Court can even draw an inference from Google's representation that Google's filters catch the "vast majority of invalid clicks," that 95% of clicks charged to an advertiser will be valid. Therefore, if an advertiser paid for fraudulent clicks at a rate below 10% or even 5% of their overall clicks, there would be no injury.[4] The glaring omission from the TAC is any allegation that Singh actually paid for invalid or fraudulent clicks at a rate above what was advertised. Singh's conclusory allegation, without facts to support it, that he and class members "have been charged for, and subsequently have paid for, invalid and/or fraudulent clicks on the Google AdWords platform" is insufficient under *Twombly* and *Iqbal*. TAC ¶ 9.[5]

Thus, even fitting this case into the consumer products framework on which Singh relies, it does not undermine *Hinojos* and *Kwikset* to require Singh to show that he was actually charged for fraudulent clicks. If 95% or more of the clicks that Singh was charged for were valid, then he got

---

[4] As stated at the hearing, the standing analysis presents a related issue that all roads under Singh's UCL and FAL theory may lead to a guarantee of a certain invalid clicks rate, which Google expressly disclaims in Section 8 of the AdWords Agreement, discussed below.

[5] The Court also need not credit Singh's conclusory allegations that he "lost money or property" as a result of Google's actions or inactions, or that he "expended money on advertising with Google" that he would not otherwise have spent. TAC ¶¶ 134, 141.

8

exactly what he paid for.[6] In contrast, the purchasers of chocolate products in *McCoy* were damaged from the purchase itself because they "did not wish to support a supply chain that included severe labor abuses." 173 F. Supp. 3d at 964. Singh's alleged harm does not stem from his use of the AdWords service, but rather comes from allegedly being charged for invalid or fraudulent clicks due to Google's failure to filter them out. Singh challenges Google's click fraud detection and prevention efforts, not the nature or quality of the AdWords program. *See* Reply at 2, ECF 79. Because the misconduct alleged is that Google charged its advertisers for more invalid clicks than it represented, the injury must necessarily be that Singh was charged for invalid clicks at a rate exceeding those representations. Yet the TAC does not allege that Singh paid for even a single invalid or fraudulent click.

Singh is also unable to meaningfully distinguish the still-binding authority cited by Google holding that standing is not adequately alleged when the injury is conjectural or hypothetical. In *Birdsong v. Apple*, consumers who bought iPods alleged that the devices had an inherent risk of hearing loss which caused iPods to be worth less than what consumers paid for them. 590 F.3d 955, 961 (9th Cir. 2009). The Ninth Circuit held that the consumers lacked standing under the UCL because the alleged economic harm was merely a "hypothetical risk of hearing loss" to other consumers who may or may not choose to use their iPods in a risky manner. *Id.* Similarly, the Court finds that the TAC alleges at most a hypothetical risk that some AdWords advertisers pay for fraudulent clicks at a higher rate than Google represents in light of alleged defects in Google's click fraud detection and prevention system.

The research articles that Singh has cited to in lieu of factual allegations in the TAC do not make it plausible that Singh or other class members actually paid for any invalid clicks. And even if the articles did somehow constitute factual allegations that putative class members were charged for invalid clicks on AdWords, the class experience cannot serve as a substitute for Singh's own standing requirements, including injury in fact. *See Warth v. Seldin,* 422 U.S. 490, 501 (1975)

---

[6] The Court assumes, drawing all inferences in favor of Singh, that an advertiser could decide it was acceptable to pay for invalid clicks at a rate of up to 5% based on Google's representation that it filters out the "vast majority of invalid clicks." TAC ¶¶ 3, 6.

9

("[T]he plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants.")

Rather than point to any allegations in the TAC, Singh effectively concedes that he has not alleged that any of his accounts were actually charged for any invalid clicks. *See* Opp'n at 12. Rather, he calls Google's argument—and the Court's previous guidance—"contrived," because standing is adequately alleged so long as Singh states that would not have spent as much money on AdWords but for Google's false advertising regarding click fraud detection. *Id*. According to Singh, he and the class members have standing simply because they used AdWords at all after relying upon such representations, "regardless of whether [Singh] was actually ever charged for invalid clicks." *Id*. But this argument is based on Singh's flawed analogy of the AdWords service to a consumer product. Singh did not pay for "the AdWords program," as he suggests, he paid Google for *clicks* on his online ads. TAC ¶¶ 1-2, 5 (alleging that Google represents that "[s]igning up for Google AdWords is free. You only pay when someone clicks your ads to visit your website, or calls you.") Until Singh alleges that he lost money or property as a result of Google's alleged misrepresentations, Singh lacks standing to assert claims under the UCL or FAL.

Because this is the first time that the Court has explicitly analyzed the standing issue, the interests of justice support permitting Singh to amend in order to allege that he lost money or property—i.e. that he was charged for invalid clicks—as a result of Google's alleged misconduct. Fed. R. Civ. P. 15(a). Accordingly, Google's motion to dismiss the TAC for lack of standing is GRANTED WITH LEAVE TO AMEND.

**B.     Reliance**

Aside from standing, Google moves to dismiss the TAC for failure to state a claim under the UCL or FAL, arguing that (1) Singh has not adequately alleged that Google's statements were false or misleading; (2) Singh has not plausibly alleged that he reasonably relied on Google's statements; and (3) Singh's claims under the unfairness prong of the UCL remain deficient. *See* Mot. at 10-21. Because the Court grants Google's motion to dismiss for lack of standing, it need not reach these arguments. However, Google urged the Court at the hearing to analyze its dispositive reliance argument before permitting further amendment of the pleadings. Google

argues that dismissal of the TAC without leave to amend is appropriate on the independent grounds that Singh could not have reasonably relied on Google's challenged statements as a matter of law. *See* Mot. at 19-20. As with standing, the Court did not reach reliance in its Prior Order dismissing the SAC. The Court now finds that Singh has plausibly alleged reasonable reliance on Google's alleged misrepresentations. Google's motion to dismiss the TAC on these grounds is DENIED.

In addition to alleging that the challenged statements at issue are false, "a class representative proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements." *In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009). "Reliance is proved by showing that the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct. A plaintiff may establish that the defendant's misrepresentation is an immediate cause of the plaintiff's conduct by showing that in its absence the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct." *Id.* at 326 (citation and internal quotation marks omitted).

Reasonableness of reliance is ordinarily a question of fact. *Guido v. Koopman,* 1 Cal. App. 4th 837, 843 (1991). However, under California law, "whether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts." *Id.*; *see also In re Facebook PPC Advertising Litig.,* Nos. 5:09–cv–03043–JF, 5:09–cv–03519–JF, 5:09–cv–03430–JF, 2010 WL 5174021, at *6 (N.D. Cal. Dec.15, 2010) (holding that contractual disclaimers regarding advertising were unambiguous, and therefore requiring plaintiffs to show at the pleading stage "that they were reasonable in relying on the representations in the Help Center even in light of these disclaimers.").

In the TAC, Singh challenges that the following representations, appearing on Google's AdWords Help Center website, are deceptive and misleading:

- "The vast majority of all invalid clicks on AdWords ads are caught by our online filters. These filters are constantly being updated and react to a wide variety of traffic patterns and indications of click fraud attacks."

11

- "[I]nvalid [or fraudulent] clicks account for less than 10% of all clicks on AdWords ads."

- "When Google determines that clicks are invalid, we try to automatically filter them from your reports and payments so that you're not charged for those clicks."

- "[Y]ou only pay for results … [s]igning up for Google AdWords is free. You only pay when someone clicks your ads to visit your website, or calls you. In other words, when your advertising is working."

- "The relationship between Google, advertisers, and publishers is built on trust. Advertisers rely on the relevance of our ad placement, our reporting statistics, and the quality of the clicks their ads receive. Publishers in turn count on advertiser participation, relevant ads which create a good experience for users, and an accurate and reliable source of income which contributes to the success of their websites and business. We take this trust seriously and we know that the Google advertising networks couldn't exist without it."

- "[Google has] a global team which is dedicated to staying on top of your concerns, monitoring traffic across Google's ad network, and preventing advertisers from paying for invalid traffic."

- Investigations prompted by customer inquiries are "relatively rare" and such investigations identify invalid clicks representing less than .02% of all clicks.

TAC ¶ 135. Google argues that Singh cannot plead justifiable reliance on these statements for two reasons. The Court addresses each in turn.

First, Google argues that certain statements preclude any reasonable reliance by their own terms because they appeared in a blog post on Google's website that was accompanied by disclaimers including: "It is important to understand that the network-wide invalid clicks rate is separate from an individual advertiser's invalid clicks rate," and "these network figures do not have any bearing on what individual advertisers may experience, and you should refer to your invalid clicks report for that data." Declaration of Dale R. Bish ("Bish Decl.") Exh. 5 at 5-6, ECF 47-6. Given those disclaimers, Google argues that Singh could not reasonable rely on Google's statements that it filters out the "vast majority" of invalid clicks, and invalid clicks account for "less than 10%" of all clicks. *See* Mot. at 19. The Court notes that this disclaimer argument applies to only two of the challenged statements, and does not apply with as much force to the "vast majority" representation as it does to the "less than 10%" representation. A reasonable

12

consumer could read and understand the disclaimers, and still reasonably rely on Google's representation that its filters detect the "vast majority" of invalid clicks. Singh has plausibly alleged that a reasonable consumer would expect his or her invalid clicks report to show an invalid clicks rate that is consistent with Google's representations, even if not the exact average.

Second, Google argues that the express terms of the AdWords Agreement rule out any reasonable reliance on Google's extra-contractual statements. *See* Mot. at 20. The AdWords Agreement, attached as Exhibit A to the TAC, certainly puts the advertiser on notice of the potential for click fraud. *See* ECF 65-1 § 7 ("Customer understands that third parties may generate impressions or clicks on Customer's Ads for prohibited or improper purposes"). The Agreement further includes a disclaimer that Google does not "MAKE ANY GUARANTEE IN CONNECTION WITH THE PROGRAMS OR PROGRAM RESULTS." *Id*. § 8. The express integration clause provides that the contractual terms "are the parties' entire agreement relating to its subject and supersede any prior or contemporaneous agreements on that subject." *Id*. § 12(c). Google argues that Singh, who alleges that he signed the AdWords Agreement, is precluded as a matter of law from relying on statements outside of the contract. *See* TAC ¶¶ 7, 10, 14.

Singh argues that the statements he challenges are entirely consistent with the contractual provisions in the AdWords Agreement. *See* Opp'n at 17. For example, Singh could be aware that "third parties may generate impressions or clicks" on his ads for improper purposes (i.e. click fraud occurs), but still plausibly rely on Google's representations that its filters will catch the "vast majority" of such invalid clicks. *Id*. The Court agrees with Singh that at least with respect to the representation in § 7, Singh has alleged reasonable reliance on the challenged statements. Whether reliance is reasonable in light of the disclaimer and integration clauses presents a closer call.

The parties dispute the significance of the holding in *Woods v. Google*, a case in which the court interpreted a disclaimer in Google's AdWords Agreement providing that "[n]o statements or promises have been relied upon in entering into this Agreement except as expressly set forth herein," and that "any conflicting or additional terms contained in any other documents…are void." No. 05:11-CV-1263-JF, 2011 WL 3501403, at \*8 (N.D. Cal. Aug. 10, 2011). Judge Fogel

dismissed Woods' UCL and FAL claims for failure to allege reliance because Woods "does not explain how Google's use of the AdWords Help Center to explain its program to advertisers prevented him from understanding the clear language in the Agreement excluding any reliance on extraneous statements or promises." *Id*. at *9. Judge Fogel framed the issue before the Court as "whether a reasonable jury could find that [the plaintiff] was reasonable in relying upon the extraneous statements notwithstanding an unambiguous disclaimer." *Id*.

There are two significant differences between the circumstances presented here and those in *Woods* that permit this Court to reach a different conclusion from Judge Fogel. First, the plaintiff in *Woods* was a practicing attorney, and Judge Fogel emphasized that his decision on reliance was informed by "Woods' sophistication as an attorney." *Id*. More importantly, the plaintiff in *Woods* also failed to identify any fraudulent or misleading statements with particularity. Instead, Woods "merely quote[d] language from the Agreement, along with two additional screenshots" of images from the AdWords sign-up screen. *Id*. at *8. Judge Fogel held that the list failed to allege fraud with particularity, because Woods did not explain why the listed statements provide a basis for a fraud claim separate from his breach of contract claim. *Id*. Along with Woods' sophistication as an attorney, Judge Fogel's reliance determination was also informed by "the complaint's lack of particularity with respect to the statements that were alleged to have induced his reliance." *Id*. at 9. Neither of these circumstances are present here, as Singh is clear in the TAC which statements on Google's website induced his reliance.

The Court further disagrees with Google's representation in its briefing and at oral argument that Singh cannot plead justifiable reliance "as a matter of law." *See* Mot. at 20. Judge Fogel made clear in *Woods* that the reliance determination, even in the face of unambiguous contractual language, is case-specific. No. 05:11-CV-1263-JF, 2011 WL 3501403, at *8; *see also In re Facebook PPC Advert. Litig.*, No. 5:09-CV-03043-JF, 2010 WL 5174021, at *9 (N.D. Cal. Dec. 15, 2010) (holding that under certain circumstances, "Facebook could be liable for misrepresentation, notwithstanding the contractual disclaimers."). The Court finds that under the circumstances in *this* case, a reasonable jury could find that Singh was reasonable in relying on Google's statements notwithstanding the "no guarantee" provision and the integration clause in

14

the AdWords Agreement. Singh has alleged that a reasonable consumer is likely to be deceived, based on Google's extra-contractual representations, into thinking that the risk of being charged for invalid clicks on AdWords was minimal. *See, e.g.*, TAC ¶ 139.

However, the Court wishes to make clear that a reasonable consumer could not view Google's extra-contractual representations as any sort of "guarantee" of a specific invalid clicks rate, which would be precluded by the express language of Section 8 of the Agreement. As such, Singh's claims against Google cannot go forward on that basis. The Court further notes that Singh's pleadings remain vulnerable to Google's attacks that the Court did not reach in this Order, such as whether the waiver provision in the AdWords Agreement bars Singh's claims, and whether Singh has adequately amended his claims to allege that the challenged statements are false or misleading under the UCL and FAL. The Court will only reach these arguments upon sufficient allegations of standing.

## IV. ORDER

For the foregoing reasons, and those discussed on the record, Google's motion to dismiss the TAC is GRANTED IN PART WITH LEAVE TO AMEND AND DENIED IN PART. Singh shall file any amended pleading **on or before April 23, 2018.** Failure to meet the deadline to file an amended complaint or failure to cure the deficiencies identified in this order will result in a dismissal of Singh's claims with prejudice.

Dated: February 20, 2018

BETH LABSON FREEMAN
United States District Judge

15