DALE R. BISH, State Bar No. 235390
SONAL MITTAL, State Bar No. 299222
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile:  (650) 565-5100
Email: dbish@wsgr.com; smittal@wsgr.com

BRIAN M. WILLEN (*admitted pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile:  (212) 999-5899
Email: bwillen@wsgr.com

*Attorneys for Defendant*
*Google LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| GURMINDER SINGH, Individually and On Behalf of Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | CASE NO.: 5:16-cv-03734-BLF<br><br>**GOOGLE LLC'S MOTION TO DISMISS PLAINTIFF'S FOURTH AMENDED COMPLAINT**<br><br>Date: Nov. 1, 2018<br>Time: 9:00 a.m.<br>Place: Courtroom 3, 5th Floor<br>Before: Hon. Beth Labson Freeman |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................ 1

STATEMENT OF ISSUES .................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 1

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ................................................. 3

    A.   The Google AdWords Program And Agreement .............................................. 3

    B.   Plaintiff's Claims And His Experience With AdWords .................................... 5

    C.   Procedural History And Prior Rulings .............................................................. 6

III.  ARGUMENT ............................................................................................................. 8

    A.   Plaintiff Lacks Standing Because He Fails To Allege That He Was Charged
         For Invalid Clicks Above Google's "Advertised" Rate .................................... 8

         1.   Third-party claims about invalid clicks on AdWords cannot establish
              Plaintiff's standing ............................................................................... 9

         2.   Plaintiff's limited allegations about his experience with invalid
              clicks fall short of this Court's requirements for standing ...................... 11

    B.   Plaintiff Fails To State A Claim Under The UCL Or FAL ................................ 13

         1.   Plaintiff's claims are premised on a purported guarantee that the
              AdWords Agreement expressly disclaims ............................................... 13

          2.   Plaintiff fails to allege that the statements at issue were deceptive .......... 14

              a)   Plaintiff distorts the meaning of the key Google statement at
                   issue ............................................................................................ 15

              b)   Plaintiff cannot rely on third party articles that do not speak
                   to the efficacy of Google's filters .............................................. 17

         3.   The 4AC Fails To State An Unfairness Claim Under The UCL .............. 18

    C.   Plaintiff Waived All Claims Based On Allegedly Invalid Clicks That He
         Failed To Submit To Google's Claims Process .................................................. 19

IV.   CONCLUSION .......................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Cullen v. Netflix, Inc.*,
    2013 U.S. Dist. LEXIS 4246 (N.D. Cal. Jan. 10, 2013),
    *aff'd*, 600 F. App'x 508 (9th Cir. 2015) ............................................................. 15

*Davis v. HSBC Bank Nev., N.A.*,
    691 F.3d 1152 (9th Cir. 2012) ............................................................... 16, 19

*Free Range Content, Inc. v. Google Inc.*,
    2016 U.S. Dist. LEXIS 64365 (N.D. Cal. May 13, 2016) ................................. 20

*In re GlenFed, Inc. Sec. Litig.*,
    42 F.3d 1541 (9th Cir. 1994) ..................................................................... 15

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) ................................................................................. 9

*Warth v. Seldin*,
    422 U.S. 490 (1975) .................................................................................. 10

*Woods v. Google Inc.*,
    2011 U.S. Dist. LEXIS 88795 (N.D. Cal. Aug. 10, 2011) ................................ 22

## RULES

Fed. R. Civ. P. 12(b)(6) .................................................................................. 1

Fed. R. Civ. P. 9(b) ....................................................................... 7, 15, 18

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on November 1, 2018 at 9:00 a.m., in the courtroom of the Honorable Beth Labson Freeman of the United States District Court for the Northern District of California, 280 South 1st Street, San Jose, Defendant Google LLC ("Google") will and hereby does move the Court for an order dismissing Plaintiff's Fourth Amended Class Action Complaint ("4AC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**STATEMENT OF ISSUES**

1.      Whether Plaintiff lacks standing under the Unfair Competition Law ("UCL") and False Advertising Law ("FAL") because he fails to allege that he paid for invalid or fraudulent clicks in excess of the rate that he claims Google advertised.

2.      Whether the 4AC fails to state a claim under the UCL or FAL because those claims are premised on a guarantee that advertisers will never experience more than 10% invalid clicks, even though Section 8 of the AdWords Agreement expressly disclaims any guarantees about the level of invalid clicks any advertiser will experience.

3.      Whether the 4AC fails to state a claim under the UCL or FAL because Plaintiff fails to plausibly allege either that Google's public statements regarding its click fraud policing efforts were false or misleading.

4.      Whether Plaintiff's unfairness claim under the UCL should be dismissed because Google discloses the risk of click fraud in the AdWords Agreement and elsewhere and provides a process that allows advertisers to receive compensation for charges related to invalid clicks.

5.      Whether Section 7 of the AdWords Agreement bars claims arising from charges for any supposedly invalid clicks that Plaintiff failed to submit through Google's internal claims process within 60 days of the relevant invoice.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      PRELIMINARY STATEMENT**

The 4AC is now Plaintiff's *fifth* attempt to state UCL and FAL claims arising from his use of Google's AdWords program. Plaintiff still fails to do so. The token efforts that Plaintiff has made in response to this Court's most recent ruling do not overcome the shortcomings the

Court has already identified, and the 4AC also suffers from several additional problems that require dismissal—this time with prejudice.

When it dismissed Plaintiff's Third Amended Complaint ("TAC"), the Court held that to establish standing under the UCL and FAL, Plaintiff would have to allege that he actually paid for invalid clicks on his AdWords account at a rate that exceeded 5-10% of overall clicks. The 4AC does not do so. Plaintiff does not allege that he ever paid for a single invalid click at any time before he filed this case. He offers nothing about the "overall" rate of invalid clicks that he was charged, whether over the time that he has been an AdWords advertiser or even for any given ad campaign or monthly invoice. Nor does Plaintiff try to draw from the discovery record in this case to make any claim about the rate of invalid clicks on his account. Instead, in response to the Court's clear ruling, Plaintiff does nothing more than allege that a third-party consulting service, using an unknown methodology applied over an 8-day period, claims to have detected more invalid clicks than Google did for just two unspecified ad campaigns. That is not remotely enough to create standing.

Plaintiff's claims also fail on the merits. *First*, Plaintiff seeks to use the UCL and FAL to do exactly what this Court has already held would be impermissible: to transform Google's general statements about its efforts to prevent invalid clicks into a legally enforceable "guarantee" that advertisers will be protected from a particular amount of invalid click activity. The crux of Plaintiff's claims in the 4AC is that he believed that Google would protect him from "the vast majority" (which he says means 90-95%) of all invalid clicks and that Google failed to do so. 4AC ¶ 117. The Court could hardly have been clearer that this was not a viable theory: "a reasonable consumer could not view Google's extra-contractual representations as any sort of 'guarantee' of a specific invalid clicks rate, which would be precluded by the express language of Section 8 of the Agreement." ECF No. 85 ("TAC Order") at 15. As a matter of law, Plaintiff's claims "cannot go forward on that basis." *Id.*

*Second*, the 4AC still does not plausibly allege that Google's public statements were actually false or misleading. There are no viable factual allegations from which the Court could conclude that Google misled the public when it said that "the vast majority of all invalid clicks

on AdWords are caught by our online filters" and that "invalid clicks account for less than 10% of all clicks on AdWords Ads." Plaintiff continues to distort the meaning of these statements and to rely on implausible speculation from third-party articles that do not address the efficacy of Google's AdWords filters in any meaningful way.

*Third*, Plaintiff still cannot state a viable claim that Google's alleged actions amount to an "unfair" business practice under the UCL. Plaintiffs allegations simply repeat ones that this Court has already found wanting.

*Finally*, Plaintiff's claims are barred by the waiver provision in the AdWords Agreement. Through that provision, Plaintiff waived any claim relating to AdWords charges that he did not submit to Google within 60 days of the relevant invoice. Plaintiff has long been on notice of this requirement, but he still does not allege that he submitted *any* relevant charges to Google within the time required—including (most significantly) any charges associated with the supposedly invalid clicks on which Plaintiff now purports establish standing to pursue his claims. Under the plain language of the Agreement, those claims are prohibited. Plaintiff cannot get around that result with half-hearted and irrelevant allegations that Google's claims process is ineffective.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Because the Court is familiar with the background of this case (TAC Order at 2-4), Google sets forth only what is most relevant to this renewed motion to dismiss.

### A.    The Google AdWords Program And Agreement

AdWords is an online advertising platform that allows advertisers to display their ads on various Google properties and other websites. 4AC ¶¶ 1, 13, 26-30. Plaintiff's claims are based on "pay-per-click" advertisements on AdWords (4AC ¶¶ 117, 132), whereby advertisers are billed for such ads only when their ad is actually clicked on and consumers are directed to the advertised website (4AC ¶¶ 1-2, 22, 24-25). As this Court has observed, "Google has undertaken various efforts in an attempt to address click fraud and limit its effect on AdWords advertisers." ECF No. 64 ("SAC Order") at 2. This includes a global team that uses an array of filtering systems that monitor for and detect instances of click fraud across the AdWords platform (*see id.*), as well as both proactive systems that detect invalid clicks before they are charged to

1    advertisers and reactive systems that allow Google to investigate possible click fraud and award

2    credits to advertisers where they may have been charged for invalid clicks (*see* Decl. of Dale R.

3    Bish ISO Mot. to Dismiss SAC (ECF No. 47-1; "Bish Decl.") Ex. 3 at 3-4).

4          The relationship between Google and advertisers is governed by the AdWords

5    Agreement, the relevant version of which is attached as Exhibit A to the 4AC.[1] Two provisions

6    of the AdWords Agreement bear directly on Plaintiff's claims. *First*, the Agreement disclaims all

7    extra-contractual assurances about the validity or quality of "clicks" advertisers may experience,

8    including the rate of invalid clicks on an advertiser's account. It does so through a broad

9    disclaimer stating that the AdWords program is "PROVIDED 'AS IS' AND AT CUSTOMER'S

10   AND ADVERTISER'S OPTION AND RISK" and that Google does not "MAKE ANY

11   GUARANTEE IN CONNECTION WITH THE PROGRAMS OR PROGRAM RESULTS."

12   4AC Ex. A § 8. The Court has held that this provision expressly precludes "any sort of

13   'guarantee' of a specific invalid clicks rate." TAC Order at 15.

14         *Second*, as this Court has explained, the AdWords Agreement "puts the advertiser on

15   notice of the potential for click fraud." *Id.* at 13. The Agreement does so by expressly warning

16   advertisers that "third parties may generate impressions or clicks on Customer's Ads for

17   prohibited or improper purposes" and by creating an internal process for addressing that issue.

18   4AC Ex. A § 7. Advertisers' contractually prescribed remedy for charges that they believe to be

19   based on invalid clicks "is to make a claim for advertising credits" within 60 days of the relevant

20   invoice (the "Claim Period"), "after which Google will issue the credits following claim

21   validation." *Id.* Under the Agreement, moreover, using this claims process is a condition

22   precedent for bringing claims based on disputed advertising charges: advertisers expressly

23   "WAIVE ALL CLAIMS RELATING TO ANY PROGRAM CHARGES" that are not submitted

24   to Google within the Claim Period. *Id.*

25

26

27

28        [1] For purposes of this motion, Google accepts Plaintiff's allegation that the February 21,
     2013 version of the AdWords Agreement is the version relevant to Plaintiff's claims.

### B.    Plaintiff's Claims And His Experience With AdWords

Plaintiff is a small business owner who has been advertising with Google AdWords for over 10 years. 4AC ¶ 15. Plaintiff accepted the AdWords Agreement when he created his AdWords account(s) and is bound by its terms. 4AC ¶¶ 10, 15. In the 4AC, Plaintiff asserts the same statutory UCL and FAL claims against Google as in previous versions of his complaint. Those claims rest on the same theory: that Google's extra-contractual statements effectively promised advertisers they would only experience a certain quantum of invalid clicks on their AdWords ads (10% or less), Plaintiff relied on those statements in using AdWords, and Google failed to deliver on that supposed promise. 4AC ¶¶ 117-119.

While Plaintiff alleges that he began to suspect some of his ads "were being fraudulently manipulated by third-party publishers/website owners" in early 2016 (*e.g.*, 4AC ¶ 16; TAC ¶ 70), the 4AC now alleges that he paid third parties who, using unknown methodologies, identified invalid clicks on his ads for the first time in early 2018. 4AC ¶¶ 71-81. According to the 4AC, one of those consultants, Method Media Intelligence ("MMI") identified 50 invalid clicks associated with Plaintiff's AdWords account. 4AC ¶¶ 75-76. The 4AC offers no other information about those clicks, including the ads on which they supposedly appeared, whether Google's filters caught them, what invalid clicks rate they represent, or whether Plaintiff actually paid for or believes he paid for any of those clicks.

Plaintiff also alleges that another third party (Oxford BioChron) analyzed, over an 8-day period, five of Plaintiff's ad campaigns and managed to detect more invalid clicks than Google's filters did on two of the five campaigns (24.18% and 26.62% compared to Google's 7.12% and 10.51%). 4AC ¶ 81. The 4AC is conspicuously silent on Oxford BioChron's findings with respect to the three other campaigns it analyzed, and the 4AC offers no other information about the ad campaigns at issue or any charges that might have been associated with those campaigns. Plaintiff certainly makes no allegation that he ever tried to use the internal claims process to bring any such charges to Google's attention within 60 days of the relevant invoice.

### C.   Procedural History And Prior Rulings

Plaintiff filed his original complaint in this action on July 1, 2016 (ECF No. 1) and an amended complaint on September 9, 2016 (ECF No. 14). Google moved to dismiss Plaintiff's amended complaint on October 24, 2016. ECF No. 32. In response, Plaintiff filed the Second Amended Complaint ("SAC") on November 23, 2016. ECF No. 44. Google moved to dismiss the SAC on January 18, 2017. ECF No. 47.

Believing that the parties should wait to begin discovery until the Court determined whether Plaintiff could state a claim (and, if so, in what form), Google moved to stay discovery while its motion to dismiss was pending. ECF No. 33. Plaintiff opposed Google's motion (ECF No. 36), and the Court ultimately accepted Plaintiff's position that discovery should proceed while Google's motions to dismiss were pending. ECF No. 41. Based on the Court's ruling, Google and Plaintiff have both produced documents and interrogatory responses, and Google took Plaintiff's deposition on November 3, 2017. Under the Court's scheduling order (which established the period for discovery), discovery closed on February 26, 2018. ECF No. 40. Plaintiff did not then, and has not subsequently, seek to extend discovery, nor did he seek to challenge any of Google's discovery responses.[2]

The Court granted Google's Motion to Dismiss the SAC on June 2, 2017. ECF No. 64. In response, Plaintiff filed the TAC on July 10, 2017. ECF No. 65. Google again moved to dismiss (ECF No. 68), and the Court again granted Google's motion, this time holding that Plaintiff had not established the standing required to assert claims under the UCL or FAL (the only two claims remaining in the case). TAC Order at 6-10. In these orders, the Court made several rulings that establish the legal principles governing this motion.

*First*, the Court has squarely held that in order to establish standing to sue under the UCL and FAL, Plaintiff must allege that he actually paid for invalid clicks—not merely that he used the AdWords service and paid money to Google in connection with his ads. TAC Order at 10.

---

[2] Similarly, the deadline for Plaintiff to seek class certification has also come and gone. Pursuant to the Court's Case Management Order, the last day to hear a class certification motion was November 30, 2017.  ECF No. 29.  Plaintiff chose neither to file such a motion nor to ask the Court to extend that deadline.

1   Moreover, "[b]ecause the misconduct alleged is that Google charged its advertisers for more

2   invalid clicks than it represented, the injury must necessarily be that Singh was charged for

3   invalid clicks at a rate exceeding those representations." *Id.* at 9. As the Court explained, "if an

4   advertiser paid for fraudulent clicks at a rate below 10% or even 5% of [his] overall clicks, there

5   would be no injury." *Id.* at 8.

6       *Second*, the Court went out of its way to observe that Plaintiff's claims would fail on the

7   merits insofar as they rest on the theory that Google somehow promised advertisers protection

8   from a particular volume of invalid clicks: "the Court wishes to make clear that a reasonable

9   consumer could not view Google's extra-contractual representations as any sort of 'guarantee' of

10  a specific invalid clicks rate, which would be precluded by the express language of Section 8 of

11  the Agreement. As such, Singh's claims against Google cannot go forward on that basis." *Id.* at

12  15; *see also id.* at 8 n.4. While the Court had no occasion to apply this rule to the claims asserted

13  in the TAC—because it dismissed them for lack of standing—it clearly stands as a warning that

14  applies directly to the 4AC.

15      *Third*, the Court has held that Plaintiff's fraud-based claims about Google's efforts to

16  combat click fraud are subject to Rule 9(b)'s requirement that Plaintiff must plead with

17  particularity why "the statement or omission complained of was false or misleading." SAC Order

18  at 9-10. In dismissing the SAC, the Court found that Plaintiff failed to satisfy that requirement

19  for any of the Google statements at issue. *Id.* at 10-11. In particular, the Court rejected Plaintiff's

20  allegations about various third party media reports regarding fraudulent activity on the Internet

21  and in the online advertising industry more specifically. *Id.* at 11; *see also* TAC Order at 3

22  (rejecting Plaintiff's effort to "double[] down on allegations regarding the pervasiveness of click-

23  fraud in the online advertising industry as a whole" and explaining that "the TAC has

24  supplemented allegations regarding the pervasiveness of click fraud, although there are no

25  factual allegations applicable to Singh's personal experience with Google, or even facts directly

26  applicable to the efficacy of Google's click-fraud filters at all").

27      *Fourth*, the Court dismissed Plaintiff's claim under the UCL's "unfair" prong. SAC

28  Order at 7-8. In doing so, the Court explained that "Google discloses the risk of click fraud in the

1   Agreement and elsewhere, and provides a process that allows advertisers to receive

2   compensation for charges related to invalid clicks." *Id.* The Court expressed concern that "Singh

3   ignores the claims process detailed in the Agreement" and held that "Plaintiff's conclusory

4   allegations that the claims process is illusory are insufficient; to rely on this theory, Plaintiff must

5   provide additional factual allegations." *Id.*

6       When it dismissed the TAC, the Court gave Plaintiff another opportunity to amend his

7   complaint, but made clear that "failure to cure the deficiencies identified in this order will result

8   in a dismissal of Singh's claims with prejudice." TAC Order at 15.

9       Plaintiff filed the 4AC on April 23, 2018. ECF No. 86. Like the TAC, the 4AC is limited

10  to two causes of action, one under the UCL and one under the FAL. These claims are virtually

11  identical, both to each other and to the prior versions of those claims in the SAC and TAC. Both

12  are premised on the theory that certain of Google's public statements about its efforts to prevent

13  click fraud were deceptive and that those statements induced Plaintiff into using AdWords. 4AC

14  ¶¶ 114, 128. In attempting to support these claims, the 4AC cites none of the material that the

15  parties produced in discovery—including Plaintiff's deposition testimony, or any of the

16  information he has access to (or could have requested) from Google. Instead, the 4AC drops any

17  claim that Google did not investigate or issue credits for suspicious clicks that Plaintiff submitted

18  through the claims process, and adds a handful of half-baked allegations about what third parties

19  have concluded about invalid clicks on several of Plaintiff's ads. None of those new allegations

20  relate to the period before Plaintiff filed this case or any of his previous complaints.

21  **III.    ARGUMENT**

22      The 4AC does not meaningfully address the deficiencies the Court has identified with

23  earlier versions of Plaintiff's complaint or other shortcomings discussed in Google's previous

24  motions to dismiss. It should be dismissed without further leave to amend.

25      **A.    Plaintiff Lacks Standing Because He Fails To Allege That He Was Charged

26      For Invalid Clicks Above Google's "Advertised" Rate**

27      In dismissing the TAC for lack of standing, the Court held that "if an advertiser paid for

28  fraudulent clicks at a rate below 10% or even 5% of their ***overall clicks***, there would be no

injury." TAC Order at 8 (emphasis added). That same problem exists under the 4AC. Plaintiff

still has not properly alleged standing to sue under the UCL, and his claims therefore should

once again be dismissed, this time with prejudice.[3]

> 1.   Third-party claims about invalid clicks on AdWords cannot establish
>       Plaintiff's standing

To establish standing under the UCL or FAL, "Singh must allege that he suffered an

economic injury as a result of (i.e. caused by) Google's allegedly 'unfair business practice or

false advertising that is the gravamen of the claim.'" TAC Order at 6 (quoting *Kwikset Corp. v.*

*Superior Court*, 51 Cal. 4th 310, 322 (2011)). The "glaring omission" that this Court identified in

holding that the TAC failed to plausibly establish standing was "any allegation that Singh

actually paid for invalid or fraudulent clicks at a rate above what was advertised." *Id.* at 8. Even

though the Court gave leave to Plaintiff to try to add such allegations—and even though the

parties have now completed discovery in this case— Plaintiff has not fixed the deficiency the

Court highlighted. Indeed, what is most striking about the 4AC is what it does not say.

- Plaintiff does not allege that at any time prior to his filing of this case (in July 2016) he *ever* paid for a single invalid click, much less that such clicks exceed the rate that he claims Google advertised.

- Plaintiff identifies not a single specific click that he was charged for that he has plausible reasons to believe was invalid.

- Plaintiff makes no allegations whatsoever about the "overall" rate of invalid clicks that he was charged for, whether in connection with his total use of AdWords or even any given AdWords account or campaign.

- Plaintiff makes no allegation that Google ever billed him for a single monthly invoice in which the rate of invalid clicks exceeded the rate that Google supposedly advertised.

---

[3] While the Court made clear that *standing* requires Plaintiff to establish that he was charged for invalid clicks at a rate greater than 10% of his overall clicks, that does not mean that Plaintiff can state a viable claim *on the merits* based on this theory.  On that point, the Court made clear that the governing AdWords Agreement expressly disclaims any guarantee that advertisers will be protected against some given rate of invalid clicks. TAC Order at 8 n.4.  Thus, "[Plaintiff's] claims ... cannot go forward" on the basis of a theory that he understood "Google's extra-contractual representations as any sort of 'guarantee' of a specific invalid clicks rate." *Id.* at 15. As discussed below, this defeats Plaintiff's claims on the merits, even if he could establish standing.

- Plaintiff does not point to a single piece of data or information made available to him in discovery suggesting that he was actually charged for invalid clicks, much less at a rate exceeding 10%.

- Despite his statements at the hearing on Google's motion to dismiss the TAC, Plaintiff does not even try to use "his AdWords billing reports to show that he paid for a certain percentage of invalid clicks" (TAC Order at 7 n.3).

These omissions are glaring. They confirm that Plaintiff cannot make the concrete allegations of standing that this Court's order required. Plaintiff is simply unable to allege that, insofar as he ever paid for an invalid click, he did so at a rate that came close to 10% (or even 5%) of his "overall clicks." TAC Order at 8. That is fatal to any assertion of standing in this case.

The handful of new allegations that the 4AC (¶¶ 71-86) offers in response to this Court's ruling do not suffice. Most of these allegations have nothing to do with Plaintiff or his AdWords account. They instead concern software companies and consultants who sell products and services to advertisers to help them analyze click activity on their ad campaigns. 4AC ¶¶ 73, 79-80, 82-86.[4] These allegations simply repeat marketing and self-promotional statements by those third parties about their products and the level of click fraud they estimate on AdWords (or specific campaigns). They do not in any way establish that Plaintiff was charged for invalid clicks, much less at an improper rate. *See infra* Part B.2.b. Indeed, the Court has already made clear that such allegations do not speak to the standing issue:

> The research articles that Singh has cited to in lieu of factual allegations in the TAC do not make it plausible that Singh or other class members actually paid for any invalid clicks. And even if the articles did somehow constitute factual allegations that putative class members were charged for invalid clicks on AdWords, the class experience cannot serve as a substitute for Singh's own standing requirements, including injury in fact.

TAC Order at 9-10. So too here: Plaintiff cannot rely on these allegations to establish standing under the UCL and FAL. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("[T]he plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants.").

---

[4] One of these allegations is not new at all, but instead repeats quotes about AdWords from a third-party article that Plaintiff included, and the Court rejected, in earlier complaints. *Compare* TAC ¶ 87 & n.39, *with* 4AC ¶ 86 & n.53; *accord* TAC Order at 9-10.

2.  <u>Plaintiff's limited allegations about his experience with invalid clicks fall short of this Court's requirements for standing</u>

In addition to allegations of the type the Court has already rejected, the 4AC adds two half-baked allegations about Plaintiff's experience with invalid clicks on his AdWords account. While at least these have something to do with Plaintiff's experience, they still fall far short of the Court's requirement that Plaintiff must plausibly allege that he was charged for invalid clicks that amount to 10% (or perhaps 5%) of the "overall" clicks on his AdWords account. TAC Order at 8.

**ClickCease.** First, Plaintiff alleges that he, in "early 2018," installed software called ClickCease to monitor his AdWords campaigns and that a third party reviewed the ClickCease data and found 50 invalid clicks on Plaintiff's ads over some unspecified period of time. 4AC ¶ 76. These allegations can be dismissed out of hand. Even assuming that the 50 clicks that Plaintiff references were actually invalid, Plaintiff does not allege that he was actually charged (or even that he *believes* he was charged) for those clicks. Plaintiff suggests he cannot do so (4AC ¶ 77), but that is not the case (*cf*. TAC Order at 7 n.3). In any event, the absence of any allegation that any of the supposedly invalid clicks identified by ClickCease resulted in charges to Plaintiff defeats any effort to establish standing on the basis of those clicks. Plaintiff cannot meet his burden of demonstrating standing by claiming that he does not know whether he was injured.

Beyond that, however, Plaintiff offers no other information whatsoever about these 50 supposedly invalid clicks, including the total number of clicks on the ads at issue or the total number of invalid clicks that Google detected on those ads. Without that information there is nothing to suggest that even if Plaintiff was charged for those 50 clicks, that would have represented any meaningful percentage of the overall clicks for which he was charged during the period. For that reason as well, Plaintiff's new allegations about ClickCease do not satisfy this Court's order or help Plaintiff establish standing.

**Oxford BioChron.** Second, Plaintiff alleges that he employed a third-party research company (Oxford BioChron) to analyze five of his ad campaigns "over an 8-day period." 4AC

¶ 81. (Plaintiff does not say exactly when this happened, but it seems to have been in early 2018—well after he filed this case and all previous versions of his complaints.) According to Plaintiff, on two of the five campaigns, Oxford BioChron claims that its systems detected invalid click rates of 24.18% and 26.62%, which were higher than the 7.12% and 10.51% rates that Google's systems detected. 4AC ¶ 81. These allegations are insufficient.

For one thing, these allegations are exceedingly vague. Plaintiff does not identify what ad campaigns were tested, whether they were real campaigns, what they advertised, whether they were in any way representative of Plaintiff's other AdWords ads, or anything else that would help make sense of this story. Not only that, the 4AC does not actually allege that Plaintiff actually paid for any (much less all) of the clicks that Oxford BioChron supposedly identified as invalid and, if he did, how many clicks there were or how much he paid for them. The omission of any of this information—in the face of this Court's rulings—speaks volumes.

But the problems with these allegations run even deeper. The 4AC provides no information whatsoever from which it is plausible to conclude that Oxford BioChron's metrics for assessing invalid clicks are meaningful—or even measure the same thing as Google's. Plaintiff offers no basis for the Court to conclude that, even if this third party's systems identified clicks as invalid that Google did not, those clicks are in fact "invalid." For example, Oxford BioChron's filters may be set up so as to avoid any false negatives even at the expense of many false positives. In short, the fact that a single third-party firm appears to use a different methodology in its filters simply does not mean that Google's filters do not work as advertised or that Plaintiff lost money or property as a result of Google's statements about its filters.

But here is the most important point: even assuming the validity of Oxford BioChron's metrics, Plaintiff's allegations about this analysis of a tiny set of ads says nothing about the overall rate of invalid clicks for which Plaintiff might have been charged during any relevant period. Even taking account of the two campaigns that he discusses, Plaintiff does not allege that the invalid clicks for which he was charged exceeded 10% of the "overall" clicks that he paid for (whether in connection with those campaigns or a given billing cycle, much less during his overall tenure as an AdWords advertiser). That only two campaigns, out of the scores that

1    Plaintiff has run, might have experienced more invalid clicks than what Google's filters detected

2    in no way suggests that Plaintiff was charged for invalid clicks that exceed some given

3    percentage of his "overall clicks." TAC Order at 8.[5] Without such an allegation, Plaintiff simply

4    has not made the showing of standing that this Court required.

5         In short, because Plaintiff still has not alleged that he "paid for invalid or fraudulent

6    clicks at a rate above what was advertised," he lacks standing to sue under the UCL and FAL.

7    The Court need go no further to dismiss the 4AC.

8         **B.    Plaintiff Fails To State A Claim Under The UCL Or FAL**

9         Even if Plaintiff could overcome his lack of standing, his UCL and FAL claims would

10   fail on the merits. The Court has already ruled that Plaintiff cannot proceed on a theory that

11   Google guaranteed him protection from a given percentage of invalid clicks because Section 8 of

12   the AdWords Agreement clearly and expressly disclaims any such promise. But that is exactly

13   the claim that Plaintiff continues to advance here. Beyond that, Plaintiff still fails to plausibly

14   allege that any of the Google statements at issue are actually false or misleading, or that

15   Google's conduct amounts to an "unfair" business practice.

16            1.    Plaintiff's claims are premised on a purported guarantee that the AdWords

17                  Agreement expressly disclaims

18        While it dismissed the TAC for lack of standing, the Court offered an observation about

19   the merits of Plaintiff's claim: "the Court wishes to make clear that a reasonable consumer could

20   not view Google's extra-contractual representations as any sort of 'guarantee' of a specific

21   invalid clicks rate, which would be precluded by the express language of Section 8 of the

22   Agreement. As such, Singh's claims against Google cannot go forward on that basis." TAC

23

24        _____

          [5] That is especially so given that, even though Oxford BioChron analyzed five campaigns,

25   Plaintiff discusses the results of only two of those. 4AC ¶ 81. The 4AC is conspicuously silent
     about the rate of invalid clicks that Oxford BioChron detected for the other three campaigns.

26   This strongly suggests that Google's filters caught as many (if not more) invalid clicks as Oxford
     BioChron for those campaigns. Plaintiff likewise carefully avoids alleging that, as to the full set

27   of five campaigns studied, the rate of "invalid" clicks detected by Oxford BioChron was
     materially greater than what Google detected. Plaintiff cannot manufacture standing by

28   selectively withholding material information about the self-serving analysis that he performed.

1   Order at 15; *see also id.* at 8 n.4 (observing that "all roads under Singh's UCL and FAL theory

2   may lead to a guarantee of a certain invalid clicks rate, which Google expressly disclaims in

3   Section 8 of the AdWords Agreement"); *accord* 4AC Ex. A § 8 (stating that Google does not

4   "MAKE ANY GUARANTEE IN CONNECTION WITH THE PROGRAMS OR PROGRAM

5   RESULTS"). This was a clear warning to Plaintiff that, even if he could plead standing, his

6   claims would fail on the merits to the extent that they were premised on such a purported

7   promise.

8          The 4AC ignores that warning. The substance of the UCL and FAL claims asserted is

9   identical to what Plaintiff offered in the TAC. As before, Plaintiff alleges that he understood

10  Google's "10%" and "vast majority" statements to mean that Google's filters protect him from

11  something approaching 90-95% of all invalid clicks on his AdWords ads, that he used AdWords

12  expecting that result from Google's filters, and that Google failed to deliver on this supposed

13  promise. 4AC ¶¶ 1, 6, 9, 14-15, 108(b), 113, 117-119, 128. It is on that basis that Plaintiff asserts

14  misrepresentation and unfair competition claims under the UCL and FAL. 4AC ¶¶ 110-133. But

15  these claims do exactly what this Court has said is impermissible: they seek to transform

16  Google's general extra-contractual statements about its click-filtering efforts into a legally

17  enforceable "guarantee" that advertisers will be protected from a particular volume of invalid

18  clicks. Such claims run headlong into Section 8 of the AdWords Agreement, which expressly

19  disclaims any such guarantee. This Court has made clear that Plaintiff's claims "cannot go

20  forward on that basis." TAC Order at 15. Because there is no other basis for the claims advanced

21  in the 4AC, Plaintiff's case must be dismissed with prejudice.

22              2.   Plaintiff fails to allege that the statements at issue were deceptive

23          Even apart from this fundamental problem with Plaintiff's theory, its misrepresentation

24  claims should be dismissed because Plaintiff has still failed to plausibly allege that the Google

25  statements on which those claims are based are actually deceptive.[6] Those claims are based on

26  the same set of Google public statements as before. *Compare* 4AC ¶ 113, *with* TAC ¶ 135, *and*

27  _____

28       [6] As in earlier versions of the complaint, Plaintiff's UCL and FAL claims duplicate one
     another.  *See* 4AC ¶¶ 117-121, 129, 131.

1  SAC ¶ 110. The Court has made clear that Rule 9(b) applies here and requires Plaintiff to allege

2  with particularity why each statement "was false or misleading." SAC Order at 9-10 (citing *In re*

3  *GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)); *see, e.g.*, *Cullen v. Netflix, Inc.*,

4  2013 U.S. Dist. LEXIS 4246, at *16-21 (N.D. Cal. Jan. 10, 2013) (dismissing fraud claim where

5  plaintiff failed to allege sufficient facts to show that statements at issue were false), *aff'd*, 600 F.

6  App'x 508 (9th Cir. 2015). The Court dismissed the SAC on this basis. SAC Order at 11. The

7  4AC fails for the same reason.

8                                  a)        *Plaintiff distorts the meaning of the key Google statement at issue*

9        The statement at the center of this litigation is Google's description of the efficacy of its

10  proactive filters and of the proportion of invalid clicks caught by those filters. That statement

11  appeared in Google's Ad Traffic Quality Resource Center when Plaintiff originally filed this

12  action (but was no longer on the site when the 4AC was filed, *see* 4AC ¶ 3 n.2):

13              **The vast majority of all invalid clicks on AdWords ads are caught by our online
14              filters.** These filters are constantly being updated and react to a wide variety of
        traffic patterns and indications of click fraud attacks. **On average, invalid clicks
15              account for less than 10% of all clicks on AdWords ads**.

16  Bish Decl. Ex 3 at 2 (emphasis added).[7]

17        While Plaintiff tries to distort the meaning of this statement (*e.g.*, 4AC ¶ 7), it is not

18  complicated. It describes Google's historical experience with its proactive filters. The first

19  sentence says that most (the "vast majority") of the "invalid" clicks that Google identifies are

20  ones detected by its proactive filters, as opposed to reactive claims process, and that, on average,

21  the clicks that Google determines to be invalid account for less than 10% of the overall clicks

22  across the AdWords platform. As such, this paragraph merely reports empirical information; it

23

24        [7] The other statements referenced in the 4AC describe Google's efforts to protect advertisers
25  from charges for invalid and fraudulent clicks.  They are straightforward descriptions about
    Google and AdWords.  4AC ¶ 113 (for example: "[Google has] a global team which is dedicated
26  to staying on top of your concerns, monitoring traffic across Google's ad network, and
    preventing advertisers from paying for invalid traffic" (alteration in original)).  As Google has
27  explained in its prior motions to dismiss, Plaintiff alleges no facts to suggest that any of these
    innocuous statements are false or misleading. ECF No. 68 at 11-13.  Unsurprisingly, Plaintiff has
28  never seriously tried to rely on any of those additional statements to support his claims.

1   does not purport to guarantee that the rate of invalid clicks will be under 10% or that no

2   advertiser will ever experience a higher rate of invalid clicks. That meaning is clear for several

3   reasons:

- Google cannot know about invalid clicks that it does *not* catch, and therefore could not conceivably make any statements about the rate of invalid clicks that are *not* caught by its filters.

- As this Court has recognized, Google specifically defines "invalid clicks" as "clicks and impressions on AdWords ads that ***Google suspects*** to not be the result of genuine user interest." SAC Order at 2 (emphasis added).

- As the Court has further recognized, Section 8 of the AdWords Agreement expressly disclaims any guarantees about the rate of invalid clicks an advertiser may experience. TAC Order at 15.

- The Google blog post cited in the 4AC includes a bar graph that shows that fewer than 10% of all clicks on the AdWords platform reflect "INVALID CLICKS, PROACTIVELY DETECTED," and 0.02% of overall clicks are identified as invalid by the reactive investigations process. Bish Decl. Ex. 5 at 3. That makes clear that the "vast majority" statement refers to the portion of clicks detected as invalid by the proactive filers in contrast to the reactive investigations process.

- The blog post also further makes clear that the 10% figure is a historical report about the entire AdWords platform: "Our invalid clicks rate—the activity rate—has remained in the range of less than 10% of all clicks every quarter since we launched AdWords in 2002. At Google's current revenue rate, every percentage point of invalid clicks we throw out represents over $100 million/year in potential revenue foregone." Bish Decl. Ex. 5 at 4.

17      Read for what it actually says, therefore, the paragraph at issue is in no way deceptive or

18   misleading. And Plaintiff does not allege otherwise. The 4AC says nothing to suggest that

19   Google's proactive filters are not responsible for catching the "vast majority" of the clicks that

20   Google determines to be invalid or that Google has actually detected invalid clicks across the

21   AdWords platform at a rate greater than 10%. That requires dismissal of Plaintiff's

22   misrepresentation claims. Plaintiff cannot state such a claim by ascribing to Google something it

23   did not actually say. *See, e.g.*, *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1162 (9th Cir.

24   2012) ("[A] representation does not become 'false and deceptive' merely because it will be

25   unreasonably misunderstood by an insignificant and unrepresentative segment of the class of

26   persons to whom the representation is addressed." (citation omitted)).

27

28

b) *Plaintiff cannot rely on third party articles that do not speak to the efficacy of Google's filters*

Even accepting Plaintiff's distorted understanding of the "vast majority" and 10% statement (that Google promised Plaintiff that he would not incur charges for the "vast majority" of invalid clicks on his account), what this Court said in its Order dismissing the SAC remains true in regard to the 4AC: "there is no factual support for Plaintiff's assertion that Google misrepresented the likelihood that customers would actually incur charges for a significant volume of invalid clicks." SAC Order at 8.

In dismissing Plaintiff's prior allegations, this Court has twice rejected Plaintiff's reliance on third-party articles to try to establish his claims about Google's filtering efforts. TAC Order at 3 (holding these sources "do not speak to the efficacy of Google's filters and actually 'undermine Singh's claims that he was not aware of the possibility that the rate of click fraud might exceed 10 percent'" (quoting SAC Order at 11)). Nevertheless, Plaintiff now tries, for the third time, to cast doubt on Google's statements by citing to these same discredited sources. The 4AC relies on exactly the same articles the Court has already found wanting (4AC ¶¶ 52-55, 57-70, 86), while adding some references to other similar ones (4AC ¶¶ 52 n.26, 56, 68, 73, 82-85). Plaintiff's new allegations do nothing to change the result.

Two of the articles newly cited in the 4AC summarize another study that appears in the 4AC (and TAC). 4AC ¶ 52 n.26 (*Glitch News* and *Business Insider* summaries of a study involving view counts on YouTube). As Google has explained, that study concluded that YouTube actually filters more fake advertising views than any other ad platform and does nothing to suggest that Google's statements are misleading. ECF No. 68 at 18. The Court has already determined the underlying study has nothing to say about the efficacy of Google's filters (*see* TAC Order at 3); the new second-hand summaries offer nothing more.[8]

---

[8] The Court also specifically dismissed Plaintiff's allegations about a 2014 study from the College of William and Mary that purported to be about click fraud on a "major ad network." TAC Order at 3. The Court explained that Plaintiff's "sole allegation"—that, upon information and belief, the network studied was AdWords—was "not sufficient to plausibly allege that the study [actually] involved AdWords." *Id.* The 4AC deletes that allegation and replaces it with the unadorned (and unsupported) assertion that "Plaintiff has confirmed that the 'major ad network'
(continued...)

The 4AC also adds some new allegations about third-party software and services that purport to help advertisers detect fraudulent clicks on their ad campaigns. 4AC ¶¶ 73, 82-84. Plaintiff suggests that the very existence of such software is somehow evidence that Google's proactive filters do not detect all invalid clicks. 4AC ¶¶ 82, 84. It plainly is not, but at any rate, the possibility that Google's filters may not catch every invalid click in no way suggests that they are ineffective or that they fail to catch the vast majority of such clicks. Plaintiff also alleges that some of these third parties claim to have found up to an 80% rate of click fraud on AdWords. 4AC ¶¶ 73, 83. Beyond the fact that those kinds of claims are marketing puffery aimed at making the third party services seem more attractive to customers and advertisers, whether these companies have in some cases employed their own filtering techniques that, they claim, catch more invalid clicks does not turn Google's statements about its own filters into misrepresentations. These assertions by third parties say nothing about the actual efficacy of Google's filters or the veracity of Google's "vast majority" statement.[9]

In short, none of the new material in the 4AC offers anything beyond what the Court has already twice rejected. Because Plaintiff still offers no plausible allegations that Google's statements were false or misleading, he fails to satisfy Rule 9(b).

### 3.    The 4AC Fails To State An Unfairness Claim Under The UCL

Plaintiff's passing reference to the UCL's unfairness prong does not state a claim. What little Plaintiff says about unfairness duplicates his misrepresentation theory. 4AC ¶ 120 (alleging that Plaintiff was "not informed that Google's filters do not catch a vast majority of invalid and

---

(...continued from previous page)
utilized in this study is the Google AdWords platform." 4AC ¶ 68.  While that is not sufficient, even assuming this study examined AdWords, it utilizes the same "bait ad" methodology that the Court has twice called "utterly implausible" (TAC Order at 3 (citing SAC Order at 11)) and should be rejected on that basis alone.

[9] The only other new article referenced in the 4AC is a blog post investigating one ad campaign that the author set up to advertise a preschool run by his spouse.  4AC ¶ 85 & n.52. Like other studies Plaintiff has cited (and the Court has rejected as deficient) the blog post is anecdotal and says nothing about the rate of invalid clicks detected by Google's filters across the board (or even across the author's AdWords account).  The post also makes clear that Google agreed to issue the author a credit for the invalid clicks he incurred. *Id.*

1   fraudulent clicks, that invalid and fraudulent clicks account for far more than 10% of all clicks

2   on AdWords ads"). That theory fails for the reasons already discussed. *Cf.* SAC Order at 8

3   ("there is no factual support for Plaintiff's assertion that Google misrepresented the likelihood

4   that customers would actually incur charges for a significant volume of invalid clicks").

5           Beyond that, the Court previously held that Plaintiff failed to allege "substantive

6   unfairness" because "Google discloses the risk of click fraud in the Agreement and elsewhere,

7   and provides a process that allows advertisers to receive compensation for charges related to

8   invalid clicks." *Id.* (citing *Davis*, 691 F.3d at 1169-70). The Court expressed "concern[] that

9   Singh ignores the claims process detailed in the Agreement" and found that "Plaintiff's

10  conclusory allegations that the claims process is illusory are insufficient." *Id.* Plaintiff makes no

11  serious effort to fix these problems. As explained below, the 4AC's conclusory allegations that

12  Google's claims process is "ineffective" are unavailing. They certainly are insufficient to state a

13  claim for unfair competition under the UCL.

14          **C.     Plaintiff Waived All Claims Based On Allegedly Invalid Clicks That He**

15                  **Failed To Submit To Google's Claims Process**

16          Under Section 7 of the AdWords Agreement, a condition precedent to any claim "relating

17  to" AdWords program charges is that the advertiser must have submitted the charges to Google

18  within 60 days of the relevant invoice. 4AC Ex. A § 7. By accepting this provision, Plaintiff

19  waived claims for any charges that he failed to bring to Google's attention using this internal

20  process. While the Court did not need to address the waiver when it dismissed the SAC and TAC

21  (SAC Order at 4-5; TAC Order at 15), Section 7 remains an independent bar to Plaintiff's claims.

22  That is even clearer in connection with Plaintiff's most recent complaint.

23          As this Court has made clear, the only possible claims that Plaintiff could assert under the

24  UCL or FAL are claims for economic injury that he suffered as a result of having "actually paid

25  for invalid or fraudulent clicks at a rate above what was advertised." TAC Order at 8. As

26  discussed above, Plaintiff fails to make this showing at all. But his only *effort* to do so comes in

27  connection with supposedly invalid clicks that were allegedly detected by Oxford BioChron

28  sometime in early 2018. 4AC ¶ 81. These clicks are the only conceivable basis for Plaintiff to

1   have a viable UCL or FAL claim in light of this Court's ruling. Even assuming that these

2   allegations could establish standing, Plaintiff's effort to proceed with such a claim runs headlong

3   into Section 7. The 4AC does not allege that Plaintiff submitted any claim for advertising credits

4   to Google within 60 days of any invoice covering charges for any of the allegedly invalid clicks

5   detected by Oxford BioChron. Instead, with respect to those charges, Plaintiff now seeks to

6   bypass the contractually mandated mechanism for addressing potentially invalid clicks. That is

7   not permissible. Under the plain language of the Agreement, Plaintiff has waived any claim

8   relating to such charges. And because those charges are his only possible basis for standing,

9   Plaintiff's claims must be dismissed. *See, e.g.*, *Free Range Content, Inc. v. Google Inc.*, 2016

10  U.S. Dist. LEXIS 64365 (N.D. Cal. May 13, 2016) (dismissing claims based on similar waiver

11  provision in Google AdSense Agreement).[10]

12      Plaintiff cannot escape this result by alleging that Google's claims process is

13  "ineffective." The allegations in the 4AC on this point largely repeat similar arguments about the

14  claims process in earlier complaints. *Compare* 4AC ¶¶ 87-90, 101-102, *with* TAC ¶¶ 115-120

15  (alleging Google's claims process is "illusory"), *and* SAC ¶¶ 77-86 (same). The Court has

16  already rejected such allegations as "conclusory" and "insufficient" and instructed Plaintiff to

17  "provide additional factual allegations" if he wanted to try to rely on such a theory. SAC Order at

18  8. While the 4AC adds several new allegations about the claims process, it fails to address the

19  Court's concerns in any meaningful way.

20      Plaintiff's new allegations fall into three categories: (1) one other advertiser's

21  experiences and opinions about the claims process (4AC ¶ 93 & n.57); (2) other advertisers'

22  resources and choices not to use the claims process (4AC ¶¶ 92, 94, 96-97); and (3) the supposed

23

24

---

25      [10] The only time in this case that Plaintiff ever alleged that he brought disputed charges to Google's attention through the claims process was in the TAC. There, Plaintiff alleged that on

26  three occasions, Google failed to investigate and issue credits in response to Plaintiff's requests. TAC ¶¶ 123-124 & n.52. But those allegations were false, and Plaintiff was ultimately forced to

27  withdraw them. *See* ECF No. 83 (Plaintiff's Notice of Errata). Those allegations thus are not included in the 4AC. Nor are there any other specific allegations that suggest that Plaintiff ever

28  used the claims process in regard to any other charges for purportedly invalid clicks.

1    lack of granular information advertisers can use to cross-check the results of Google's

2    investigations (4AC ¶¶ 95, 98-100). None are sufficient to allow Plaintiff to avoid the waiver.

3    *First*, Plaintiff's allegation about an article written by a third party who claims that he did

4    not receive a refund from Google in response to his claim (4AC ¶ 93) can be dismissed out of

5    hand. The mere fact that Google sometimes does not find evidence of click fraud in response to

6    advertisers' claims does not in any way suggest the process is ineffective or illusory. Not every

7    claim is valid and not every disputed charge is the result of click fraud or improper behavior.

8    This Court has already dismissed Plaintiff's effort to use anecdotal articles like this, and they are

9    equally unavailing here. SAC Order at 11; TAC Order at 3.

10   *Second*, Plaintiff's allegations about advertisers' resources and choices does not speak to

11   the validity of the claims process. The 4AC cites a handful of articles that claim that advertisers

12   need internal monitoring systems or weblogs or more in order to identify invalid clicks on their

13   ads. 4AC ¶¶ 94, 96-97. But that has nothing to do with Google's claims process. Indeed, Plaintiff

14   does not allege, nor could he, that Google will only investigate advertisers' claims if they submit

15   additional materials from their monitoring systems or weblogs. The 4AC also posits several

16   reasons why advertisers choose not to submit claims to Google (such as cost benefit reasons and

17   unawareness of the claims process, 4AC ¶ 92), which likewise have no bearing whatsoever on

18   the validity of the claims process or the enforceability of the waiver against advertisers who elect

19   not to use it.

20   *Third*, Plaintiff's central assertion here (which, if taken as true, would actually undermine

21   his entire theory in this case) is that advertisers have no way of knowing whether they were

22   charged for invalid clicks that Google does not catch. 4AC ¶ 95.[11] Plaintiff thus alleges that

23   Google does not provide advertisers with the kind of granular information (such as IP addresses)

24   they would need to scrutinize Google's filtering efforts. 4AC ¶ 99. The 4AC fails to consider the

25

26   [11] The 4AC also complains that advertisers cannot use Google Analytics to obtain "a forensic print of all visitors" to a person's website. 4AC ¶ 98. That allegation is neither here nor there.

27   Google Analytics is a separate Google product designed for a separate purpose (to help website

28   owners obtain statistical information about traffic to their websites, *id.*); it says absolutely nothing about the claims process for AdWords advertisers.

policy and privacy reasons why Google does not share such data with advertisers. In any event, Google's practice of providing advertisers with aggregate information about the total number of clicks on their ads, including the number of invalid clicks proactively detected by Google's filters, instead of the IP address of every single web user that clicks on their ads does not render its claims process "ineffective."

On top of all that, Plaintiff does not even try to explain why, even if Google's process might not result in advertisers receiving credits on any given occasion, that would provide a *legal* justification for ignoring the waiver provision altogether. To avoid the waiver for a given set of charges, an advertiser merely must submit a timely claim. Plaintiff's failure to allege that he did so bars his claims here. *See Woods v. Google Inc.*, 2011 U.S. Dist. LEXIS 88795, at *15 (N.D. Cal. Aug. 10, 2011) (dismissing claim where "Woods does not allege that he attempted to seek a refund—as required by the Agreement—for charges relating to clicks he suspected were invalid").

In sum, Plaintiff's new allegations about Google's claims process are just as deficient as those the Court previously found lacking. There is no basis for refusing to apply the clear language of Section 7 under which Plaintiff has waived the claims that he now seeks to pursue.

## IV.    CONCLUSION

Because Plaintiff has not addressed the deficiencies the Court has twice identified with Plaintiff's complaint, and because his claims fail as a matter of law, Google respectfully requests the Court dismiss the 4AC with prejudice.


Dated: June 11, 2018

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By: /s/Brian M. Willen
　　　Brian M. Willen

*Attorneys for Defendant*
*Google LLC*