**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| GURMINDER SINGH,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 16-cv-03734-BLF<br><br>**ORDER GRANTING DEFENDANT GOOGLE'S MOTION TO DISMISS FOURTH AMENDED COMPLAINT WITHOUT LEAVE TO AMEND**<br><br>[Re: ECF 90] |

Almost two years after filing its first motion to dismiss in this case, Defendant Google LLC ("Google") has filed a fourth motion to dismiss, this time seeking to dismiss Plaintiff Gurminder Singh's ("Singh") Fourth Amended Complaint. *See* Mot., ECF 90. In his Fourth Amended Complaint ("4AC"), Singh alleges that Google deceives advertisers who choose to use its online, "pay-per-click" advertising platform AdWords. *See* 4AC, ECF 86, at ¶¶ 3–6. Singh is a small business owner who signed up for AdWords in 2008. *Id.* ¶¶ 12, 15. According to Singh, Google makes false and misleading statements concerning (1) how effectively Google identifies and filters out from advertisers' billing statements invalid and fraudulent clicks on advertisements; and (2) the proportion of total AdWords clicks constituted by invalid and fraudulent clicks. *See id.* ¶¶ 3–6. He claims, on behalf of himself and others similarly situated, that these misrepresentations induced him to sign up for AdWords, and in turn to pay for more invalid and fraudulent clicks than Google had represented he would pay for. *See id.* ¶¶ 9, 105.

On February 20, 2018, this Court granted with leave to amend Google's motion to dismiss Singh's Third Amended Complaint ("TAC") on a single ground: that Singh had failed to allege sufficient facts based on his theory of harm to show that he has standing to bring these claims. *See* ECF 85 ("TAC Order"). Singh filed his 4AC in response, adding dozens of allegations, many of

which are seemingly aimed at plausibly alleging standing. As in his 4AC, he alleges two causes of action: (1) violations of California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; and (2) violations of California's false advertising law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq. See* 4AC ¶¶ 110–33. Google moved to dismiss the 4AC on three grounds: (1) Singh fails to allege he has standing; (2) Singh fails to state a claim under the UCL or FAL; and (3) the waiver provision included in the AdWords contract that Singh (and other AdWords advertisers) signed bars his claims. *See generally* Mot. Upon stipulation by the parties, the Court found the motion suitable for submission without oral argument. *See* ECF 101.

The Court has considered the parties' arguments presented in their briefing, its previous orders, and the relevant law. For the reasons that follow, the Court GRANTS Google's motion to dismiss without leave to amend because Plaintiff fails to plausibly allege he has standing to bring his claims.

## I. BACKGROUND

The factual background of this case is familiar to the parties and the Court and is set forth in this Court's order granting Google's motion to dismiss the Second Amended Complaint ("SAC"). *See* ECF 64 ("SAC Order"). Because this Court addressed the question of standing in its TAC Order, the Court first reviews the relevant portions of the TAC motion to dismiss briefing and the TAC Order, and then describes the new allegations in the 4AC relevant to the standing issue.

### A. Third Amended Complaint Order

In moving to dismiss the TAC, Google argued, among other things, that Singh failed to plausibly allege standing to assert his claims because he failed to identify that he paid Google for any invalid or fraudulent clicks. *See* TAC Mot. at 9–10, ECF 68. This Court had noted in its SAC Order that Singh appeared to lack standing under the UCL, but it did not decide the issue. *See* SAC Order at 6 n.2. Elsewhere, the Court noted that in his SAC Singh had "not adequately allege[d] that he was ever charged for invalid clicks." *Id.* at 11. In its motion, Google argued that the Court flagged the standing issue because Singh had failed to meet the requirement under the UCL and FAL that a plaintiff allege he lost "money or property as a result of" the defendant's

violation. *See* TAC Mot. at 9 (quoting Cal. Bus. & Prof. Code § 17204). According to Google, Singh could only satisfy this requirement by alleging that he was actually charged for invalid clicks. *See id.* The TAC included no additional allegations to address the standing issue.

In opposing Google's motion, Singh argued that Google's interpretation of the standing requirement under the UCL and FAL was too narrow. *See* TAC Opp'n at 10–11, ECF 76. Singh argued that the "lost money or property" limitation required only "some form of economic injury." *Id.* at 10 (quoting *Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 323 (2011)). He alleged he had suffered such an economic injury by "paying more for [the] product than [he] otherwise would have paid, or bought it when [he] otherwise would not have done so." *Id.* (quoting *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 n.3, 1108 (9th Cir. 2013)). Thus, "regardless of whether [Singh] was actually ever charged for invalid clicks," he successfully alleged he had suffered economic harm and thus had standing. *Id.* at 11. In so arguing, Singh cited several consumer-products cases that he believed supported his position. *See id.* at 10–11.

In its reply, Google distinguished Singh's cited consumer-products cases on multiple grounds including (1) AdWords is a service—not a consumer product—which Singh joined for free, only paying for the clicks themselves; (2) the crux of the claims concerns the relative success of Google's AdWords filter service, which is tied necessarily to whether an advertiser paid for invalid clicks; (3) the policy considerations in consumer-products cases differ from those in this case; and (4) on its own terms, Singh's argument that he would not have used AdWords but for the misrepresentations was implausible. *See* TAC Reply at 1–4, ECF 79.

This Court took the issue head on in its TAC Order and ultimately agreed with Google, holding that the TAC did not "contain any factual allegations regarding Singh's own experience paying for invalid clicks, and thus the TAC [did] not allege that Singh suffered an economic injury" sufficient to confer standing. TAC Order at 6; *see also id.* at 10. Noting that standing under the UCL and FAL is "substantially narrower" than standing under Article III of the Constitution, the Court recognized that Singh must allege some economic injury resulting from Google's allegedly unfair business practice. *Id.* at 6 (quoting *Wright v. Gen. Motors Acceptance Corp.*, 545 F. App'x 686, 688 (9th Cir. 2013)). The Court then disagreed with Singh's

3

interpretation of California Supreme Court and Ninth Circuit consumer-product law as it applied to his allegations. *See id.* at 7 (distinguishing *Kwikset*, 51 Cal. 4th 310 and *Hinojos*, 718 F.3d 1098). It concluded that AdWords cannot fairly be described as a consumer product that Google offered to Singh for purchase; instead, it is a service, which allegedly carries with it a risk that advertisers might pay for more invalid clicks than Google represents. *See id.* at 8 (distinguishing *McCoy v. Nestle USA, Inc.*, 173 F. Supp. 3d 954, 964 (N.D. Cal. 2016)).

The Court then held that even if the allegations could be cast as consumer-product claims, Singh must allege standing as if the "product" were the clicks themselves. *See id.* at 8–9. Singh alleged he signed up for the free AdWords service knowing that he would pay for a total number of clicks (the number of clicks on his ads) on a regular basis. Through its alleged misrepresentations, Google promised that 90–95% of that bundle of charged clicks would be valid. As alleged then, the product Singh agreed to purchase was a bundle of clicks, 90–95% of which were valid—or, put another way, a bundle of clicks of which no more than 5–10% are invalid. *Id.* at 8; *see also id.* at 9 n.6. Given this, if Singh could show only that he "paid for fraudulent clicks at a rate below 10% or even 5% of [his] overall clicks, there would be no injury." *Id.* at 8. But Singh had failed to allege that he "actually paid for invalid or fraudulent clicks" *at all*,[1] much less "at a rate above what was advertised." *Id.* And so he failed to allege standing under his theory of liability.

The Court also rejected Singh's argument that his more generalized allegations stemming from third-party research could confer standing on him. At most, those allegations represented "a hypothetical risk that some AdWords advertisers pay for fraudulent clicks at a higher rate than Google represents," which said nothing about Singh's own experiences or injuries. *Id.* at 9. Thus, the Court held that "[u]ntil Singh alleges that he lost money or property as a result of Google's alleged misrepresentations," by demonstrating that he paid for invalid clicks at a rate higher than 5–10%, "Singh lack[ed] standing to assert claims under the UCL or FAL." *Id.* at 10.

---

[1] The Court conjectured that such allegations presumably could come from Singh's "AdWords billing reports." TAC Order at 7 n.3.

4

### B. Singh's New Allegations in the Fourth Amended Complaint

In response to the opinion dismissing his TAC, Singh filed his 4AC. For the purposes of this motion, the Court considers Singh's standing allegations including newly formulated allegations as well as those previously alleged facts that Singh realleges in the 4AC, which he summarizes in his opposition to Google's motion to dismiss. *See* Opp'n at 4–10.

First, Singh emphasizes that his allegations sufficiently demonstrate that Google AdWords globally fails to adequately filter invalid clicks. *See id.* at 4. He highlights various third-party articles and research studies (all present in his TAC) that he claims demonstrate that Google, and specifically AdWords, is susceptible to click fraud. *See id.* (citing 4AC ¶¶ 41 n.21, 64, 52–54, 60–62, 66–68). He also cites several new allegations detailing the results of various studies by click-fraud and cyber-security companies showing that click-fraud rates in Google's AdWords program range anywhere from 20% to 98% of the total clicks on the tested ads. *See* 4AC ¶¶ 73, 83, 85–86. Notably, Singh has removed his TAC allegations pertaining to his own experiments regarding the fraudulent click rate in AdWords, *see* TAC ¶¶ 17, 18, 64–95, after this Court admonished that such experiments were not scientific and did not speak to Google's key arguments. *See* TAC Order at 3–4; SAC Order at 11.

Next, Singh focuses on new allegations included in the 4AC pertaining to his own experiences with invalid clicks on Google's AdWords program. *See* Opp'n at 7–8. In lieu of his own experiments, Singh engaged two separate click-fraud detection companies to analyze the click-fraud prevalence on his AdWords account. In early 2018, Singh hired ClickCease to collect data from his account. 4AC ¶¶ 72–73. He then hired Method Media Intelligence ("MMI") to analyze the data, specifically to determine whether "there were invalid, fraudulent, and/or robotic clicks billed to Plaintiff's AdWords account." *Id.* ¶ 75. Though MMI found at least 50 seemingly fraudulent clicks, it could not determine whether those clicks were invalid and charged to Singh because Singh could not obtain necessary supplemental data from Google. *Id.* ¶¶ 76–77. That is, MMI could not determine whether Singh was actually charged for any invalid clicks.

The second firm Singh hired, Oxford BioChronometrics ("OB"), analyzed five separate ad campaigns on Singh's AdWords account over an 8-day period to detect the number of invalid

5

clicks. *See id.* ¶¶ 78–81. Singh only reports the results of two of those campaigns. In one, OB detected 24.18% invalid bot clicks on Plaintiff's account, while Google's filters detected only 7.12% invalid clicks. *Id.* ¶ 81. In the other, OB detected 26.62% invalid bot clicks, while Google's filters detected only 10.51% invalid clicks. *Id.* Singh alleges that this data "clearly shows that [he] was billed (and paid for) for a range of invalid clicks well above the 10% Google claims to detect." *Id.*

Finally, Singh points to several new allegations to support his argument that Google's process for reporting and being compensated for invalid clicks (its "claims process") is ineffective. *See* Opp'n at 8–10. As is relevant to this order, Singh alleges that Google fails to provide AdWords advertisers with sufficient information to determine whether any individual click is valid or invalid; Google only provides such information on an aggregate basis. *See* 4AC ¶¶ 77, 95, 98–99. As a result, "line-item reconciliation [is] impossible because [advertisers] don't know which clicks [Google] billed [them] for." *Id.* ¶ 92 (citation omitted). He then alleges that his own experiences reflect this problem, as demonstrated by his attempt to secure this information in connection with the MMI and OB studies. *See id.* ¶ 100. This inability to access key information forces an advertiser pursuing a claim through the claims process to invest substantial sums of money in order to collect enough information to sufficiently corroborate the results of the claims process. *See id.* ¶¶ 94–96, 98–99. These problems allegedly make the claims process futile.

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)

1 (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). However, under the "incorporation by reference" doctrine, the Court also may consider documents which are referenced extensively in the complaint and which are accepted by all parties as authentic. *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999), *abrogated on other grounds by S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008).

If the Court concludes that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citation omitted). Nonetheless, a district court may deny leave to amend a complaint due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

**III.  DISCUSSION**

In its present motion, Google argues that Singh's 4AC still fails to plausibly allege standing to assert claims under the UCL and FAL based on Singh's alleged theory of harm. It first argues that Singh's allegations detailing third-party research about invalid clicks on AdWords do not help Singh to establish that he himself has standing, just as those in the TAC were insufficient. *See* Mot. at 9 (citing TAC Order at 9–10). It argues that many of Singh's new allegations targeted

at curing the standing issue still have nothing to do with Singh or his AdWords account, much less how many invalid clicks he might have paid for. *See id.* (citing 4AC ¶¶ 71–86).

Google then focuses on the new allegations targeted more specifically at Singh's AdWords account, namely the research done by MMI and OB. *Id.* at 10 (citing 4AC ¶ 76). As to the MMI study, Google argues that alleging mere detection of 50 invalid clicks says nothing about whether Singh was actually charged for those clicks. *Id.* Moreover, without allegations detailing the total number of clicks on Singh's ads, or the total number of clicks detected by Google, the 50-click number is useless for determining whether Singh was charged for more than 5–10% invalid clicks. Finally, Google notes that Singh effectively concedes the point when he states that he is unable to collect information necessary to allege he was charged for such clicks. *Id.* (citing 4AC ¶ 77).

As to the OB study, finding ~25% invalid clicks on two of Singh's ad campaigns, Google first challenges the allegations pertaining to the study as "exceedingly vague," revealing no information about which five ads were tested, what was advertised, or whether they were a representative sample of Singh's AdWords account. *Id.* at 12. Google claims Singh again fails to allege that he actually paid for any of these invalid clicks, much less how many he paid for. *See id.* Google also challenges the lack of information concerning OB's methodology, positing that OB's definition of an "invalid" click may differ from Google's. *See id.* But most importantly according to Google, OB's results on two of five unidentified ad campaigns "say[] nothing about the overall rate of invalid clicks for which [Singh] might have been charged during any relevant period." *Id.* Even if two campaigns experienced a rate of invalid clicks higher than 5–10%, and higher than the number detected by Google, this result does not speak to whether Singh paid a higher percentage for his "overall" clicks. *Id.* at 13. Google also posits that Singh's failure to report the results of the other three ad campaigns reflects that Singh cherry-picked the results to avoid revealing that the overall invalid click rate was actually below 5–10%. *Id.* at 13 n.5.

The Court agrees with Google that Singh's new allegations do not plausibly allege that Singh has standing to bring his claims based. This Court has already held that on his theory of liability, Singh must allege that he paid for invalid clicks at a rate higher than 5–10%. *See* TAC Order at 7–8. This he has not—and seemingly cannot—do.

8

Nowhere in the 4AC does Singh specifically allege that he paid for (or even was billed for) any invalid clicks whatsoever. Though he alleges that he has "been charged for, and subsequently paid for, invalid and/or fraudulent clicks on the Google AdWords platform," 4AC ¶ 9, *see also id.* ¶ 81, 122, 128, such conclusory allegations are insufficient under *Twombly* and *Iqbal*. *See* TAC Order at 8. This Court noted that such information might come from Singh's billing statements. *See* TAC Order at 7 n.3. But the 4AC contains no information about Singh's billing statements, or any other source of such information. Though Singh states in his opposition that he "reviewed documentation on his AdWords account, including billing reports and other relevant reports" to determine the rate of invalid clicks detected by Google for the ad campaigns OB studied, he does not allege this information. And even if he did, it does not speak to whether he ultimately paid for such clicks. Opp'n at 7. Instead, the new allegations targeted at Singh's account specifically detail tests aimed only at "detecting" invalid clicks. *See* 4AC ¶¶ 71–81. Nowhere does Singh allege that MMI's and OB's studies detected a certain number of invalid clicks, and that Singh then paid for any of those clicks.[2]

What's more, even assuming that mere detection of invalid clicks (and at a rate different than that detected by Google) were sufficient to demonstrate that Singh in turn paid for such clicks, Singh's allegations regarding MMI's and OB's studies suffer from additional deficiencies. As to MMI, Singh concedes that MMI was unable to determine whether Singh was ever billed for an invalid click.[3] 4AC ¶¶ 76–77. This alone makes these allegations insufficient. But even if the

---

[2] Indeed, such a result seems counterintuitive—that Singh would identify a greater rate of invalid clicks and then pay for them anyway. The absurdity of this result points to a flaw in Singh's new allegations: These two studies on his account were seemingly conducted in early-2018, but Singh learned in early-2016 that Google was allegedly misrepresenting the rate of invalid clicks. *See* 4AC ¶ 16. If Singh were to continue to pay for a greater rate of invalid clicks after 2016, he could no longer allege that he *relied* on Google's misleading statements in making such payments. As such, though such allegations might confer standing, they would directly undermine his reliance allegations, which this Court has already accepted. *See* TAC Order at 10–15. Notably, Singh's new allegations do not discuss the time period before early-2016.

[3] The Court recognizes that Singh alleges such information is difficult to obtain because Google provides the relevant data only in the aggregate. *See* 4AC ¶¶ 77, 94–96, 98–99. But in this case, litigation has been ongoing since July 2016 and discovery was completed in early 2018. *See* ECF 40. Singh provides no argument as to why this information could not have been obtained in discovery.
   Moreover, even if Singh could not secure click-by-click information, he provides no

9

Court assumed that such clicks were billed to Singh, MMI's discovery of 50 invalid clicks reveals nothing about the *rate* of clicks for which Singh paid. It could be that there were 5,000 overall clicks, which would put the invalid click rate well within that advertised by Google. In the end, the MMI study adds nothing to Singh's standing argument.

As to OB, again the allegations say nothing beyond the fact that OB *detected* invalid clicks at a rate higher than that detected by Google. *See* 4AC ¶¶ 78, 81. As to actual payment, Singh alleges only that "[t]his data clearly shows that [he] was billed (and paid for) a range of invalid clicks," *id.* ¶ 81; this allegation is not expressly tied to payment of the invalid clicks that OB detected. Even if the Court infers that Google detected a 10.51% invalid click rate and then billed Singh for the remainder, the invalid click rate from only two ad campaigns of unknown size over an 8-day period suffers from the same deficiencies as MMI's single metric of 50 invalid clicks. Without more information about the overall rate of clicks on Singh's account (as opposed to on just these two campaigns), the Court cannot discern factual allegations of the *overall* rate of invalid clicks for which Singh paid. Even reading the 4AC in the light most favorable to Singh, the Court is informed of at least three additional ad campaigns for which Singh has relevant data that he has elected not to disclose. The results of these campaigns alone might make the average, overall invalid click rate below 5–10%.

As such, this Court holds that Singh has not alleged that he has standing because he has not shown that he actually paid for invalid clicks at an overall rate higher than 5–10%. Indeed, in his one-paragraph arguing that his new allegations sufficiently allege standing, he does not actually cite a single allegation from his 4AC. *See* Opp'n at 12.[4]

---

argument for why standing could not be established based on aggregate information. It seems that Singh could simply compare the aggregate number of invalid clicks detected by Google over the course of a monthly billing cycle with the aggregate number as determined by third-party analysis, and then demonstrate that he paid the whole of the bill, including for the invalid clicks that went undetected by Google. Ultimately, the Court does not see why such factual allegations would be impossible. And even if they were, this Court is bound by the Constitutional and statutory requirements that a plaintiff have standing and sufficiently plead as such. *See Ctr. for Biological Diversity v. Mattis*, 868 F.3d 803, 816 (9th Cir. 2017) ("[The plaintiff] bears the burden to establish the elements of standing, which, when challenged in a motion to dismiss, are judged based on the allegations in its complaint.").

[4] As this Court has held before, Singh's allegations concerning third-party research not specifically

Instead of arguing in earnest that his new allegations meet the factual requirements that this Court has already determined are necessary to allege standing here under the UCL's and FAL's economic injury requirement, Singh spends the majority of his opposition as to standing asking this Court to revisit its holding in the TAC Order that Singh must allege he paid for invalid clicks at a higher rate than Google allegedly represented. *See* Opp'n 11–14. Singh essentially argues that the Court construed the California Supreme Court's decision in *Kwikset*, 51 Cal. 4th 310 too narrowly when it required Singh to plead economic damage based on the rate of invalid clicks. But Singh and Google extensively briefed and the Court decided this issue in response to Google's motion to dismiss the TAC. *See* TAC Order at 6–10. Singh's attempt to raise the same argument again here amounts to a request that the Court reconsider its prior ruling, but Singh has not complied with the necessary procedural requirements to make such a request. *See* Civ. L.R. 7-9; *Gonzalez v. Google, Inc.*, No. 16-CV-03282-DMR, 2018 WL 3872781, at *7 (N.D. Cal. Aug. 15, 2018) (declining to revisit previous order's holdings in response to arguments made previously by the plaintiff).

And in any event, the Court agrees (not surprisingly) with its prior holding regarding what Plaintiff must plead in order to plausibly allege standing based on his theory of liability. In response to the Court's rejection of his attempt to fit this case squarely into the consumer-product case law, Singh now argues that *Kwikset* applies equally to cases involving services, emphasizing that the *Kwikset* court was concerned not with products versus services, but rather with "transactions." Opp'n at 12. In support of this new argument, he cites *In re Yahoo! Inc. Customer Data Security Breach Litigation*, 313 F. Supp. 3d 1113, 1129–31 (N.D. Cal. Mar. 9, 2018), in which the plaintiff plausibly alleged standing for a UCL claim by alleging he would not have paid for defendant Yahoo's supposedly secure email services had he known they were not as secure as Yahoo claimed.

The Court agrees (and has not held otherwise) that *Kwikset* can provide guidance in cases involving services. But that does not help Singh here. In *Yahoo*, the plaintiff paid for a service

---

pertaining to his account (*see* 4AC ¶¶ 41 n.21, 64, 52–54, 60–62, 66–68) cannot prove that he himself has standing. *See* TAC Order at 9–10.

11

(email) with assurances that it was secure, but it was not in fact secure. *Id.*; *see also Kwikset*, 246 P.3d at 892 ("They bargained for locksets that were made in the United States; they got ones that were not."). He thus paid for something he did not receive. This Court held that Singh must allege exactly that—that he paid for something he did not receive. Here, Singh paid not for the AdWords service, but instead for a total number of clicks. To allege standing then, he must show that these clicks were not what he bargained for, namely clicks with a valid click rate of 90–95%. Thus, to show injury, he must demonstrate that the clicks he paid for had a valid click rate of less than 90–95%; otherwise, he got exactly what he paid for. This he does not do. And his conclusory allegations that he would not have advertised with Google had he known of the misrepresentations fail for this reason. *See* 4AC ¶¶ 114, 119. He has alleged no support for this notion because he has not demonstrated that he paid anything beyond what he bargained to pay for.

Singh's failure once again to allege standing demonstrates that any further amendment in this case would be futile. *See Leadsinger*, 512 F.3d at 532. The Court initially raised the issue in its SAC Order and allowed for and considered extensive briefing on the issue after Singh filed his TAC. It then dismissed the TAC with leave to amend on this exact issue, and Singh still was unable to allege standing in his 4AC. The only conclusion this Court can draw is that Singh cannot allege that he has standing in this case, and that further amendment would be futile.

**IV. ORDER**

For the foregoing reasons, Google's motion to dismiss the 4AC is GRANTED WITHOUT LEAVE TO AMEND on the grounds that Singh fails to plausibly allege that he has standing to bring his claims.

**IT IS SO ORDERED.**

Dated: September 27, 2018

_____
BETH LABSON FREEMAN
United States District Judge

12